

**Debevoise & Plimpton LLP**  
919 Third Avenue  
New York, NY 10022  
+1 212 909 6000

**John S. Kiernan**  
Partner  
jskiernan@debevoise.com  
+1 212 909 6692

**VIA ECF AND EMAIL**  July 23, 2021

Hon. Analisa Torres  
United States District Judge  
Southern District of New York  
500 Pearl Street  
New York, NY 10007

Re: *Bilalov v. Gref et al.*, 1:20-cv-09153-AT-KNF (S.D.N.Y.)

Dear Judge Torres:

I am writing on behalf of Defendants Sberbank of Russia and its Chairman Herman Gref (the "Russian Defendants"), pursuant to Rule III.B.iii of Your Honor's Individual Practices, to seek permission to move to dismiss the Second Amended Complaint (ECF No. 51) (the "SAC"). Dismissal is warranted because (*i*) this action should not be litigated in New York under the doctrine of *forum non conveniens*; (*ii*) the SAC does not establish personal jurisdiction over the Russian Defendants; (*iii*) the SAC's purported federal causes of action, under RICO and the Alien Tort Statute ("ATS"), are legally unsustainable; and (*iv*) the SAC's state law claims should be dismissed through an exercise of supplemental jurisdiction, as they are barred by the statute of limitations and deficient for other reasons, and if not so dismissed should be dismissed for lack of diversity jurisdiction. *Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124, 127 (2d Cir. 2020). We also join the positions set forth in the letter to you from Sberbank CIB USA, Inc. ("Sberbank CIB").

**I.  Factual Background**

This action's core claim is that the Defendant Russian bank (named as a defendant for the first time in the SAC), its Russian chairman and others, in a series of improper actions in Russia culminating in 2013, caused Plaintiff, a Russian national, to be deprived of his purported ownership interest in a Russian property—Krasnaya Polyana—that had been selected as a site for the 2014 Sochi Olympics.[1]  SAC ¶¶ 53, 66-69, 72-75, 80-81, 83-91; *see also* Unsealing Order at 4 (ECF No. 3) (describing action as "involving decades-old transactions in Russia amongst Russians").  Sberbank of Russia was allegedly a lender for financing the necessary improvements, SAC ¶¶ 49-51, 54, but over time, construction was delayed and additional funds and efforts were committed to complete the project in time.  SAC ¶ 64, 69.  The SAC alleges the Russian Defendants invested additional capital in the project, diluting Plaintiff's ownership position to 41.429%, then removed Plaintiff's brother from management and issued false public reports that Plaintiff's brother was responsible for construction delays that threatened the project's readiness.  SAC ¶¶ 61-62, 69, 77.  The SAC claims unspecified improper conduct in a February 2013 meeting among Plaintiff's brother, Defendant Gref, and others, that yielded an agreement whereby Plaintiff's brother would receive one-third of the enterprise's assets and Sberbank of Russia would retain the remaining two-thirds following the Olympics.  SAC ¶ 72.  It also characterizes as coercive a subsequent March 2013 meeting, with Defendant Gref allegedly

---

[1] The SAC says Plaintiff's brother was the actual owner of Krasnaya Polyana and Plaintiff was an unofficial "joint owner."  SAC ¶ 79.  If Plaintiff was not a formal owner of the property, he lacks standing to pursue these claims.

on the phone, in which Plaintiff and/or his brother agreed to sell their remaining shares for $20 million, far less than their interest's asserted value. SAC ¶¶ 83-88. Plaintiff claims this sale took place under pressure and threats, including efforts to initiate criminal proceedings. SAC ¶¶ 87.

The SAC does not allege that the Russian Defendants (or anyone else) engaged in any conduct in the United States related to the transfer of ownership of Krasnaya Polyana. Instead, it seeks to link this Russian dispute to the U.S. by contending that Defendants used Sberbank CIB, a non-banking, New York-based Sberbank subsidiary, SAC ¶ 25, to engage in an international money laundering scheme dating back to 1999, and by asserting "on information and belief" and without supporting facts that "Plaintiff assets which were illegally obtained were…transferred to and/or through" the U.S after Plaintiff lost ownership of Krasnaya Polyana. SAC ¶¶ 111, 119.

The SAC further attempts to Americanize this Russian dispute by alleging that after Plaintiff moved to New York and began seeking compensation years later from various individuals and entities for the loss of Krasnaya Polyana, individuals asserted to be agents for the Defendants improperly threatened the Plaintiff in San Francisco and New York between July and September 2019 that he would face dire personal consequences if he pursued the legal redress he is now pursuing. SAC ¶¶ 135-142. The SAC also alleges that after Plaintiff moved to Miami in 2019, he was improperly arrested on unspecified charges, assertedly at Defendants' instigation, but was released after a brief detention. SAC ¶ 131, 143-44.

## II. This Russian Dispute should be Dismissed on *Forum Non Conveniens* Grounds

The Court should exercise its discretion to dismiss this Russia-centric action for *forum non conveniens* even before considering the absence of personal jurisdiction over the Russian Defendants or the SAC's substantive unsustainability. *Freidzon v. Lukoil*, 14 civ. 5445(AT), 2015 WL 13021409, at *3 (S.D.N.Y. Mar. 12, 2015). This action involving a Russian national's claims about conduct by Russian individuals and entities, governed by Russian law, relating to property located in Russia, is more properly adjudicated in Russian court. *See Bahgat v. Arab Republic of Egypt*, 631 F. App'x 69, 70 (2d Cir. 2016) (affirming dismissal for FNC when "all but one of the key events" took place in Egypt). The relevant witnesses and evidence are in Russia, with no substantial connection to the U.S. No Russian Defendant is alleged to have taken any action in New York; the allegations about the sole U.S. defendant are implausible, collateral and inadequately pleaded; and the U.S. has insufficient interest in this dispute to warrant use of this Court's judicial resources to resolve this dispute.

Plaintiff's choice of the New York forum warrants little deference, as he is a foreign national who does not live here, New York is an inconvenient forum and the invocation of the civil RICO statute supports an inference of forum shopping. *Rudersdal v. Harris*, No. 1:18-cv-11072-GHW, 2020 WL 5836517, at *10 (S.D.N.Y. Sep. 30, 2020). Russian courts are an available and far more appropriate forum for this dispute, because "defendants are amenable to service of process there, and [the forum] permits litigation of the subject matter of the dispute." *Pollux Holding, Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003). Russia has been found an appropriate forum for similar cases. *See, e.g., Base Metal Trading SA v. Russian Aluminum*, 253 F. Supp. 2d 681, 700 (S.D.N.Y. 2003) (RICO, conversion and intentional interference with contract action dismissed for FNC to Russian courts).

The private and public interests implicated in the choice of forum also point to dismissal in favor of a Russian court. *See Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73-74 (2d Cir. 2001) (*en banc*). Russia has an interest in this dispute involving alleged "peril[] [to] the Russian people as a whole," SAC ¶ 177, through alleged wrongful conduct by Russians harming a Russian national and relating to high-profile property in Russia. *Reers v. Deutsche Bahn Ag*, 320 F. Supp. 2d 140, 160 (S.D.N.Y. 2004). Russian adjudication would be "easy, expeditious and inexpensive" compared to litigation in New York. *Pollux Holding*, 329 F.3d at 75. The SAC's allegations about actions in America do not involve U.S. witnesses or evidence, are incidental or inconsequential to the substantive claims, and are insufficient to give this Court an interest in adjudicating this Russia-centered dispute.

### III. The SAC Does Not Establish Personal Jurisdiction over the Russian Defendants

The Court must have personal jurisdiction over each defendant for each claim before that claim can proceed. *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004). The SAC's numerous asserted bases for the Court to exercise personal jurisdiction over the Russian Defendants in New York should all fail, because neither of the Russian Defendants is "present" in New York, the SAC lacks allegations that each claimed cause of action sustainably arises from actions by either Russian Defendant in New York, and it would not be reasonable to hale the Russian Defendants into court here:

- No jurisdiction exists under CPLR § 302(a)(1) because the SAC does not identify how the alleged causes of action arise out of actions in New York by either Russian Defendant. *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006). None exists under CPLR § 302(a)(3) because the SAC does not identify either Russian Defendant's New York contacts from which any cause of action arises. *Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*, 331 F. Supp. 3d 130, 144-45 (S.D.N.Y. 2018);
- Use of RICO's national jurisdiction provision, 18 U.S.C. § 1965(b), is improper because it applies only to parties "in any other district," not parties (like the Russian Defendants) residing abroad. *Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 343 (S.D.N.Y. 2015); and
- No jurisdiction exists under Fed. R. Civ. P. 4(k)(2) because the Russian Defendants lack sufficient minimum contacts with the U.S. and the exercise of jurisdiction over them would be constitutionally unreasonable. *See George Moundreas & Co. v. Jinhai Intelligent Mfg. Co.*, No. 20-CV-2626(VEC), 2021 WL 168930, at *10, *13 (S.D.N.Y. Jan. 18, 2021) (citing *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102,113-14 (1987)).

### IV. The SAC's Purported Federal Claims Are Legally Unsustainable

The SAC's four counts (I-IV) for violation of RICO are legally unsustainable on several grounds, including fundamentally that the SAC disregards strict legal limits on the civil RICO statute's extraterritorial reach. Under 18 U.S.C. § 1964(c), a private RICO action must plead damage to domestic U.S. "business or property" belonging to the plaintiff. *Bascuñán v. Elsaca*, 874 F.3d 806, 819 (2d Cir. 2017). Plaintiff's claimed loss of his interest in Krasnaya Polyana in March 2013 does not constitute an injury to U.S.-based business or property belonging to him. Nor do alleged threats or injuries to Plaintiff's person. *Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 713 (2d Cir. 2019). That is fatal to his RICO claim.

The alleged predicate violations constituting a "pattern of racketeering activity" under § 1962(c) must involve domestic U.S. conduct at the "core" of the alleged scheme to defraud. *See Bascuñán v. Elsaca*, 927 F.3d 108, 122 (2d Cir. 2019). The SAC does not allege any U.S. activities at the core of the alleged misappropriation of Plaintiff's interest in Krasnaya Polyana in Russia in 2013. The SAC's allegations of U.S. money laundering of purported "proceeds" of the alleged taking are conclusory, factually unsupported to the point of implausibility, incongruous because there are no "proceeds" to launder from acquisition of a property, and causally flawed because any "laundering" of proceeds from Krasnaya Polyana would necessarily have taken place after a sale and would consequently be untethered to any harm to Plaintiff. *See Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 11 (2010) (dismissing RICO claim when "conduct directly causing the harm was distinct from the conduct giving rise to the" predicate act).

Counts I and II are also legally insufficient because they do not allege, as required, that Plaintiff's harm flowed directly from investment of racketeering income or acquisition of an interest in or control over the asserted criminal enterprise. *Ouaknine v. MacFarlane*, 897 F.2d 75, 83 (2d Cir. 1990); *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1062-63 (2d Cir. 1996). Count III fails because alleged grouping of a company, its chief executive, its subsidiary and its agents cannot constitute an actionable association-in-fact. *U1IT4Less, Inc. v. FedEx Corp.*, 871 F.3d 199, 205-06 (2d Cir. 2017). Count IV's allegation of a RICO conspiracy cannot survive dismissal of the substantive RICO violations. *First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004).

The SAC's newly added purported claim for breach of the ATS (Count X) cannot be maintained against the Russian Defendants in light of that statute's presumption against extraterritorial application. The SAC's allegations about events that took place entirely abroad are outside the ATS's scope. *Balintulo v. Daimler AG*, 727 F.3d 174, 189-90 (2d Cir. 2013) (in ATS action, "[I]f all the relevant conduct occurred abroad, that is simply the end of the matter"). The U.S. actions on which the SAC seeks to predicate an ATS claim do not fit within the statute's purposefully narrow scope. To be actionable under the ATS, conduct cannot simply be a recognized tort committed in the U.S. against an alien. Instead, it must involve violations within the U.S. of international law norms that are "specific, universal, and obligatory." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 733 (2004). Applying this narrow standard, the Supreme Court has counseled severe caution before any application of the ATS to reach beyond U.S. actions breaching international law norms regarding "violation of safe conducts, infringement of the rights of ambassadors, and piracy" that were recognized when the statute was enacted in 1789. *Id.* at 724-25. Arbitrary arrest, for example, is not actionable under the ATS. *Id.* at 736. Nor is fraud. *IIT v. Vencap, Ltd.*, 519 F.2d 1001, 1015 (2d Cir. 1975) (Friendly, J.).

The SAC cannot rebut the ATS's presumption against extraterritoriality by alleging selected acts in the U.S., but must instead plead facts "establish[ing] that the conduct relevant to the statute's focus occurred in the United States," *Nestle USA, Inc. v. Doe*, 141 S. Ct. 1931, 1936 (2021), or that the conduct "touch[es] and concern[s] the territory of the United States" with "sufficient force," *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 124-25 (2013). The SAC's attempts to bootstrap allegations about U.S. conduct that does not itself amount to a violation of the ATS to claims focused on Plaintiff's loss of his property in Russia do not satisfy this rigorous requirement.

Hon. Analisa Torres 5

      For the foregoing reasons, we request permission to file a motion to dismiss the SAC pursuant to Fed. R. Civ. P. 12.

                                    Respectfully submitted,

                                    DEBEVOISE & PLIMPTON LLP

By: */s/ John S. Kiernan*
    John S. Kiernan
    jskiernan@debevoise.com

    919 Third Avenue
    New York, New York 10022
    (212) 909-6000

    *Counsel for Sberbank of Russia*

cc: All counsel of record (via ECF)