UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                     :

AKHMED GADZHIEVICH BILALOV,     :

                             :    1:20-cv-09153-AT-KNF

                  Plaintiff,    :

                             :    Hon. Analisa Torres

           -against-       :

                             :

HERMAN GREF, SBERBANK CIB USA, INC., :   **ORAL ARGUMENT REQUESTED**
SBERBANK OF RUSSIA PJSC, and DOES 1-  :
100 inclusive,                  :

                             :

                  Defendants. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## MEMORANDUM IN SUPPORT OF MOTION BY SBERBANK OF RUSSIA AND HERMAN GREF TO DISMISS THE SECOND AMENDED COMPLAINT

John S. Kiernan
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022

*Counsel for Defendants Sberbank of Russia and Herman Gref*

# TABLE OF CONTENTS

**Page**

Table of Authorities .................................................................................................. iii

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 3

I.  The Transfer of Ownership of Krasnaya Polyana ............................................. 3

II.  Alleged Activities in the United States ............................................................ 5

III.  The Complaint .................................................................................................. 7

ARGUMENT ................................................................................................................ 8

I.  The SAC Should Be Dismissed Under the Doctrine of *Forum Non Conveniens* in Favor of Adjudication in Russia ...................................................................... 8

    A.  Plaintiff's Choice of a New York Forum Is Not Entitled to Deference ................. 9

    B.  Russian Courts Are an Available and Adequate Forum for the SAC's Claims .... 10

    C.  Public and Private Interests Weigh Strongly in Favor of Russian Adjudication ... 11

II.  The SAC Does Not Establish Personal Jurisdiction over the Russian Defendants ........... 13

    A.  The SAC Does Not Establish General Jurisdiction over the Russian Defendants 14

    B.  The SAC Does Not Establish Specific Jurisdiction over the Russian Defendants 15

        1.  CPLR § 302(a) Does not Provide a Basis for Jurisdiction ....................... 16

        2.  RICO's Jurisdictional Provision Does Not Extend over Foreign Defendants ........................................................................................ 18

        3.  The Russian Defendants Lack Minimum Contacts Sufficient to Impose Jurisdiction Under Fed. R. Civ. P. 4(k)(2) ................................................. 18

III.  The SAC's RICO Counts Are Not Legally Sustainable .................................... 19

    A.  Plaintiff's Claims Impermissibly Seek Extraterritorial Application of the RICO Statute ........................................................................................................... 21

        1.  The SAC Does Not Identify Harm to Plaintiff's U.S. Business or Property ............................................................................................... 21

        2.  The SAC's Predicates Do Not Allege Relevant U.S. Conduct ................ 22

    B.  Plaintiff's RICO Theories Are Substantively Flawed .......................................... 23

IV.    The SAC's Alien Tort Statute Count Is Not Legally Sustainable.....................................25

       A.    The ATS Does Not Apply Extraterritorially .........................................................26

       B.    The U.S. Conduct Alleged in the SAC Is Insufficient to Domesticate the Dispute
             ............................................................................................................................27

       C.    The Torts Alleged in the SAC Are Not Cognizable Under the ATS....................28

V.     The Court Should Exercise Its Supplemental Jurisdiction To Dismiss the Non-Federal
       Claims ............................................................................................................................30

       CONCLUSION................................................................................................................31

## <u>TABLE OF AUTHORITIES</u>

CASES

*Arndt v. UBS AG*, 342 F. Supp. 2d 132 (E.D.N.Y. 2004) ...................................................... 28, 29

*Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102 (1987) .................................. 16, 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................. 20

*Bahgat v. Arab Rep. of Egypt*, 13 Civ. 894 (AT) (AJP), 2015 WL 13654006 (S.D.N.Y. Mar. 31, 2015)......................................................................................................................... 8

*Bahgat v. Arab Rep. of Egypt*, 631 F. App'x 69 (2d Cir. 2016) ........................................... 8, 11

*Balintulo v. Daimler AG*, 727 F.3d 174 (2d Cir. 2013) ......................................................... 26

*Bascuñán v. Elsaca*, 874 F.3d 806 (2d Cir. 2017) ................................................................. 21

*Bascuñán v. Elsaca*, 927 F.3d 108 (2d Cir. 2019) ................................................................. 22

*Base Metal Trading SA v. Russian Aluminum*, 253 F. Supp. 2d 681 (S.D.N.Y. 2003), *aff'd*, 98 F. App'x. 47 (2d Cir. 2004) ...................................................................................... 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................. 20

*Burnham v. Superior Court of Cal.*, 495 U.S. 604 (1990) ..................................................... 14

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342 (S.D.N.Y. 2014).........18

*Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362 (S.D.N.Y. 2014)........................................22

*Chew v. Dietrich*, 143 F.3d 24 (2d Cir. 1998) ....................................................................... 22

*Chowdhury v. WorldTel Bangl. Holding, Ltd.*, 746 F.3d 42 (2d Cir. 2014) ........................... 27

*D. Penguin Bros. v. City Nat'l Bank*, 587 F. App'x 663 (2d Cir. 2014) ................................. 20

*Daimler AG v. Bauman*, 571 U.S. 117 (2014)................................................................... 14, 15

*DeFalco v. Bernas*, 244 F.3d 286 (2d Cir. 2001) .................................................................. 20

*DeLorenzo v. Viceroy Hotel Grp., LLC*, 757 F. App'x 6 (2d Cir. 2018) .................................. 13

*Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055 (2d Cir. 1996) .............................................. 24, 25

*Eliahu v. Jewish Agency for Israel*, 919 F.3d 709 (2d Cir. 2019) ..................................... 21, 30

*Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331 (S.D.N.Y. 2015)............................................18

*European Community v. RJR Nabisco, Inc.*, 764 F.3d 129 (2d Cir. 2014) ...................................22

*Fantis Foods v Standard Importing Co.*, 49 N.Y.2d 317 (1980)...................................17

*First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004)...............................25

*Flores v. v. S. Peru Copper Corp.*, 414 F.3d 233 (2d Cir. 2003) ...................................28

*Freidzon v. Lukoil*, 14 Civ. 5445(AT), 2015 WL 13021409 (S.D.N.Y. Mar. 12, 2015)......8, 9, 11

*George Moundreas & Co. SA v. Jinhai Intelligent Mfg. Co. SA*, 20-CV-2626 (VEC), 2021 WL 168930 (S.D.N.Y. Jan. 18, 2021) ...................................19

*Goodyear Dunlop Tires Operations v. Brown*, 564 U.S. 915 (2011) ...................................15

*Graziose v. Am. Home Prods. Corp.*, 161 F. Supp. 2d 1149 (D. Nev. 2001) ...............................15

*Gucci Am. v. Bank of China*, 768 F.3d 122 (2d Cir. 2014) ...................................14

*Hamid v. Price Waterhouse*, 51 F.3d 1411 (9th Cir. 1995) ...................................29

*Hatfield v. Asphalt International, Inc.*, 03-cv-1372(DAB), 2004 WL 287680 (S.D.N.Y. Feb. 11, 2004) ...................................15

*Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1 (2010) ...................................23

*Herald* v. *Kohn (In re Herald)*, 540 F. App'x 19 (2d Cir. 2013) ...................................10, 11

*Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*, 331 F. Supp. 3d 130 (S.D.N.Y. 2018) ...................................16

*IIT v. Vencap, Ltd.*, 519 F.2d 1001 (2d Cir. 1975)...................................28-29

*In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453 (S.D.N.Y. 2008)...................................16

*In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 449 (S.D.N.Y. 2005)...................................13

*In re Parmalat Sec. Litig.*, 479 F. Supp. 2d 332 (S.D.N.Y. 2007)...................................25

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)...................................15

*Iragorri* v. *United Techs. Corp.*, 274 F.3d 65 (2d Cir. 2001)...................................9, 11

*JCorps Int'l, Inc. v. Charles & Lynn Schusterman Family Found.*, 828 F. App'x 740 (2d Cir. 2020)...................................17

*Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386 (2018) ...................................26

*JihShyr Yih v. Taiwan Semiconductor Mfg. Co.*, 18-cv-3844(CS), 2019 WL 2578306 (S.D.N.Y. June 24, 2019) ..................................................................................... 14

*Kadic v. Karadzic*, 70 F.3d 232 (2d Cir. 1995) ........................................................ 28

*Kerik v. Tacopina*, 64 F. Supp 3d 542 (S.D.N.Y. 2014) ........................................... 30

*Kiobel v. Royal Dutch Petro. Co.*, 569 U.S. 108 (2013) ..................................... 26, 27

*Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44 (2d Cir. 1991) ............................. 15

*LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210 (2000) ............................................ 17

*Licci v. Lebanese Canadian Bank, SAL*, 834 F.3d 201 (2d Cir. 2016) ....................... 26

*Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106 (2d Cir. 2013) ....... 30

*McGowan v. Smith*, 52 N.Y.2d 268 (1981) ............................................................. 16

*Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010) ....................................... 27

*Nahl v. Jaoude*, 968 F.3d 173 (2d Cir. 2020) ..................................................... 29-30

*Nestle USA, Inc. v. Doe*, 141 S. Ct. 1931 (2021) ............................................... 26, 27

*Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146 (2d Cir. 2005) ............. 8, 10

*One World, LLC v. Onoufriadis*, 20 Civ. 5802(CM), 2021 WL 184400 (S.D.N.Y. Jan. 19, 2021) ...................................................................................................... 24, 30

*Ouaknine v. MacFarlane*, 897 F.2d 75 (2d Cir. 1990) ........................................ 23, 24

*Overseas Media, Inc.* v. *Skvortsov*, 277 F. App'x 92 (2d Cir. 2008) .......................... 9

*Penguin Group (USA) Inc. v. American Buddha*, 609 F.3d 30 (2d Cir. 2010) ............. 17

*Peterson v. Islamic Republic of Iran*, 10 Civ. 4518(KBF), 2013 WL 1155576 (S.D.N.Y. Mar. 13, 2013) ............................................................................................... 19

*Piper Aircraft v. Reyno*, 454 U.S. 235 (1981) ......................................................... 9

*Pollux Holding, Ltd.* v. *Chase Manhattan Bank*, 329 F.3d 64 (2d Cir. 2003) .......... 9, 10

*Porina v. Marward Shipping Co., Ltd.*, 521 F.3d 122 (2d Cir.2008) .......................... 19

*PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65 (2d Cir. 1998) ................ 18

*Reers v. Deutsche Bahn Ag*, 320 F. Supp. 2d 140 (S.D.N.Y. 2004) ........................... 12

*RIGroup LLC* v. *Trefonisco Mgmt.*, 949 F. Supp. 2d 546 (S.D.N.Y. 2013), *aff'd*, 559 F. App'x 58 (2d Cir. 2014) ..............................................................................................12

*RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090 (2016) .............................. 21, 22, 28

*Rosenblatt v. Coutts & Co. AG*, 17 Civ. 3528 (AKH), 2017 WL 3493245 (S.D.N.Y. Aug. 14, 2017).............................................................................................................15

*Rosenshein v. Meshel*, 688 F. App'x 60 (2d Cir. 2017) ..............................................................25

*Rudersdal v. Harris*, 18-cv-11072-GHW, 2020 WL 5836517 (S.D.N.Y. Sept. 30, 2020)...........10

*Segal v. Bitar*, 11 Civ. 4521(LBS), 2012 WL 273609 (S.D.N.Y. Jan. 30, 2012)........................18

*Sikhs for Justice, Inc. v. Nath*, 596 F. App'x 7 (2d Cir. 2014) ....................................................27

*Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100 (2d Cir. 2006)...............16

*Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004) .......................................................... 26, 28, 29

*SPV Osus Ltd. v. UBS AG*, 882 F.3d 333 (2d Cir. 2018) ............................................................13

*Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124 (2d Cir. 2020) .........................................................30

*Turedi v. Coca Cola Co.*, 460 F. Supp. 2d 507 (S.D.N.Y. 2006), *aff'd*, 343 F. App'x. 623 (2d Cir. 2009).......................................................................................................... 10, 11

*U1IT4Less, Inc. v. FedEx Corp.*, 871 F.3d 199 (2d Cir. 2017) ..............................................24-25

*U.S. v. All Assets Held at Bank Julius, Baer & Co.*, 251 F. Supp. 3d 82 (D.D.C. 2017) .............22

*Waldman v. PLO*, 835 F.3d 317 (2d Cir. 2016).........................................................................14

*Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196 (2d Cir. 2001) .................................................17

## STATUTES

18 U.S.C. § 1951............................................................................................................30

18 U.S.C. § 1962................................................................................20, 22, 23, 24, 25

18 U.S.C. § 1964...................................................................................................... 20, 21

18 U.S.C. § 1965............................................................................................................18

28 U.S.C. § 1332............................................................................................................30

28 U.S.C. § 1350.......................................................................................................25-26

28 U.S.C. § 1367................................................................................................................30

N.Y. CPLR § 301.............................................................................................................15

N.Y. CPLR § 302.................................................................................................15, 16, 17

**RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 4..........................................................................................................18, 19

Fed. R. Civ. P. 9................................................................................................................20

Fed. R. Civ. P. 12.......................................................................................................*passim*

Defendants Sberbank of Russia (erroneously referred to in the complaint and caption as "Sberbank of Russia PJSC") ("Sberbank") and Mr. Herman Gref (together, the "Russian Defendants") submit this memorandum in support of their motion to dismiss the Second Amended Complaint (the "SAC"), ECF No. 51.

## PRELIMINARY STATEMENT

Plaintiff Akhmed Bilalov asks the Court in the SAC to adjudicate "decades-old transactions in Russia amongst Russians," Unsealing Order at 4 (ECF No. 3) (Woods, J.), as a result of which Plaintiff, a Russian national, alleges he unwarrantedly lost interests he held in Krasnaya Polyana, a property selected as the site for the 2014 Sochi Olympics media village and ski jump facility.  Plaintiff claims that Defendant Sberbank—sometimes allegedly acting through its CEO and chairman Defendant Gref—wrongfully abused its position as a lender and investor in the project to take over Plaintiff's interest in Krasnaya Polyana.  According to the SAC, the Russian Defendants combined wrongful threats and other pressures with false assertions about mismanagement and delays purportedly threatening Krasnaya Polyana's readiness for the Olympics, to oust Plaintiff's brother from management and compel Plaintiff and his brother to convey their interests in Krasnaya Polyana.  As a result of this alleged conspiracy reaching up to the "inner circle" of Russian President Putin, the SAC alleges, Plaintiff was improperly forced to dilute or sell pieces of his ownership in incremental stages, culminating in a sale of his remaining interest for far less than its actual value in 2013.

Plaintiff's claims should be dismissed under the doctrine of *forum non conveniens*, in favor of adjudication in Russian courts that plainly have more interest than the United States and far readier capacity to adjudicate this clearly Russian dispute between Russians about actions in Russia relating to a high-profile Russian property.  The SAC should alternatively be dismissed as against the Russian Defendants for lack of personal jurisdiction over them, since they are not

"found" in New York and took no actions in New York in connection with any sustainable claim Plaintiff has alleged.

If the Court reaches the merits, it should dismiss the SAC's federal claims—claiming violations of the civil RICO statute and the Alien Tort Statute ("ATS")—for failure to state a claim on several grounds. These statutes do not apply to claims whose core is extraterritorial as the SAC's claims are. The SAC also does not even attempt to satisfy the civil RICO statute's requirement of a pleading of injury to domestic U.S. business and property belonging to the Plaintiff. The SAC further does not satisfy the ATS's rigorous requirement that the predicate alleged domestic tort involve violation of the "law of nations," an extremely narrow set of torts that do not embrace Plaintiff's purported claims. The SAC's other counts should be dismissed under the Court's supplemental jurisdiction, too, for failure to state a claim and/or untimeliness under the applicable statute of limitations, as set forth in the submission by Defendant Sberbank CIB USA, Inc. ("SCIB") (which the Russian Defendants join in whole), or if not, then for lack of diversity jurisdiction following rejection of the SAC's unsustainable federal claims.

Plaintiff has not succeeded in Americanizing this dispute in ways that make the SAC's claims sustainable (as the complaint's two prior iterations have also tried and failed to do) by naming as an additional defendant Sberbank's non-banking U.S. subsidiary SCIB and accusing it of money laundering in New York of unspecified "assets" relating to the transfer of ownership of Krasnaya Polyana. As explained in SCIB's submission, the SAC does not contain a single well-pleaded allegation of any action taken by SCIB in connection with the changes of ownership of Krasnaya Polyana that culminated in 2013. The SAC's colorful accusations of money laundering are unsupported by any specifics about these transactions, any factual allegations plausibly explaining what alleged "assets" acquired by Sberbank in connection with Krasnaya

Polyana needed "laundering" and were laundered in the United States, what the conclusorily alleged after-the-fact laundering accomplished, or how it caused any damage to Plaintiff.

Plaintiff similarly does not provide a basis for this Court's adjudication of his claims by alleging that Plaintiff was improperly threatened by asserted representatives of Defendants in 2019, after he relocated to the United States and threatened litigation if not compensated by Defendants for his claimed losses, or by alleging that Defendants maliciously provided unspecified false information that led to his unwarranted arrest (on charges the SAC conspicuously does not identify) by the Department of Homeland Security in Miami in October 2019.   Among the many shortcomings of these allegations, they do not establish a factual predicate for liability under RICO, the ATS or any other cause of action in the SAC.

This Court should reject as procedurally and substantively unsustainable Plaintiff's effort to pursue in New York federal court his claims regarding long-ago perceived wrongs in Russia.

## STATEMENT OF FACTS

### I.      The Transfer of Ownership of Krasnaya Polyana

In 2006, before Krasnaya Polyana was identified as a site for the 2014 Sochi Olympics, Magomed Bilalov, the Plaintiff's brother, "became the owner of 84.85% of JSC Krasnaya Polyana." SAC ¶ 45.  Plaintiff alleges that although his brother was presented as Krasnaya Polyana's owner and manager, "because Plaintiff was involved in politics," Plaintiff was actually a "joint" owner of the interest nominally owned by his brother.  SAC ¶ 46.  Sochi was selected as the site of the 2014 Winter Olympics in 2007, and the Russian Government announced in that same year that Krasnaya Polyana would be part of the Olympics complex.  SAC ¶ 47.

The SAC conspicuously avoids saying whether Plaintiff's alleged "joint ownership" was an actual shareholding or a private arrangement with his brother regarding interests in his brother's name; if the latter, Plaintiff lacks standing to bring this action.  The SAC inconsistently

refers to these shares as belonging to Plaintiff's brother, to Plaintiff, or to both of them. For example, the SAC alleges that "the necessity of additional financial investment" by others in Krasnaya Polyana after 2008 caused a dilution of existing interests such that "[a]s of 2010, *Plaintiff and his brother* were shareholders of 60% of the Krasnaya Polyana." SAC ¶¶ 58-59 (emphasis added). The SAC then alleges that further investments by others in 2012 caused the "number of *Plaintiff's* shares [to be] purposefully diluted to 41.429%," SAC ¶ 69, while inconsistently alleging with regard to the same shares shortly thereafter that "[a]s of March 2013, *Plaintiff's brother* was an actual shareholder of 41.429% (1426 ordinary shares) of 'Krasnaya Polyana,'" SAC ¶ 79 (emphasis added). While the SAC alleges that Sberbank ultimately obtained 92% of Krasnaya Polyana's shares, SAC ¶¶ 86-87, 91, the SAC does not clearly allege Plaintiff's possession of a personal legally protectable interest supporting his purported claims.

Beginning in 2008, Sberbank was a lender to and an investor in Krasnaya Polyana to finance the improvements needed for the Olympics. SAC ¶¶ 49, 51, 54. Over time, as construction was delayed and additional funds and efforts were needed to complete the project in time, Sberbank and others increasingly invested in the project. SAC ¶¶ 56-58. In mid-2012, Sberbank and others made substantial additional investments and engaged new contractors, replacing contractors controlled by Magomed Bilalov. SAC ¶¶ 61, 64. Additional investment and new direction led to dilution of the Bilalov ownership interest in Krasnaya Polyana in 2010, 2012 and 2013. SAC ¶¶ 59, 69, 79. It also led to "conflict between Plaintiff's brother and Herman Gref," who allegedly oversaw Sberbank's investment, resulting in Magomed Bilalov's removal from management of the project in 2012. SAC ¶ 66.

The SAC alleges that in February 2013, Defendants and others "presented a libelous report" on live television to Russian President Putin asserting that Plaintiff's brother was

responsible for the cost overruns and delays.  SAC ¶ 77.  In that same month, the SAC alleges, a meeting among Plaintiff's brother, Mr. Gref and others yielded an agreement that Plaintiff's brother would receive one-third of the enterprise's assets and Sberbank would retain the remaining two-thirds following the Olympics.  SAC ¶ 72.

At a later meeting in March 2013, with Mr. Gref allegedly on the phone, Plaintiff's brother agreed to transfer the remaining 41.429% of Krasnaya Polyana for $20 million.  SAC ¶¶ 83-87.  Plaintiff claims this sale agreement took place under pressure and threats against Plaintiff and his family, including efforts to initiate criminal proceedings, and was far below market value.  SAC ¶¶ 83, 87.  Following this allegedly forced sale and further investments and purchases, Sberbank allegedly ended up as 92% owner of Krasnaya Polyana, with the Bilalovs holding no continuing interest after 2013.  SAC ¶ 91.

The SAC alleges that Plaintiff faced continued harassment and threats within Russia even after these interests were conveyed in 2013, and that Plaintiff was even poisoned.  SAC ¶¶ 120-23.  Plaintiff, while in Russia, allegedly responded by "initiat[ing] actions to protect his rights and the rights of his family members."  SAC ¶ 122.  Plaintiff allegedly "fled Russia and moved to New York" in 2016, SAC ¶ 124, relocating in August 2019 to Florida (where he resides today).  SAC ¶¶ 18, 143.

## II.    Alleged Activities in the United States

The SAC does not allege that the Russian Defendants (or anyone else) engaged in any conduct in the United States related to the transfer of ownership of Krasnaya Polyana from the Bilalovs.  Instead, the SAC contends that at some later time, Defendants and other members of President Putin's "inner circle" used SCIB, a non-banking, New York-based Sberbank subsidiary, SAC ¶ 25, to engage in a wide-ranging international money laundering scheme dating back to 1999 with co-conspirators like Citibank, and "upon information and belief" and without

supporting facts, alleges that "Plaintiff['s] assets which were illegally obtained were…transferred to and/or through" the U.S after Plaintiff lost ownership of Krasnaya Polyana. SAC ¶¶ 110, 111, 119.  The SAC does not even attempt to explain what "laundering" could have applied to "Plaintiff's assets," which, as alleged by Plaintiff, consisted of interests in a real estate venture rather than cash, much less why there would have been any reason for Sberbank to launder such assets since it had openly acquired its interests through purchases or investments that diluted existing shareholders.  The SAC also does not offer any explanation about how such after-the-fact laundering of money would have caused damage to or otherwise affected Plaintiff or his alleged interest in Krasnaya Polyana.  The submission by SCIB describes other factual and pleading shortcomings relating to SCIB, while pointing out that the SAC contains no allegations of any conduct by SCIB actually affecting the Russian transactions and changes in Plaintiff's alleged ownership interests in Krasnaya Polyana culminating in 2013.

The SAC further contains allegations regarding responses to Plaintiff's efforts beginning in 2018, five years after the Bilalov interests in Krasnaya Polyana were reduced to zero, to "recover some of his assets" by threatening litigation unless he was compensated.  SAC ¶ 125. The SAC alleges that individuals asserted to be agents for the Defendants improperly threatened Plaintiff in San Francisco and New York between July and September 2019 that he would face dire personal consequences if he pursued legal redress.  SAC ¶¶ 135-142.  Those alleged threats did not deter Plaintiff from bringing this action.

The SAC also alleges that after Plaintiff relocated to Miami in 2019, he was improperly arrested by the Department of Homeland Security based on false information provided by unspecified "Defendants."  SAC ¶ 131, 144 (Plaintiff repeatedly refers to all defendants named in various iterations of the complaint as though they are interchangeable).   The SAC

conspicuously does not state the grounds for Plaintiff's arrest, although public reports suggest he was detained by ICE for purposely overstaying his visa and remains subject to deportation proceedings following his release on bond.[1]  The SAC also does not identify what false information Defendants are alleged to have maliciously provided that makes them liable for the DHS decision to detain Plaintiff.

### III.    The Complaint

Plaintiff has amended his complaint twice, including once after receiving pre-motion letters from Defendants' counsel directed exclusively to Plaintiff's counsel as provided by the Court's Individual Practices, adding and subtracting defendants (including most recently adding Sberbank for the first time), and adding and subtracting purported causes of action (most recently including addition of a count under the ATS) and factual allegations (most recently including the extensive disquisition on SCIB's alleged money laundering).  *See* ECF Nos. 4, 11.  The current version of the complaint contains four counts claiming violations of the civil RICO statute, one claiming violation of the ATS statute, and five non-federal counts for fraud, conspiracy to commit fraud, unlawful conversion, malicious prosecution and unjust enrichment.

---

[1]      *See* Adriana G. Licon, *Feds Detain Ex-Russian Olympic Official in South Florida*, Associated Press (Oct. 23, 2019), https://apnews.com/article/01cb86e1c4cc4d218bca81ec0bdd4176 (quoting DHS spokesperson that "Bilalov had arrived in the United States for a temporary stay on May 2, 2016, but 'failed to depart in accordance with the terms of his admission.'"); *Russian National Bilalov Released on Bond From US Detention—ICE Spokesperson*, TASS (Nov. 1, 2019), https://tass.com/world/1086649 (different DHS spokesperson stating that Bilalov was held from Oct. 23rd to Oct. 31st, "was released from ICE custody…after posting bond, and he remains in removal proceedings before the courts.")..

## ARGUMENT

**I.    The SAC Should Be Dismissed Under the Doctrine of *Forum Non Conveniens* in Favor of Adjudication in Russia**

This dispute should not be adjudicated in a New York court.  As this Court has previously recognized, the Court has the discretionary power to dismiss a complaint for *forum non conveniens* ("FNC") before considering personal jurisdiction or the complaint's substantive sustainability.  *See Freidzon v. Lukoil*, 14 Civ. 5445(AT), 2015 WL 13021409, at *3 (S.D.N.Y. Mar. 12, 2015) (Torres, J.).  The Court should follow that course and dismiss the SAC on FNC grounds here, where Plaintiff is unwarrantedly seeking to impose on a New York federal court the adjudication of a plainly Russian-centric dispute "relat[ing] to: (1) Plaintiff's ownership interests in Russian corporations acquired when Plaintiff resided in Russia; (2) business transactions that were conducted in Russia…(5) an allegedly fraudulent scheme to divest Plaintiff…of ownership in Russian stock; and (6)…corporate defendants headquartered in Russia and one American corporate defendant that is an independent, wholly-owned subsidiary of one of the Russian corporate defendants." *Id.* at *4.

In the context of the strong Russian center of gravity of this dispute, the SAC's susceptibility to dismissal for FNC turns on (i) the degree of deference to be accorded to the plaintiff's choice of forum; (ii) the determination whether the alternative forum is adequate to adjudicate the parties' dispute; and (iii) a balancing of the private and public interests implicated in the forum choice.  *Bahgat v. Arab Rep. of Egypt*, 13 Civ. 894 (AT) (AJP), 2015 WL 13654006, at *7 (S.D.N.Y. Mar. 31, 2015) (Torres, J.), *aff'd*, 631 F. App'x 69 (2d Cir. 2016) ("*Bahgat II*") (citing *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005)).  All of these factors weigh in favor of dismissal for FNC.

### A.     Plaintiff's Choice of a New York Forum Is Not Entitled to Deference

Plaintiff's choice of a New York forum does not warrant deference.  The appropriate level of deference to a plaintiff's choice of forum depends on the plaintiff's relationship with that forum.  *See Pollux Holding, Ltd.* v. *Chase Manhattan Bank*, 329 F.3d 64, 71 (2d Cir. 2003).  Greater deference is warranted when the "plaintiff[] or the lawsuit [has a] *bona fide* connection to the United States,…and the more it appears considerations of convenience favor a hearing in the U.S." *Iragorri* v. *United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (*en banc*).  Less deference is appropriate when "the plaintiff's choice…was motivated by forum-shopping reasons—such as attempts to win a tactical advantage resulting from local laws…the defendant's unpopularity in the region, or the inconvenience and expense to the defendant resulting from litigation" in the forum.  *Id.*

Plaintiff presents no strong bases for the Court to defer to his forum choice.  His claims center on business dealings in Russia in connection with a high-profile Russian property, and as in other cases appropriate for FNC, this "lawsuit arises from business the plaintiff conducted abroad." *Freidzon*, 2015 WL 13021409, at *4 (internal quotes and citations omitted).  Plaintiff is a Russian citizen who had no connections to the United States during the period of relevant conduct regarding Krasnaya Polyana, or at any time thereafter until he relocated to New York, and thereafter to Florida, several years after losing whatever ownership interest he had in the property.  "It is well established that a *foreign* plaintiff's choice of forum deserves less deference." *Overseas Media, Inc.* v. *Skvortsov*, 277 F. App'x 92, 96 (2d Cir. 2008); *Piper Aircraft v. Reyno*, 454 U.S. 235, 255 (1981) (less deference when plaintiff does not select his home forum).  Two of the three Defendants have no connection to this district that would make New York convenient—so much so that the Court lacks personal jurisdiction over them—and

the third has no connection to the relevant facts.  The SAC's litany of alleged participants in the events leading to this lawsuit does not include a single American.

Plaintiff is entitled to even less deference because his conduct indicates forum-shopping. Choosing a forum for the purpose of invoking RICO or ATS causes of action is a strong indication of forum-shopping.  *Rudersdal v. Harris*, 18-cv-11072-GHW, 2020 WL 5836517, at *10 (S.D.N.Y. Sept. 30, 2020) (RICO); *Turedi v. Coca Cola Co.*, 460 F. Supp. 2d 507, 528 (S.D.N.Y. 2006), *aff'd*, 343 F. App'x. 623 (2d Cir. 2009) (invocation of ATS does not create special interest entitled to deference).  The SAC explicitly seeks to paint Defendants in ways calculated to arouse negative political feelings about Russia, another indicator of forum-shopping.  *See, e.g.*, SAC ¶¶ 7-15, 156-173 (describing "reiderstvo" [corporate raiding] as a "Russian phenomenon" involving all aspects of a corrupt Russian society: "journalists, lawyers, accountants, judges and law enforcement" and presenting allegations about entirely unrelated transactions with extensive allegations of government-sponsored corruption).

### B.    Russian Courts Are an Available and Adequate Forum for the SAC's Claims

Russian courts are plainly an available and adequate forum here.  "An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute."  *Pollux Holding*, 329 F.3d at 75.  This requirement is generally met so long as the forum offers remedies for the alleged wrongs, even if the causes of action and relief available are not identical.  *See Herald* v. *Kohn (In re Herald)*, 540 F. App'x 19, 27 (2d Cir. 2013); *Norex*, 416 F.3d at 158 ("an adequate forum does not depend on the existence of the identical cause of action…nor on identical remedies").

Here, the Russian Defendants and all relevant witnesses and documents are located in Russia, not in the United States, and the Russian Defendants are amenable to suit in Russia.

Russian law also provides adequate remedies for the kinds of causes of action asserted in the SAC. *See, e.g.*, *Base Metal Trading SA v. Russian Aluminum*, 253 F. Supp. 2d 681, 700, 705-06 (S.D.N.Y. 2003), *aff'd*, 98 F. App'x. 47, 49-50 (2d Cir. 2004) (dismissing RICO and related fraud claims on FNC in favor of adjudication in Russia, and finding Russia was an adequate forum despite specific allegations of corruption); *Turedi*, 460 F. Supp. 2d at 525-26 (dismissing ATS claims in favor of adjudication in Russia).

While Plaintiff has contended that New York is an appropriate forum based on alleged after-the-fact money laundering in New York by Sberbank of Russia's non-banking subsidiary, SCIB, alleged threats in New York and elsewhere and alleged false charges to procure his arrest in Florida, the mere existence of a "tail" of these weakly alleged U.S. activities coming years after the alleged wrongful transfer of the Krasnaya Polyana interests does not present a reason for the Court to adjudicate a dispute whose essence and center of gravity are so overwhelmingly Russian. *See, e.g.*, *Bahgat II*, 631 F. App'x at 70 (affirming dismissal for FNC when "all but one of the key events" took place in Egypt); *Freidzon*, 2015 WL 13021419, at *5 (allegations of subsequent money laundering of proceeds in-forum "does not show a connection to this forum that would make adjudication here either more relevant or convenient").

### C.   Public and Private Interests Weigh Strongly in Favor of Russian Adjudication

The private and public interests implicated in the choice of forum also point to dismissal in favor of a Russian court. *See Iragorri*, 274 F.3d at 73-74; *In re Herald,* 540 F. App'x at 28-29 (listing public and private interest factors).

Russia has an undeniable interest in hearing this dispute. The SAC's allegations concern allegedly lawless compelled transfer of shares in a high-profile Russian entity from one Russian to another, in violation of Russian law and through the improper use of Russian courts, Russian

law enforcement and members of the "inner circle" of Russian government.  *See Reers v. Deutsche Bahn Ag*, 320 F. Supp. 2d 140, 160 (S.D.N.Y. 2004) ("France's active interest in these matters is evident both from [its] criminal investigation into the [train] accident" and from its regulation of the underlying allegedly tortious conduct); *RIGroup LLC* v. *Trefonisco Mgmt.*, 949 F. Supp. 2d 546, 558 (S.D.N.Y. 2013), *aff'd*, 559 F. App'x 58 (2d Cir. 2014) ("Given that the dispute in this case concerns alleged misconduct in Russia, involving a Russian business engaged in real estate investment and development in Russia, there is little question that the 'local interest' factor strongly favors a Russian forum.").  All of the relevant evidence and witnesses are located in Russia, with no capacity for either party to compel their attendance in New York court or testimony in this action, and all relevant communications and documents are in the Russian language. *See Freidzon*, 2015 WL 13021419, at *7 (attaching weight in FNC analysis to records in Russia potentially "beyond this Court's power to compel" and recognizing that "most, if not all, of the relevant documents are likely in Russian and would require translation.").

Conversely, New York has little interest in this dispute.  The causes of action arise from actions that took place outside New York.  The only allegations relating to New York involve alleged interactions in which Russian individuals—who the SAC asserts without supporting detail were acting for Russian Defendants—purportedly made harsh threats to Plaintiff in an unsuccessful effort to dissuade him from filing this suit, SAC ¶¶ 137-142, and the conclusory and entirely speculative allegation that "the Plaintiff assets that were illegally obtained," SAC ¶ 119, from the Krasnaya Polyana transaction were laundered through SCIB in New York (without identifying what "assets" of the acquired real estate needed to be laundered or how any alleged money laundering would have had any significance for Plaintiff).  These allegations are not a component of the SAC's purported federal causes of action under RICO or the ATS or of

any of the SAC's purported non-federal claims, as explained more fully below.  While New York has an interest in preventing improper threats made in New York, that interest does not counterbalance the Russian center of gravity of this dispute or the absence of a cause of action related to those alleged threats.

## II.   The SAC Does Not Establish Personal Jurisdiction over the Russian Defendants

If the Court does not dismiss the SAC for FNC, it should dismiss the SAC as against the Russian Defendants for failure to establish personal jurisdiction over them.  This action arises from conduct rooted in Russia, and the SAC does not justify haling the Russian Defendants into court in New York.  Sberbank's and Mr. Gref's presences in New York are far too limited to support general jurisdiction over them, and the SAC does nothing to explain how any of its claims arise from conduct by Mr. Gref or Sberbank linked to New York.

Plaintiff bears the burden of establishing personal jurisdiction.  *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 449, 452 (S.D.N.Y. 2005).  The SAC presents an unfiltered litany of alternative asserted bases for jurisdiction, but none of those bases satisfies its obligation to present a *prima facie* showing that includes "an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant."  *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342-43 (2d Cir. 2018); *DeLorenzo v. Viceroy Hotel Grp., LLC*, 757 F. App'x 6, 8 (2d Cir. 2018) ("Conclusory non-fact-specific jurisdictional allegations or legal conclusions couched as a factual allegation will not establish a *prima facie* showing of jurisdiction") (internal quotes omitted).

In particular, the SAC does not adequately plead facts establishing either (1) general jurisdiction—that the Russian Defendants are "at home" in New York or (2) specific jurisdiction—that the Russian Defendants not only operate substantially in New York but also

engaged in conduct in or linked to New York from which each of the Plaintiff's claims arises. *See Waldman v. PLO*, 835 F.3d 317, 331 (2d Cir. 2016).

### A.      The SAC Does Not Establish General Jurisdiction over the Russian Defendants

General jurisdiction over a non-U.S. defendant exists only in the "exceptional case" when defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home" in the forum. *Daimler AG v. Bauman*, 571 U.S. 117, 138-39 & n.19 (2014) (internal quotes and citations omitted).  General jurisdiction over an individual exists if the individual resides in New York or is served with process here—conditions that the SAC does not even suggest it has satisfied for Mr. Gref, a Russian businessman who is a top executive of a Russia-based bank who resides and works in Russia.  SAC ¶ 28; *Burnham v. Superior Court of Cal.*, 495 U.S. 604, 610 n.1 (1990) (plurality opinion) (observing that "[i]t may be that [general jurisdiction (apart from jurisdiction founded on residence or service of process)] applies only to corporations").  An entity like Sberbank, meanwhile, "is at home (and thus subject to general jurisdiction, consistent with due process) only in a state that is the company's formal place of incorporation or its principal place of business." *Gucci Am. v. Bank of China*, 768 F.3d 122, 135 (2d Cir. 2014) (citing *Daimler*, 571 U.S. at 139 & n.19).

Sberbank's alleged contacts as a bank that "conducts significant business operations in the State of New York," SAC ¶ 19, and "maintain[s] offices in New York City through a directly or indirectly controlled subsidiary," SAC ¶ 20, fall far short of presenting it as "at home" in New York.  The SAC's other allegations to support general jurisdiction fare no better:

- Plaintiffs' allegation (SAC ¶ 22) that Sberbank has American depositary receipts trading in U.S. markets does not render Sberbank "at home" in New York.  "Prevailing caselaw accords foreign corporations substantial latitude to list their securities on New York-based stock exchanges…without thereby subjecting themselves to New York jurisdiction for unrelated occurrences." *JihShyr Yih v. Taiwan Semiconductor Mfg. Co.*, 18-cv-3844(CS), 2019 WL 2578306, at *5 (S.D.N.Y. June 24, 2019) (internal quotation omitted).

14

- Although Sberbank's subsidiary SCIB is present in New York, the SAC contains no non-conclusory allegations that SCIB is an agent or alter ego of Sberbank such that its activities can be imputed to Sberbank. *See, e.g.*, SAC ¶¶ 25-27. Even if SCIB's activities in New York *were* imputed to Sberbank, those activities would not render Sberbank "at home" in New York. *See Daimler*, 571 U.S. at 139 n.20 (no jurisdiction over foreign defendant based on activities of its in-state subsidiary; a foreign defendant's contacts must be assessed "in their entirety, nationwide and worldwide"; a "corporation that operates in many places can scarcely be deemed at home in all of them.").

- Allegations that Sberbank has spent money lobbying the U.S. government, SAC ¶ 24, are insufficient to establish general jurisdiction. The SAC does not allege that Sberbank pursued any lobbying in New York, and "personal jurisdiction may not be founded upon any kind of lobbying or government contacts such as getting information from or giving information to the government, or getting the government's permission to do something." *Graziose v. Am. Home Prods. Corp.*, 161 F. Supp. 2d 1149, 1153 (D. Nev. 2001) (*quoting Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 51 (2d Cir. 1991)).

- The unelaborated allegation that Sberbank has litigated unspecified matters in this Circuit, SAC ¶ 23, similarly does not support the exercise of general jurisdiction. *See Hatfield v. Asphalt International, Inc.*, 03-cv-1372(DAB), 2004 WL 287680, at *3 (S.D.N.Y. Feb. 11, 2004) (Under CPLR § 301, alleging that defendants sporadically litigated in New York is insufficient "to establish continuous, permanent and substantial activity in New York on the part of Defendants.").

The SAC's allegations fall short of the "continuous and systematic" contacts sufficient to render Sberbank "at home" in New York. *See Goodyear Dunlop Tires Operations v. Brown*, 564 U.S. 915, 927 (2011) ("A corporation's continuous activity of some sorts within a state…is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.") (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)).

### B.     The SAC Does Not Establish Specific Jurisdiction over the Russian Defendants

In the absence of general jurisdiction, the SAC must allege facts sufficient to establish specific jurisdiction. The Court must have personal jurisdiction over each defendant for each claim before that claim can proceed. *Rosenblatt v. Coutts & Co. AG*, 17 Civ. 3528 (AKH), 2017 WL 3493245, at *2 (S.D.N.Y. Aug. 14, 2017). The SAC's efforts to Americanize its Russia-

centric claims by adducing entirely speculative allegations of money laundering through a Sberbank subsidiary do not provide a basis for New York jurisdiction over this dispute. These allegations are implausible and unlinked to either the claimed wrong—forcibly taking Plaintiff's interest in Krasnaya Polyana—or any other identifiable injury to Plaintiff. The SAC's further allegations of acts in New York in asserted response to Plaintiff's threats of litigation in 2019 are not sustainably linked to any cause of action, are fundamentally separate from Plaintiff's claims about his lost interest in Krasnaya Polyana and are not plausibly linked to the Russian Defendants, also making them insufficient to establish personal jurisdiction over the Russian Defendants. *See Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 112 (1987).

### 1.    CPLR § 302(a) Does not Provide a Basis for Jurisdiction

The SAC does not plead jurisdiction over the Russian Defendants under N.Y. CPLR § 302(a)(1) (jurisdiction over a foreign defendant who "transacts any business within the state or contracts anywhere to supply goods or services in the state"), as proposed in SAC ¶¶ 38-39, because the SAC does not identify how the alleged causes of action arise out of actions undertaken in New York by either Russian Defendant. *Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006); *McGowan v. Smith*, 52 N.Y.2d 268, 272 (1981) ("some articulable nexus between the business transacted [in the state] and the cause of action sued upon" is required). The SAC does not assert that the Russian Defendants actually transacted any business in New York relating to this dispute, except to conclusorily allege money laundering of unspecified "proceeds" relating to Krasnaya Polyana through SCIB, which is insufficient under § 302(a)(1). *In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453, 467 (S.D.N.Y. 2008) ("conclusory allegations of participation in the fraud are insufficient" to confer jurisdiction under § 302(a)(1)); *Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*, 331 F. Supp. 3d 130, 144-45 (S.D.N.Y. 2018) (contacts in-state must be related to the alleged harms).

The SAC does not plead jurisdiction over the Russian Defendants under Section 302(a)(3) (as proposed in SAC ¶ 38), which "requires the Plaintiff to demonstrate that (1) the Defendant's tortious act was committed outside New York, (2) the cause of action arose from that act, (3) the tortious act caused an injury to a person or property in New York, (4) the defendant expected or should reasonably have expected that his or her action would have consequences in New York, and (5) the defendant derives substantial revenue from interstate or international commerce." *Penguin Group (USA) Inc. v. American Buddha*, 609 F.3d 30, 35 (2d Cir. 2010); *LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 214 (2000).  The situs of each cause of action under 302(a)(3) must be in New York.  *See Fantis Foods v Standard Importing Co.*, 49 N.Y.2d 317, 326 (1980) (Section 302(a)(3) requires direct injury in New York).  For economic injuries (e.g. the RICO and fraud counts), the "situs of the injury is not where the losses are sustained, but where the critical events associated with the dispute took place." *JCorps Int'l, Inc. v. Charles & Lynn Schusterman Family Found.*, 828 F. App'x 740, 744 (2d Cir. 2020).  Similarly, for a physical tort (e.g. the SAC's malicious abuse of process and ATS counts), the situs of the injury is "the location of the original event which caused the injury, not the location where the resultant damages are felt by the plaintiff." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001).

The SAC's allegations of conduct in New York do not link that conduct to any cause of action.  Any alleged improper actions in New York—including specifically the claimed improper threats in New York—are not sufficiently linked to Sberbank or Mr. Gref in the pleadings, have nothing to do with the heart of Plaintiff's claims, and, as described below, do not cognizably plead elements of a claim under RICO, the ATS or any other purported cause of action in the SAC in any event.  The SAC also contains no allegations that Mr. Gref has regular contacts with

New York or "derives substantial revenue" from New York, interstate or international commerce, as required for jurisdiction under § 302(a)(3)(i)-(ii).[2]

### 2.   RICO's Jurisdictional Provision Does Not Extend over Foreign Defendants

Plaintiff also cannot establish personal jurisdiction over the Russian Defendants under the RICO statute's national jurisdiction provision, 18 U.S.C. § 1965(b), which permits courts to exercise jurisdiction in a RICO action in "any district court of the United States [where] it is shown that the ends of justice require that other parties residing in any other district be brought before the court," as suggested in SAC ¶ 41. That statute applies only to "parties residing in any other district" of the United States, not parties like the Russian Defendants residing abroad. *Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 343 (S.D.N.Y. 2015).

That provision also is inapplicable to extend jurisdiction to Plaintiff's *other* claims once the RICO claims are dismissed against the Defendants. *See BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 352 (S.D.N.Y. 2014). Moreover, once the local defendant—SCIB—is dismissed, national jurisdiction cannot continue to be extended to other defendants. *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71 (2d Cir. 1998) (requiring "minimum contacts [be] established as to at least one defendant.").

### 3.   The Russian Defendants Lack Minimum Contacts Sufficient to Impose Jurisdiction Under Fed. R. Civ. P. 4(k)(2)

The SAC equally does not establish jurisdiction over the Russian Defendants (as suggested in SAC ¶ 37) under Rule 4(k)(2), which "subjects a defendant to this Court's personal

---

[2]   Since the SAC's allegations (¶¶ 125-143) regarding various New York communications between Plaintiff and asserted representatives of "Defendants" do not mention any activity by Mr. Gref, they are insufficient in any event to establish personal jurisdiction over him, as personal participation by each defendant is required. *Segal v. Bitar*, 11 Civ. 4521(LBS), 2012 WL 273609, at *7 (S.D.N.Y. Jan. 30, 2012) ("Jurisdiction based on the tortious actions of a corporate entity extends to its shareholders and directors only when they are shown to have personally participated in those tortious acts.").

jurisdiction "where plaintiff demonstrates that (1) the claim arises under federal law; (2) the defendant is not 'subject to jurisdiction in any state's courts of general jurisdiction'; and (3) the exercise of jurisdiction is 'consistent with the United States Constitution and laws.'" *Peterson v. Islamic Republic of Iran*, 10 Civ. 4518(KBF), 2013 WL 1155576, at *14 (S.D.N.Y. Mar. 13, 2013) (*quoting Porina v. Marward Shipping Co., Ltd.*, 521 F.3d 122, 127 (2d Cir.2008)).

Plaintiff does not satisfy these requirements because the SAC does not and cannot allege constitutionally sufficient minimum contacts between the Russian Defendants and either New York or any other U.S. jurisdiction.  The SAC contains no plausible allegation of any act in the U.S. by either of the Russian Defendants related to this dispute.  The exercise of personal jurisdiction over the Russian Defendants would be "unreasonable" because of the burden on the Russian Defendants of having to defend this action in New York and the negligible U.S. interest in adjudicating this fundamentally Russian dispute.  *See George Moundreas & Co. SA v. Jinhai Intelligent Mfg. Co. SA*, 20-CV-2626 (VEC), 2021 WL 168930, at *10, *13 (S.D.N.Y. Jan. 18, 2021) (citing *Asahi*, 480 U.S. at 113-14); *Chew v. Dietrich*, 143 F.3d 24, 28-29 & n.4 (2d Cir. 1998) (applying Fourteenth Amendment "reasonableness" inquiry to Rule 4(k)(2)).  Many of the reasonableness factors in *Asahi* weigh strongly in favor of not extending jurisdiction here: litigation in New York imposes considerable burdens on the Russian Defendants, the interests of the U.S. judicial system generally—and New York courts in particular—in this dispute are negligible and this case can be heard most efficiently in Russia.

### III.    The SAC's RICO Counts Are Not Legally Sustainable

If the Court elects not to dismiss for FNC and finds it has personal jurisdiction over one or both Russian Defendants, it should dismiss all claims for failure to state a claim, starting with the federal claims under RICO (Counts I-IV) and the ATS (Count X).

Section 1964(c) of the RICO statute provides a limited private right of action for the four types of RICO violations, *see* 18 U.S.C. § 1962(a)-(d), each of which the SAC asserts against Defendants (Counts I-IV).  To establish a RICO claim, a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of § 1962.  *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001) (internal quotation omitted).  The SAC must plead the elements of each component of each RICO claim for each defendant.  *Id.* at 306.  To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a SAC must offer "'more than labels and conclusions'" and must "include 'sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.'"  *D. Penguin Bros. v. City Nat'l Bank*, 587 F. App'x 663, 666 (2d Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Predicates to the RICO claim sounding in fraud or mistake require pleading those elements with particularity, as required under Rule 9(b).  *Id.*

The SAC's RICO counts are legally unsustainable at the threshold because Plaintiff does not take account of civil RICO's recognized limits on extraterritorial application.  The SAC does not satisfy the threshold statutory requirement under § 1964(c) of pleading injury to the Plaintiff's business or property located in the United States.  Even if the SAC pleaded injury to U.S. business or property belonging to Plaintiff, it would still be unsustainable because there are no alleged predicate acts that apply extraterritorially or are sustainably pleaded in the United States.  In addition, the SAC does not plead a cognizable claim under any of the four provisions permitting civil RICO claims, the RICO claims are time-barred and (for reasons explained in SCIB's submission) the SAC fails to allege a "pattern of racketeering activity" as required under 18 U.S.C. § 1962.

A. **Plaintiff's Claims Impermissibly Seek Extraterritorial Application of the RICO Statute**

1. **The SAC Does Not Identify Harm to Plaintiff's U.S. Business or Property**

The civil RICO statute contains strict legal limits on its extraterritorial reach. As the Supreme Court has made clear, "Section 1964(c) requires a civil RICO plaintiff to allege and prove a domestic injury to business or property and does not allow recovery for foreign injuries." *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090, 2111 (2016). Thus, the explicit statutory requirement of pleading damage to "business or property" belonging to the plaintiff is satisfied only by pleading damage to such business or property in the United States. *See Bascuñán v. Elsaca*, 874 F.3d 806, 818-19 (2d Cir. 2017) (claim regarding funds stolen from a foreign bank account and then transferred to a U.S. account does not allege a domestic injury, and "use of the U.S. financial system to conceal or effectuate [a] tort does not…turn an otherwise foreign injury into a domestic one.").

Plaintiff's claimed loss of his interest in Krasnaya Polyana in March 2013 does not constitute an injury to U.S.-based business or property belonging to him. The alleged threats to Plaintiff, his allegedly wrongful detention in Florida and the alleged U.S. laundering of "assets" relating to Krasnaya Polyana, even if recognized as cognizable harm in the United States, are not alleged and cannot be alleged to have caused injuries to Plaintiff's domestic "business or property." *Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 713 (2d Cir. 2019) (injuries to a plaintiff's person are not cognizable under the civil RICO statute). As a result, the SAC's claims regarding alleged threats and alleged wrongful procurement of his arrest are not sustainable components of Plaintiff's RICO claim. While Plaintiff has responded to the identification of this obviously fatal pleading defect in his pre-motion letters to the Court by contending the RICO claims are sustainable because American "interests" are in play with regard to some allegations,

21

see Plaintiff's Response to Pre-Motion Letter at 2 (ECF No. 56), that response plainly does not state the correct legal standard of alleging a harm to Plaintiff's domestic business or property. Moreover, the Pre-Motion Letter's assertions are factually unsupported and untethered to any alleged U.S. actions by either Russian Defendant. Plaintiff's RICO claims should be dismissed on this threshold basis without any need to consider their other shortcomings.

### 2.    The SAC's Predicates Do Not Allege Relevant U.S. Conduct

Even if a plaintiff has suffered injury in the United States, a RICO claim seeking relief for that injury based on actions both outside and inside the United States requires predicate acts (i) that have extraterritorial application or (ii) that allege domestic U.S. conduct at the "core" of the acts that constitute a "pattern of racketeering activity" under § 1962. *See Bascuñán v. Elsaca*, 927 F.3d 108, 119-125 (2d Cir. 2019) (analyzing each alleged predicate for connection to U.S. activity or extraterritorial reach). The SAC does not allege any U.S. activities—let alone acts constituting legally sustainable RICO predicates—at the core of the alleged misappropriation of Plaintiff's asserted interest in Krasnaya Polyana in Russia in 2013. Most of the predicates alleged in the SAC (see ¶ 184) do not apply extraterritorially, and therefore acts allegedly taken in Russia cannot be used as the basis for those predicates. *See Bascuñán,* 927 F.3d at 121 (mail and wire fraud statutes do not apply extraterritorially); *European Community v. RJR Nabisco, Inc.*, 764 F.3d 129, 140-41 (2d Cir. 2014), *rev'd on other grounds*, 136 S. Ct. 2090 (2016) (Travel Act does not apply extraterritorially); *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 588 (S.D.N.Y. 2014) (Hobbs Act does not apply extraterritorially); *U.S. v. All Assets Held at Bank Julius, Baer & Co.*, 251 F. Supp. 3d 82, 100 (D.D.C. 2017) (same).

Insofar as the SAC relies on a variety of money laundering statutes as predicate acts, see SAC ¶ 184(a)-(f), those predicates are also unsound because they are not at the core of the SAC's allegations. The SAC's allegations of U.S. money laundering of purported "assets" of

Plaintiff are conclusory and factually unsupported to the point of implausibility, incongruous because the SAC identifies no "assets" Sberbank would have needed to launder arising from Sberbank's acquisition of the Krasnaya Polyana property, and causally flawed because any "laundering" of "assets" associated with Krasnaya Polyana would necessarily have taken place after a sale and are consequently unconnected to any harm to Plaintiff. *See Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 11 (2010) (dismissing RICO claim when "conduct directly causing the harm was distinct from the conduct giving rise to the" predicate act).

### B. Plaintiff's RICO Theories Are Substantively Flawed

Beyond these threshold failures to plead within the recognized limits on civil RICO claims based on alleged wrongdoing from outside the United States, each of the SAC's four counts relying on a separate provision of section 1962(a)—all of which the SAC pleads as applicable here, characteristic of its blunderbuss effort to multiply claims in an effort to find one that can stick—is unsustainable based on fundamental pleading shortcomings.

Count I, relying on section 1962(a)'s prohibition on use of income from racketeering in interstate commerce, does not allege—as required—how Plaintiff suffered a so-called "investment injury" from identifiable use by Mr. Gref or Sberbank of income from a racketeering enterprise to acquire interests in Krasnaya Polyana. *Ouaknine v. MacFarlane*, 897 F.2d 75, 83 (2d Cir. 1990). The SAC merely alleges generally that proceeds from the "Sberbank Enterprise" were "used and invested…in establishing the infrastructure of, acquire an interest in, and operate the SberBank [sic] Enterprise, and it was this use and investment that harmed the Plaintiff," but does not allege enterprise funds were used to acquire Krasnaya Polyana. SAC ¶ 190. These allegations, in addition to being entirely conclusory and unsupported by any factual specifics, do not satisfy Plaintiff's obligation to plead plausibly how Plaintiff was injured "by reason of defendants' investment of racketeering income in an enterprise." *Ouaknine*, 897

F.2d at 82-83.  The "injury" Plaintiff claims in this count is only that "absent this use and investment of racketeering income, [Defendants] would find their crimes less profitable and more difficult to commit."  SAC ¶ 191.  That does not plead a harm to the Plaintiff as required.

Count II, relying on section 1962(b)'s prohibition against acquiring or maintaining an enterprise engaged in interstate commerce through a pattern of racketeering activity, is unsustainable in its failure to distinguish between the required elements of racketeering activity, RICO enterprise and injury.  To plead a violation of this provision, "a plaintiff must allege an injury stemming from the 'acquisition or maintenance' of the enterprise 'that is distinct from the injuries resulting from predicate acts'" of criminal wrongdoing.  *One World, LLC v. Onoufriadis*, 20 Civ. 5802(CM), 2021 WL 184400, at *10 (S.D.N.Y. Jan. 19, 2021) (quoting *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1062-63 (2d Cir. 1996)).  The SAC alleges only that a pattern of racketeering activity was used to "acquire and maintain an interest in and control of the SberBank [sic] Enterprise," which in turn "furthered, concealed and protected the operations of the money-laundering enterprise," SAC ¶ 168 (p. 45), and that "as a proximate and direct result...the Plaintiff has suffered the loss of money as set for more fully" elsewhere in the complaint, SAC ¶ 169 (p. 46).  Like Count I, these allegations fail to allege any direct harm to Defendant from Plaintiffs' alleged "acquisition or maintenance" of control over the enterprise.

Count III, which relies on section 1962(c)'s liability for a "person" who "participate[s] in the conduct of" a RICO enterprise's affairs through a pattern of racketeering activity, should be rejected for failure to plead the required difference of identity between the "person" and the "enterprise" in which the person allegedly participated.  "To establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name."  *U1IT4Less,*

*Inc. v. FedEx Corp.*, 871 F.3d 199, 205 (2d Cir. 2017) (citation omitted).  The SAC alleges that Defendants were "operating" the enterprise "together and individually."  SAC ¶ 172 (p. 47).  As the SAC stresses to the point of repeatedly treating the Defendants as virtually interchangeable, though, each named Defendant—Sberbank, Mr. Gref (its chief executive) and its wholly owned subsidiary SCIB—was and still is part of the same corporate group.  That group can only act by itself and through its own employees.  It cannot be both "person" and "enterprise."  This count should accordingly be dismissed, too.  *See U1IT4Less, Inc.*, 871 F.3d at 205-206 ("distinctness" requirement not satisfied by "enterprise comprised only of its agents—even if those agents are separately incorporated legal entities"); *In re Parmalat Sec. Litig.*, 479 F. Supp. 2d 332, 346 (S.D.N.Y. 2007) ("[R]eference to unnamed 'attorneys, accountants and other agents' as part of the enterprise cannot be the basis for the distinction between a corporate person and an enterprise.") (*quoting Discon*, 93 F.3d at 1064).

Count IV, purporting to allege a RICO conspiracy under section 1962(d), should also be dismissed because it cannot survive dismissal of the substantive RICO claims in Counts I-III.  *First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004).[3]

## IV.  **The SAC's Alien Tort Statute Count Is Not Legally Sustainable**

The SAC has not rescued this action by adding a new count, not present in prior versions of the complaint, alleging Defendants violated the ATS, 28 U.S.C. § 1350 (also known as the "Alien Tort Claims Act"), which provides "[t]he district courts shall have original jurisdiction of

---

[3]     The Russian Defendants join SCIB's arguments for dismissal of the RICO counts on additional grounds, including the substantive insufficiency of the SAC's alleged predicate acts and the expiration of RICO's four-year statute of limitations.  The statute of limitations expired in March of 2017 and was not equitably tolled, because Plaintiff was immediately aware of injury at the time of the alleged forced sale of the shares.  *See Rosenshein v. Meshel*, 688 F. App'x 60, 62-63 (2d Cir. 2017) ("A RICO injury occurs when the amount of damages becomes clear and definite...Once [the] claim accrues, the statute of limitations begins to run when a plaintiff has actual or inquiry notice of the claim.").

any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." The ATS is a jurisdictional statute, granting federal courts authority to hear cases "concerned with" violations of the law of nations. *Sosa v. Alvarez-Machain*, 542 U.S. 692, 714 (2004). The SAC's purported claim for violation of the ATS is not sustainable as a matter of subject matter jurisdiction or substantive law, because it cannot overcome the presumption against extraterritorial application in the context of claims primarily rooted in actions in Russia and because its allegations about conduct in the United States do not plead the statutorily required violation of the "law of nations." *See Licci v. Lebanese Canadian Bank, SAL*, 834 F.3d 201, 212 (2d Cir. 2016) (identifying, among the "numerous jurisdictional predicates" to a sustainable ATS claim, "(1) plead[ing] a violation of the law of nations; and (2) overcoming the "presumption against the extraterritorial application of the ATS").[4]

### A.     The ATS Does Not Apply Extraterritorially

The ATS does not apply extraterritorially. *Kiobel v. Royal Dutch Petro. Co.*, 569 U.S. 108, 117 (2013). "[C]laims under the ATS cannot be brought for violations of the law of nations occurring within the territory of a sovereign other than the United States…[I]f all the relevant conduct occurred abroad, that is simply the end of the matter under *Kiobel*." *Balintulo v. Daimler AG*, 727 F.3d 174, 189-90 (2d Cir. 2013).

The core actions alleged in the SAC took place abroad, among foreign parties, relating to the ownership of a foreign enterprise. Insofar as the SAC's ATS claims rest on alleged violations of the law of nations that took place abroad, those claims are barred. SAC paragraph 226(a)'s alleged ATS violations on the basis of "reiderstvo," corporate piracy, bribery and false

---

[4]     Another jurisdictional bar to ATS suits is they may not be brought against foreign corporations such as Sberbank. *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1408 (2018). However, Justice Sotomayor's concurrence in *Nestle*, 141 S. Ct. at 1947, n.4, indicates the Supreme Court may overturn this rule if an opportunity arises. Sberbank therefore urges the Court to dismiss the ATS count on one or more of the other grounds raised in this motion.

criminal actions must therefore fail even if they are assumed to involve violation of the "law of nations," as each of these torts is alleged to have taken place abroad.  *See, e.g.*, SAC ¶¶ 53 (defendants Gref and Sberbank "set a plan in motion" to allegedly appropriate Krasnaya Polyana, without any mention of American involvement), 83 (meeting to sell shares in Krasnaya Polyana, without any mention of U.S. nexus), 120 (Russian Interior Ministry allegedly opens unwarranted criminal case against Plaintiff).

### B.      The U.S. Conduct Alleged in the SAC Is Insufficient to Domesticate the Dispute

The SAC cannot rebut the ATS's presumption against extraterritoriality by alleging only that some small number of acts took place in the United States, but must instead plead facts "establish[ing] that the conduct relevant to the statute's focus occurred in the United States," *Nestle USA, Inc. v. Doe*, 141 S. Ct. 1931, 1936 (2021).[5]  The SAC's attempts to Americanize this Russian dispute do not succeed with the allegation of some actions in the United States.

The "focus" of the ATS is on significant violations of international law themselves, not ancillary acts.  *See, e.g.*, *id.* at 1937 (even if some corporate direction came from the United States, the actual international law violation—forced labor—still took place in the Ivory Coast). Similarly in the SAC, even if some alleged acts of later-in-time money laundering of proceeds (SAC ¶ 119), "intimidation and extortion of the plaintiff" (SAC ¶ 134) or "unlawful detention"

---

[5]      The Supreme Court's formulation of the "focus" inquiry in *Nestle* appears to supplant, or at least provide context to, the inquiry identified in *Kiobel*, 569 U.S. at 124-25, as to whether the conduct "touch[es] and concern[s] the territory of the United States" with "sufficient force." Even under the *Koibel* formulation, the SAC's allegations are still insufficient, as they still amount only to seeking the ATS's jurisdiction because the Plaintiff is currently present in the U.S., see *Chowdhury v. WorldTel Bangl. Holding, Ltd.*, 746 F.3d 42, 45, 50 (2d Cir. 2014), or because some small number of assertedly related acts allegedly took place in the U.S., see *Sikhs for Justice, Inc. v. Nath*, 596 F. App'x 7, 10 (2d Cir. 2014) (limited corporate activity in the U.S. is "insufficient to displace the presumption against extraterritoriality and to establish jurisdiction under the ATS.").  *See Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 266 (2010) ("the presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever *some* domestic activity is involved in the case.") (emphasis in original).

(SAC ¶ 144) took place in the United States (and are themselves violations of international law, which as explained below, they are not), these acts are not the focus of the ATS's concern in preventing significant international law violations.  The focus of the SAC's allegations is an asserted scheme and set of events in Russia, not the United States, matters not subject to the ATS.  *See RJR Nabisco, Inc.*, 136 S. Ct. at 2101 ("if the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory.").

## C.   The Torts Alleged in the SAC Are Not Cognizable Under the ATS

To plead a violation of the ATS, the plaintiff must identify the international laws violated by defendant's alleged acts, to establish the Court's subject matter jurisdiction as well as to state a sustainable claim on the merits.  *Kadic v. Karadzic*, 70 F.3d 232, 238 (2d Cir. 1995); *Arndt v. UBS AG*, 342 F. Supp. 2d 132, 138 (E.D.N.Y. 2004) ("a party claiming relief under the [ATS] must identify the specific international law that the defendant allegedly violated…This is a higher pleading standard than that typically required").  The SAC does not and cannot identify relevant international law violations.  The SAC merely specifies the torts allegedly caused by the Defendants underlying the ATS claim without any supporting caselaw or precedent as required to establish that any of those torts violated the law of nations or any treaty.  *See* SAC ¶ 226(a); *Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 255 (2d Cir. 2003) (dismissal appropriate because "plaintiffs fail[ed] to demonstrate the existence of any…norm of customary international law").

Torts are not cognizable under the ATS unless they amount to a violation of international laws that are "specific, universal, and obligatory."  *Sosa,* 542 U.S. at 732.  Such cognizable torts "arise[] only when there has been a violation by one or more individuals of those standards, rules or customs (a) affecting the relationship between states or between an individual and a foreign state, and (b) used by those states for their common good and/or in dealings *inter se*."  *IIT v.*

*Vencap, Ltd.*, 519 F.2d 1001, 1015 (2d Cir. 1975) (Friendly, J.). The Supreme Court has counseled severe caution and rigor before applying the ATS to reach beyond actions for breach of international law norms regarding the three categories of "violation of safe conducts, infringement of the rights of ambassadors, and piracy" recognized when the statute was enacted in 1789. *Sosa*, 542 U.S. at 724-25. The SAC alleges a fundamentally commercial claim among private parties, not a dispute concerning international relations or basic norms of human conduct, universally recognized by courts, regardless of location, as core components the law of nations. The alleged torts on which the SAC seeks to rely have repeatedly been found non-actionable under the ATS. *See IIT*, 519 F.2d at 1015 ("We cannot subscribe to plaintiffs' view that the Eighth Commandment 'Thou shalt not steal' is part of the law of nations.").

Insofar as "reiderstvo" as pleaded by the SAC refers to alleged "fraud, conversion and misrepresentation" regarding ownership of Krasnaya Polyana, "the law provides a relatively easy answer to th[e] question" whether such claims are not actionable under the ATS. *Arndt*, 342 F. Supp. 2d at 141 ("fraud, conversion and misrepresentation may be legal theories that can be advanced in many if not all States, but these are not wrongs expressed by mutual concern and reflected in international accords.") (internal quotes and punctuation omitted). Bribery is similarly not actionable under the ATS. *Hamid v. Price Waterhouse*, 51 F.3d 1411, 1418 (9th Cir. 1995) (dismissing ATS claim predicated partially on bribing bank regulators as alleging "in substance fraud, breach of fiduciary duty and misappropriation of funds"). Allegation of a "brief" unlawful detention based on "false information," SAC ¶ 144, is also not actionable under the ATS. *Sosa*, 542 U.S. at 737 ("invocation of a principle against arbitrary detention…as binding customary international law requires a factual basis beyond relatively brief detention in excess of positive authority."). Nor is money laundering actionable under the ATS. *Nahl v.*

*Jaoude*, 968 F.3d 173, 181, 183 (2d Cir. 2020) (no ATS cause of action for a "purely financial injury" from money laundering).[6]

### V.     The Court Should Exercise Its Supplemental Jurisdiction To Dismiss the Non-Federal Claims

Upon dismissal of the SAC's purported federal claims under the RICO and ATA statutes, the Court should exercise its supplemental jurisdiction to dismiss the remaining claims under 28 U.S.C. § 1367(a) as time-barred and otherwise legally unsustainable, for the reasons set forth in SCIB's submission.  Dismissal under the Court's supplemental jurisdiction is appropriate where, as here, "the state law claims involve[] only settled principles rather than novel issues," and the state law claims are analytically closely tied to the dismissed federal causes of action.  *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 118 (2d Cir. 2013).

In the absence of such dismissal, the Court should dismiss the SAC's remaining claims for lack of subject matter jurisdiction, because Mr. Gref and Mr. Bilalov are both foreign parties and consequently non-diverse to each other under 28 U.S.C. § 1332(a)(2).  *Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124, 127 (2d Cir. 2020); *One World, LLC*, 2021 WL 184400, at *13. Plaintiff's current alleged status as a resident of Florida does not make him (as a Russian) non-diverse to Mr. Gref (also a Russian) or Sberbank (a Russian entity), because Plaintiff does not claim that he has obtained U.S. citizenship.

---

[6]     While Plaintiff seeks to characterize the asserted threats in New York and California as the tort of "extortion," they cannot cognizably be characterized as such because the SAC does not plead that any Defendant wrongfully acquired property from Plaintiff in 2019 as a result of these threats; in fact, Plaintiff filed this action.  *See Kerik v. Tacopina*, 64 F. Supp. 3d 542, 561 (S.D.N.Y. 2014) ("To plead extortion, the plaintiff use show that the defendant obtained property, with a victim's consent, 'induced by wrongful use of actual or threatened force, violence or fear or under color of official right.'  18 U.S.C. § 1951(b)(2)").  In addition, the crime of extortion does not give rise to a private tort claim under federal or New York law, *Eliahu*, 919 F.3d at 713, and Plaintiff offers nothing to suggest that an individual's claim for extortion can support a viable finding of violation of the law of nations.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the SAC as to Sberbank and Mr.

Herman Gref.

Dated: New York, New York
      September 6, 2021

                    Respectfully submitted,

                    DEBEVOISE & PLIMPTON LLP

              By: */s/ John S. Kiernan*

                    John S. Kiernan
                    jskiernan@debevoise.com

                    919 Third Avenue
                    New York, New York 10022
                    (212) 909-6000

                    *Counsel for Defendants Sberbank of Russia*
                    *and Herman Gref*