UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AKHMED GADZHIEVICH BILALOV,

Plaintiff,

-against-

HERMAN GREF, SBERBANK CIB USA, INC., SBERBANK OF RUSSIA PJSC, and DOES 1-100 inclusive,

Defendants.

1:20-cv-09153-AT-KNF

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF SBERBANK CIB USA, INC.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........ 1
SUMMARY OF ALLEGATIONS ........ 3
I. The Transfer of Krasnaya Polyana ........ 3
II. Bilalov Waits Until 2018 to "Back-Channel" Defendants ........ 5
III. The Troika Laundromat ........ 5
IV. Bilalov Files Suit ........ 6
ARGUMENT ........ 6
I. The SAC Alleges No Wrongdoing By SCIB ........ 6
II. The SAC's Claims Are Time-Barred ........ 9
A. Bilalov's Fraud, Conspiracy to Commit Fraud, RICO, Conversion and Unjust Enrichment Claims Accrued No Later Than 2013 ........ 9
B. Bilalov's Abuse of Process Claim Accrued in October 2019 ........ 10
C. The Doctrines of Equitable Estoppel, Equitable Tolling, and Separate Accrual Cannot Save Bilalov's Claims ........ 11
1. Equitable Tolling and Equitable Estoppel ........ 11
2. Separate Accrual Rule ........ 13
III. The SAC Fails To State A Claim ........ 15
A. The SAC Does Not Satisfy Rule 9(b)'s Heightened Pleading Requirements ........ 16
B. The SAC Fails to State a RICO Claim ........ 17
1. The SAC Fails to Allege a Domestic Injury to Business or Property ........ 18
2. The SAC Fails to Allege an Investment Injury or Acquisition Injury ........ 18
3. The SAC Fails to Allege a Pattern of Racketeering Activity ........ 19
a. Mail Fraud and Wire Fraud ........ 20
b. Hobbs Act Extortion ........ 20
c. Travel Act ........ 21
d. Money Laundering ........ 22
4. The SAC Fails to Allege a RICO Enterprise ........ 23
5. The SAC Fails to Allege a RICO Conspiracy ........ 25

C. The SAC Fails to State an Alien Tort Statute Claim ............................... 25

D. The SAC Fails to State Any State Law Claims ....................................... 26

1. Fraud and Conspiracy to Commit Fraud...................................... 26

2. Conversion ........................................................................................ 27

3. Unjust Enrichment ........................................................................ 28

4. Abuse of Process.............................................................................. 29

CONCLUSION.............................................................................................................. 30

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*A.I.A. Holdings, S.A. v. Lehman Bros.*,
1999 U.S. Dist. LEXIS 971 (S.D.N.Y. Jan. 28, 1999) ....................28

*Abbas v. Dixon*,
480 F.3d 636 (2d Cir. 2007)....................12, 13

*Ancile Inv. Co. v. Archer Daniels Midland Co.*,
784 F. Supp. 2d 296 (S.D.N.Y. 2011)....................27

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................15

*B&C Realty, Co. v. 159 Emmut Props. LLC*,
106 A.D.3d 653 (1st Dep't 2013) ....................28

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................18

*Beneficial Capital Corp. v. Richardson*,
1995 U.S. Dist. LEXIS 7354 (S.D.N.Y. May 31, 1995) ....................13

*Bill Diodato Photography LLC v. Avon Prods.*,
2012 U.S. Dist. LEXIS 110988 (S.D.N.Y. Aug. 5, 2012)....................9

*Borison v. Cornacchia*,
1997 U.S. Dist. LEXIS 6248 (S.D.N.Y. May 6, 1997) ....................10

*Cedar Swamp Holdings, Inc. v. Zaman*,
487 F. Supp. 2d 444 (S.D.N.Y. 2007)....................24, 25

*Cohen v. Dunne*,
2017 U.S. Dist. LEXIS 160165 (S.D.N.Y. Sept. 27, 2017)....................9, 10

*Cont'l Fin. Co. v. Ledwith*,
2009 U.S. Dist. LEXIS 52618 (S.D.N.Y. June 22, 2009) ....................19

*Colavito v. N.Y. Organ Donor Network, Inc.*,
860 N.E.2d 713 (2006)....................27

*Crigger v. Fahnestock & Co.*,
443 F.3d 230 (2d Cir. 2006)....................26

*Curanaj v. Cordone*,
2012 U.S. Dist. LEXIS 135101 (S.D.N.Y. Sept. 19, 2012)....29, 30

*Daly v. Llanes*,
30 F. Supp. 2d 407 (S.D.N.Y. 1998)....16

*Delvalle v. Parkchester N. Condo. Bd.*,
2019 U.S. Dist. LEXIS 24486 (S.D.N.Y. Feb. 13, 2019)....8

*Democratic Nat'l Comm. v. Russian Fed'n*,
392 F. Supp. 3d 410 (S.D.N.Y. 2019)....24

*Dillman v. Combustion Eng'g, Inc.*,
784 F.2d 57 (2d Cir. 1986)....11

*Doe v. Solera Capital LLC*,
2019 U.S. Dist. LEXIS 55860 (S.D.N.Y. Mar. 31, 2019)....16, 28

*Eaves v. Designs for Fin., Inc.*,
785 F. Supp. 2d 229 (S.D.N.Y. 2011)....17

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co.*,
375 F.3d 168 (2d Cir. 2004)....16

*Ferring B.V. v. Allergan, Inc.*,
932 F. Supp. 2d 493 (S.D.N.Y. 2013)....10

*First Capital Asset Mgmt. v. Satinwood, Inc.*,
385 F.3d 159 (2d Cir. 2004)....25

*Fisher v. APP Pharms., LLC*,
783 F. Supp. 2d 424 (S.D.N.Y. 2011)....16

*Gomez v. City of New York*,
2016 U.S. Dist. LEXIS 128338 (S.D.N.Y. Sept. 14, 2016)....10

*Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*,
206 F. Supp. 3d 869 (S.D.N.Y. 2016)....7

*HV Assocs. v. PNC Bank, N.A.*,
2020 U.S. Dist. LEXIS 180642 (S.D.N.Y. Sept. 30, 2020)....12, 13

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
907 N.E.2d 268 (2009)....28

*Kirkland v. Bianco*,
595 F. Supp. 797 (S.D.N.Y. 1984)....8

*Kraft v. City of New York*,
696 F. Supp. 2d 403 (S.D.N.Y. 2010)....................29

*Lundy v. Catholic Health Sys. of Long Island Inc.*,
711 F.3d 106 (2d Cir. 2013)....................20

*Maya NY, LLC v. Hagler*,
106 A.D.3d 583 (1st Dep't 2013) ....................28

*Mehrkar v. Schulmann*,
2001 U.S. Dist. LEXIS 717 (S.D.N.Y. Jan. 29, 2001) ....................18

*Merrill Lynch, Pierce, Fenner & Smith v. Young*,
1994 U.S. Dist. LEXIS 2929 (S.D.N.Y. Mar. 15, 1994) ....................16, 22

*Metlife Sec., Inc. v. Bedford*,
456 F. Supp. 2d 468 (S.D.N.Y. 2006)....................8

*Meyer v. Seidel*,
2021 U.S. Dist. LEXIS 153919 (S.D.N.Y. Aug. 16, 2021) ....................12

*Mills v. Polar Molecular Corp.*,
12 F.3d 1170 (2d Cir. 1993)....................20

*Moore v. City of New York*,
2017 U.S. Dist. LEXIS 379 (S.D.N.Y. Jan. 3, 2017) ....................23

*Mortimer v. City of New York*,
2018 U.S. Dist. LEXIS 53492 (S.D.N.Y. Mar. 29, 2018) ....................29

*Nahl v. Jaoude*,
2018 U.S. Dist. LEXIS 100056 (S.D.N.Y. June 14, 2018)....................25

*Nat'l Union Fire Ins. Co. v. Archway Ins. Servs. LLC*,
2012 U.S. Dist. LEXIS 48735 (S.D.N.Y. Mar. 23, 2012) ....................19

*Nesbeth v. N.Y.C. Mgmt., LLC*,
2019 U.S. Dist. LEXIS 1830 (S.D.N.Y. Jan. 4, 2019) ....................7, 8

*Nestle USA, Inc. v. Doe*,
No. 19-416, 2021 U.S. LEXIS 3120 (June 17, 2021)....................25

*Newman v. Jewish Agency for Israel*,
2017 U.S. Dist. LEXIS 202524 (S.D.N.Y. Dec. 8, 2017) ....................20

*O&G Carriers, Inc. v. Smith*,
799 F. Supp. 1528 (S.D.N.Y. 1992)....................18

*Ouaknine v. MacFarlane*,
897 F.2d 75 (2d Cir. 1990)........................................................................................17

*Padula v. Lilarn Props. Corp.*,
84 N.Y.2d 519 (1994) ..............................................................................................26

*Pearl v. City of Long Beach*,
296 F.3d 76 (2d Cir. 2002)........................................................................................11

*Purchase Real Estate Grp., Inc. v. Jones*,
2010 U.S. Dist. LEXIS 87571 (S.D.N.Y. Aug. 24, 2010) ........................................17

*Richardson v. N.Y.C. Health & Hosps. Corp.*,
2009 U.S. Dist. LEXIS 25247 (S.D.N.Y. Mar. 25, 2009) ........................................29

*Ritani LLC v. Aghjayan*,
970 F. Supp. 2d 232 (S.D.N.Y. 2013)..........................................................................6

*RJR Nabisco, Inc. v. European Cmty.*,
136 S. Ct. 2090 (2016) ..............................................................................................18

*Robb Evans & Assocs. LLC v. Sun Am. Life Ins. Co.*,
2012 U.S. Dist. LEXIS 19759 (S.D.N.Y. Feb. 14, 2012)............................................9

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004)......................................................................................26

*Rosenshein v. Meshel*,
688 Fed. Appx. 60 (2d Cir. 2017)...............................................................................9

*Rothstein v. UBS AG*,
708 F.3d 82 (2d Cir. 2013)........................................................................................16

*S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*,
84 F.3d 629 (2d Cir. 1996)........................................................................................20

*Santana v. Adler*,
2018 U.S. Dist. LEXIS 51401 (S.D.N.Y. Mar. 26, 2018) ........................................21

*Savitsky v. Mazzella*,
2004 U.S. Dist. LEXIS 22104 (S.D.N.Y. Nov. 1, 2004) ..........................................27

*Schlesinger v. Schlesinger*,
2007 U.S. Dist. LEXIS 104921 (E.D.N.Y. Feb. 8, 2007)..........................................23

*Seck v. Info. Mgmt. Network*,
2016 U.S. Dist. LEXIS 200890 (S.D.N.Y. June 30, 2016)........................................11

*Sekhar v. United States*,
570 U.S. 729 (2013)....................21

*Simmons v. Reich*,
2020 U.S. Dist. LEXIS 223479 (E.D.N.Y. Nov. 30, 2020)....................14, 15

*Strother v. Harte*,
171 F. Supp. 2d 203 (S.D.N.Y. 2001)....................14

*Stuart v. Am. Cyanamid Co.*,
158 F.3d 622 (2d Cir. 1998)....................9

*Tech. Opportunity Grp., Ltd. v. BCN Telecom, Inc.*,
2019 U.S. Dist. LEXIS 164387 (S.D.N.Y. Sept. 23, 2019)....................14, 15

*United States v. Gotti*,
459 F.3d 296 (2d Cir. 2006)....................21

*Valentini v. Grp. Health Inc.*,
2021 U.S. Dist. LEXIS 112081 (S.D.N.Y. June 15, 2021)....................27

*W. 79th St. Corp. v. Congregation Kahl Minchas Chinuch*,
2004 U.S. Dist. LEXIS 19501 (S.D.N.Y. Sept. 29, 2004)....................23

*Worldwide Directories, S.A. De C.V. v. Yahoo! Inc.*,
2016 U.S. Dist. LEXIS 44265 (S.D.N.Y. Mar. 31, 2016)....................19, 21, 22

*Wright v. Rensselaer Cty. Jail*,
771 Fed. Appx. 58 (2d Cir. 2019)....................11

*Zahl v. Kosovsky*,
2011 U.S. Dist. LEXIS 22028 (S.D.N.Y. Mar. 3, 2011)....................14

**STATUTES AND RULES**

18 U.S.C. § 1956....................23

18 U.S.C. § 1961....................19, 24

18 U.S.C. § 1962....................18, 25

CPLR § 213....................9

CPLR § 214....................9

Fed. R. Civ. P. 8....................2, 6, 7, 8

Fed. R. Civ. P. 9....................passim

Fed. R. Civ. P. 12 .......... 15, 16

Defendant Sberbank CIB USA, Inc. ("SCIB") respectfully submits this memorandum of law in support of its motion to dismiss the Second Amended Complaint (the "SAC"), ECF No. 51.

**PRELIMINARY STATEMENT**

Having had the benefit of SCIB's pre-motion letters, as well as those of Defendants Sberbank of Russia ("Sberbank") and Herman Gref ("Mr. Gref"), and two opportunities to amend his complaint, Plaintiff Akhmed Bilalov ("Plaintiff" or "Bilalov") still has failed to plead any viable claim against Defendants.

The SAC is a rambling pleading that invokes all manner of nefarious-sounding conduct centered in the Russian Federation, and is heavy on buzzwords like "corruption" and "political persecution," but is entirely disconnected from any cognizable—let alone timely—claim against Defendants. The crux of the SAC is Plaintiff's claim that through a series of events occurring in Russia between *2008* and *2013*, certain Defendants (the SAC rarely differentiates between them) and other unidentified actors coerced Plaintiff, a Russian national, into selling his purported shares in a Russian company associated with the 2014 Winter Olympics called Krasnaya Polyana. According to the SAC, the misappropriation of Bilalov's putative shares is emblematic of a Russian phenomenon that Bilalov refers to as "Reiderstvo," by which President Vladimir Putin and his inner circle supposedly work in concert with private actors to effect clandestine, politically-motivated "nationalizations" of private companies. Claiming that he and his brother fell victim to such a plot, Bilalov alleges a sweeping conspiracy comprising President Putin's deputies and a host of unidentified actors who purportedly harassed Bilalov and threatened dire consequences should he resist the 2013 stock sale or take legal action after the fact.

The SAC does not allege that SCIB played any role in any of these activities. Rather, in an attempt to Americanize what is indisputably a ten-year-old Russian dispute, Bilalov alleges,

upon information and belief, that SCIB, a New York-based non-banking subsidiary of Sberbank, was used to launder the proceeds of Bilalov's putative shares. The SAC alleges no facts in support of its speculative money laundering claim, let alone the circumstances of SCIB's purported involvement. Moreover, other than claiming, in conclusory fashion, that Sberbank acted "through" SCIB, the SAC does not advance any alter ego theory suggesting that SCIB should be liable for the alleged conduct of Sberbank, despite its best efforts to blur their corporate separateness by referring to Defendants interchangeably throughout the pleading. At bottom, Bilalov's allegations as to SCIB fail even the liberal pleading standards of Rule 8(a) and warrant dismissal.

Bilalov's claims should also be dismissed as time-barred. By his own admission, Bilalov was on notice of the alleged misappropriation of his shares no later than 2013. As such, the six-year statute of limitations applicable to fraud claims, and the shorter statutes of limitations for RICO, conversion, and unjust enrichment, all expired before Bilalov filed suit in November 2020. Bilalov's abuse of process claim is also time-barred, given that he filed this lawsuit more than one year after his alleged unlawful arrest in October 2019. In an effort to avoid the statutes of limitations, Bilalov invokes, in conclusory fashion, the doctrines of equitable tolling and equitable estoppel, as well as the separate accrual rule (as to his RICO claims). None of these doctrines can salvage Bilalov's untimely claims, especially where, as here, Bilalov admits that he was aware of his purported claims in 2013 and did not diligently pursue them as required.

Finally, the SAC fails to state a claim upon which relief can be granted. As set forth herein, and in the submission by Defendants Sberbank and Gref (which SCIB joins), Plaintiff's RICO and Alien Tort Statute ("ATS") claims do not apply to conduct that is extraterritorial and, in any event, Plaintiff fails to adequately plead any predicate acts or an enterprise (as to his RICO claims) or a cognizable violation of the law of nations (as to his ATS claim). Plaintiff's litany of state law

claims fare no better as Plaintiff merely recites, in boilerplate fashion, the elements of those claims, and the "facts" alleged in support are unmoored from the claims that Plaintiff actually brings.

The SAC is deficient and futile on its face and should be dismissed with prejudice.

## SUMMARY OF ALLEGATIONS

### I. The Transfer of Krasnaya Polyana

The SAC alleges that, in 2006, Bilalov and his brother purchased a ski resort located in Sochi, Russia called "Krasnaya Polyana." *See* SAC ¶ 44. According to the SAC, Bilalov's brother owned 84.85% of the shares of Krasnaya Polyana. *See id.* ¶ 45. Bilalov claims that he "jointly owned" the 84.85% stake with his brother, *see id.* ¶ 46, although the SAC provides no details about the brothers' supposed arrangement, and at various times describes the shares as belonging to Bilalov's brother or to Bilalov (or to both).

In 2007, the Russian Federation announced that Krasnaya Polyana had been selected as a ski jumping site for the 2014 Sochi Winter Olympics. *See id.* ¶ 47. In 2008, Mr. Gref and Sberbank Capital, a subsidiary of Sberbank, invested in Krasnaya Polyana and also financed certain improvements needed in the lead-up to the Olympics. *See id.* ¶¶ 49-50.

The SAC alleges that, at this point, Sberbank, Mr. Gref, and a host of others, including the Deputy Prime Minister of the Russian Federation, embarked upon a campaign to misappropriate Bilalov's putative stake in Krasnaya Polyana. *See id.* ¶ 55. In support, Bilalov claims that in 2008, the Russian Federation "committed to build a road" to the border of Krasnaya Polyana, but Mr. Gref and others negligently failed to finance the road. *See id.* ¶¶ 56-57. The SAC does not describe the alleged negligence, but nevertheless claims that it occasioned cost increases, which necessitated further financial investment by Sberbank. *See id.* ¶ 58. The SAC next alleges that in 2012, Mr. Gref caused a construction contract to be transferred from Bilalov's brother's company to a company called Sembol with ties to the Turkish government. *See id.* ¶¶ 60-61, 63. According

to the SAC, this business decision evidenced an "undisputed conspiracy" because the Sembol contract was unjustifiably "imposed" upon Krasnaya Polyana. *Id.* ¶ 65.

By 2012, due to additional investments, Bilalov's putative stake in Krasnaya Polyana was diluted to 41.429%. *See id.* ¶ 69. Also in 2012, in the wake of the conflict over Sembol, Bilalov's brother was allegedly ousted from his management position at Krasnaya Polyana. *See id.* ¶ 66. The SAC next alleges that at a February 2013 board meeting, Bilalov's brother and Mr. Gref, among others, reached an agreement whereby Bilalov's brother would receive one-third of Krasnaya Polyana's assets following the Olympics, and Sberbank would be allocated and transferred the other two-thirds. *See id.* ¶ 72. This putative agreement was not performed. *See id.* ¶ 73. Rather, in an alleged attempt to force Bilalov's brother into transferring the rest of his shares, Defendants supposedly undertook coercive measures towards the Bilalovs, such as presenting a libelous report to President Putin blaming the Bilalovs for construction delays. *See id.* ¶¶ 77-78. At a March 2013 meeting, Bilalov and/or his brother ultimately agreed, allegedly under duress, to sell the remainder of their Krasnaya Polyana shares for $20 million. *See id.* ¶¶ 83-88.

In the wake of this sale, Bilalov claims that he and his family faced ongoing harassment from unspecified defendants. The SAC alleges that in April 2013, Defendants either directly or indirectly attempted to poison Bilalov, but the SAC offers no facts in support of this allegation. *See id.* ¶ 123. The SAC further alleges that in 2013, Defendants, acting through unidentified intermediaries, caused Russian authorities to initiate criminal investigations of the Bilalovs. *See id.* ¶¶ 120-122. As above, the SAC does not describe the investigations or detail Defendants' alleged role in them. *See id.* Years later, in May 2016, Bilalov and his family, allegedly fearing for their lives, left Russia and moved to New York. *Id.* ¶ 124.

**II. Bilalov Waits Until 2018 to "Back-Channel" Defendants**

The SAC does not allege any contact between Bilalov and Defendants between 2014 and 2017. In late spring 2018, believing that sufficient time had passed, Bilalov decided to "back channel members of the 'inner circle' in an effort to recover some of his assets." *Id.* ¶ 125. Bilalov contacted an associate of Mr. Gref who allegedly advised that an amicable resolution could be reached so long as Bilalov did not file a lawsuit. *See id.* ¶ 127. According to the SAC, however, Defendants were not negotiating in good faith; rather, the "whole purpose of the negotiations was to lull Plaintiff into a false sense of security and prevent him from pursuing his claims…." *Id.* ¶ 128. After a year of negotiations, Bilalov claims that he was told in May 2019 that Defendants would not settle and that any lawsuit would imperil Bilalov and his family. *See id.* ¶¶ 132-137. The SAC alleges that Bilalov was then approached outside of his apartment by two men sent by Defendants who delivered a series of veiled threats. *See id.* ¶¶ 139-141. The SAC further alleges that Defendants, acting through intermediaries, provided misinformation about Bilalov to U.S. and foreign officials, which led to Bilalov's October 2019 arrest in Miami. *See id.* ¶ 144. After a brief detention, Bilalov was released. *See id.*

**III. The Troika Laundromat**

In an attempt to localize this Russian dispute in New York, the SAC alleges that Defendants used SCIB to launder the proceeds of their ill-gotten gains in New York through something called the "Troika Laundromat." *Id.* ¶ 102. According to the SAC, the Troika Laundromat is a "financial network set up by a Russian investment bank to help high profile political and business clients move money out of the country and hide it in the United States and Europe." *Id.* ¶ 106. After listing various Russian businessmen—with no apparent connection to this lawsuit or Defendants—who have allegedly engaged in suspicious banking activities, *see id.* ¶¶ 112-115, the SAC alleges, upon information and belief, that Bilalov's allegedly misappropriated assets "were in whole or in

part transferred to and/or though [sic] the United States. The money was laundered through the Troika Laundromat to avoid detection by authorities and to circumvent U.S. sanctions." *Id.* ¶ 119. The SAC does not describe the roles that SCIB and Sberbank played with respect to the alleged laundering of Bilalov's putative assets, when the alleged money laundering took place, or why it would have been necessary to launder shares (or the proceeds thereof) acquired in a real estate deal in Russia.

**IV. Bilalov Files Suit**

Bilalov filed this lawsuit in November 2020, more than seven years after the alleged misappropriation of his putative stake in Krasnaya Polyana. In an attempt to justify his delay, Bilalov alleges that any applicable statute of limitations has been "tolled by reason of Defendants' fraudulent concealment and conduct," *id.* ¶ 5, p. 58, but he does not explain what was concealed. Bilalov further claims that, due to the corrupt nature of the Russian judiciary, he "was unable to even consider bringing suit in Russia previously." *Id.* ¶ 6, p. 58. However, the SAC does not explain why Bilalov refrained from bringing suit when he moved to New York in 2016. Since filing his lawsuit in November 2020, Bilalov has already amended his complaint twice, including once upon the receipt of SCIB's and Mr. Gref's pre-motion letters, and has added and dropped defendants and claims. In the SAC, which asserts four RICO claims, an Alien Tort Statute claim, and a host of common law claims, Bilalov seeks more than $1 billion in damages.

**ARGUMENT**

**I. The SAC Alleges No Wrongdoing By SCIB**

Fed. R. Civ. P. 8(a) requires a plaintiff to set forth in his complaint "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." The complaint must, at a bare minimum, apprise a defendant of the charges asserted against it and the misconduct it allegedly committed. *See Ritani LLC v. Aghjayan*, 970 F. Supp. 2d 232, 246 (S.D.N.Y. 2013)

("[A]llegations in a complaint must be complete enough to enable a reader to understand how each defendant was personally involved in the wrongdoing plaintiff is alleging."). Although the Rule 8(a) pleading standard does not require detailed factual allegations, it demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869, 895-96 (S.D.N.Y. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

As to SCIB, the SAC alleges only legal conclusions and no facts. After listing SCIB as a defendant in the case caption, the SAC recites the conclusion that Sberbank operates in the United States and New York "through" SCIB, without any supporting facts. SAC ¶ 21. It similarly recites the conclusions that SCIB "played a crucial role in the conspiracy" and was used to launder the "proceeds of the wrong" without offering any facts about what SCIB actually did or the role that SCIB supposedly played in the alleged conspiracy. *See id.* ¶¶ 25-26, 119. The SAC does not include any other substantive references to SCIB, except to note that (i) SCIB is a registered broker-dealer under Section 15(b) of the Securities and Exchange Act of 1934, *id.* ¶ 25, (ii) SCIB was created "as part of the integration of Sberbank and Troika Dialog," *id.* ¶ 27, (iii) Troika Dialog is now a part of Sberbank and SCIB, *id.* ¶ 103, and (iv) SCIB has an intimate relationship with one of the largest banks in the United States, *id.* ¶ 116. Instead, the SAC purports to lump SCIB together with the other Defendants in textbook group pleading that courts in this jurisdiction routinely reject.[1] *See Nesbeth v. N.Y.C. Mgmt., LLC*, 2019 U.S. Dist. LEXIS 1830, at *7 (S.D.N.Y. Jan. 4, 2019) ("[I]t is well-established in this Circuit that plaintiffs cannot simply lump defendants

---

[1] *See, e.g.*, *id.* ¶ 6 ("Upon information and belief, Defendants also used U.S. banks to further the conspiracy . . . .").

together for pleading purposes, and that Rule 8(a) is violated where a plaintiff, by engaging in group pleading, fails to give each defendant fair notice of the claims against it." (internal quotations and citation omitted)).

Where, as here, a complaint lacks particularized allegations as to a defendant, a motion to dismiss should be granted. *See Delvalle v. Parkchester N. Condo. Bd.*, 2019 U.S. Dist. LEXIS 24486, at *6 (S.D.N.Y. Feb. 13, 2019) ("Where a plaintiff names a defendant in the caption, but the complaint contains no substantive allegations against the defendant, dismissal of the complaint as to that defendant is appropriate."); *Kirkland v. Bianco*, 595 F. Supp. 797, 799-800 (S.D.N.Y. 1984) (dismissing complaint where it provided "no basis to ascertain how defendants have violated the law in some manner or acted in some fashion so as to injure [plaintiff]"). Moreover, the fact that two corporations are in a parent-subsidiary relationship, as SCIB is with Sberbank, does not make one liable for the alleged conduct of the other.[2] *Metlife Sec., Inc. v. Bedford*, 456 F. Supp. 2d 468, 472 (S.D.N.Y. 2006); *see also Nesbeth*, 2019 U.S. Dist. LEXIS 1830, at *7-8 ("That separate legal entities might share a corporate affiliation does not alter the requirement of pleading in a manner that provides fair notice to each defendant of the claims against it."). Because the SAC does not identify any participation in wrongdoing by SCIB or suggest that the corporate separateness of SCIB and Sberbank should be disregarded, the SAC does not establish a plausible inference of any claim against SCIB under Fed. R. Civ. P. 8(a). This alone merits dismissal of the SAC as to SCIB.

---

[2] Plaintiff's argument in his pre-motion letter that his allegations against SCIB are pled with requisite particularity, including under Fed. R. Civ. P. 9(b), because SCIB is a co-conspirator and an insider of Sberbank is unavailing. *See infra*, Section III.A. Moreover, Plaintiff's alternative claim that SCIB is somehow liable under the theory of respondeat superior is flawed for numerous reasons, including because the SAC does not allege any wrongdoing by any SCIB employee. *See* Plaintiff's Response to Pre-Motion Letter ("Pl.'s Pre-Mot. Ltr."), ECF No. 56, pp. 3-4.

## II. The SAC's Claims Are Time-Barred

Even if the SAC alleged a plausible claim against SCIB—which it does not—dismissal of nine of Bilalov's ten claims would still be required as to all Defendants by the statutes of limitations applicable to those claims.

### A. Bilalov's Fraud, Conspiracy to Commit Fraud, RICO, Conversion and Unjust Enrichment Claims Accrued No Later Than 2013

The statute of limitations for fraud and conspiracy to commit fraud is the greater of six years from the date of the fraud or two years from the time the plaintiff discovered or could have with reasonable diligence discovered the fraud. *See* CPLR § 213(8).[3]

The statute of limitations for civil RICO claims is four years, which begins to run when plaintiff is placed on actual or inquiry notice of the alleged RICO injury. *Rosenshein v. Meshel*, 688 Fed. Appx. 60, 62-63 (2d Cir. 2017).

The statutes of limitations for conversion and unjust enrichment are each three years. *See* CPLR § 214(3); *Cohen v. Dunne*, 2017 U.S. Dist. LEXIS 160165, at *9 (S.D.N.Y. Sept. 27, 2017) (under New York law, the statute of limitations for unjust enrichment is three years where plaintiff seeks monetary damages). The limitations periods for these claims begins to run upon the occurrence of the conversion or unjust act, irrespective of the date of discovery. *See Bill Diodato Photography LLC v. Avon Prods.*, 2012 U.S. Dist. LEXIS 110988, at *33 (S.D.N.Y. Aug. 5, 2012)

[3] In assessing the timeliness of Bilalov's state law claims, the Court should apply New York's statute of limitations provisions. *See Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 627 (2d Cir. 1998). "Where a nonresident brings a cause of action which accrued outside of New York, the New York State borrowing statute applies, and the reviewing Court 'must apply the shorter limitation period, including all relevant tolling provisions, of either: (1) New York; or (2) the state where the cause of action accrued.'" *Robb Evans & Assocs. LLC v. Sun Am. Life Ins. Co.*, 2012 U.S. Dist. LEXIS 19759, at *8 (S.D.N.Y. Feb. 14, 2012) (citing CPLR § 202). Because Plaintiffs' claims are time barred under New York's statutes of limitations, they necessarily are barred by any shorter Russian statutes of limitations, and any Russian statute of limitations that is longer than New York's cannot apply under New York's borrowing statute.

(three-year statute of limitations for conversion "accrues upon the act of conversion, regardless of when the conversion is discovered"); *Cohen*, 2017 U.S. Dist. LEXIS 160165, at *9 (same for unjust enrichment).

Bilalov's claims against Defendants accrued as early as 2008, when, according to the SAC, Defendants began their efforts to wrest control of Krasnaya Polyana from Plaintiff and his brother. *See* SAC ¶¶ 53-58. By Plaintiff's own admission, he was on notice of Defendants' alleged scheme no later than 2012. *See id.* ¶¶ 65-67 (alleging an "undisputed conspiracy"). And the SAC alleges that Bilalov and his brother were ultimately coerced into selling the remainder of their putative shares in 2013. *See id.* ¶¶ 69, 87. Accordingly, the six-year statute of limitations governing Bilalov's claims for fraud and conspiracy to commit fraud—both of which seek redress for the alleged misappropriation of Bilalov's shares—expired no later than March 2019, and Plaintiff's claims filed in November 2020 are untimely. The shorter statutes of limitations for RICO, conversion, and unjust enrichment expired earlier still.[4]

### B. Bilalov's Abuse of Process Claim Accrued in October 2019

The statute of limitations for abuse of process is one year, *Borison v. Cornacchia*, 1997 U.S. Dist. LEXIS 6248, at *4 (S.D.N.Y. May 6, 1997), and it begins to run upon the institution of the improper process. *See Gomez v. City of New York*, 2016 U.S. Dist. LEXIS 128338, at *15-16 (S.D.N.Y. Sept. 14, 2016) ("Plaintiff's state law claim for abuse of process has been held in this and other districts to be subject to a one year statute of limitations as well, accruing at the time of the initiation of the criminal complaint or arrest."). The SAC alleges that Bilalov was arrested in

[4] Certain courts in this District have held that the limitations period for unjust enrichment claims is six years where damages are sought. *See, e.g.*, *Ferring B.V. v. Allergan, Inc.*, 932 F. Supp. 2d 493, 513 (S.D.N.Y. 2013). Plaintiff's unjust enrichment claim would still be time-barred under this longer limitations period given that this lawsuit was filed more than seven years after the alleged misappropriation of Bilalov's putative shares.

October 2019. *See* SAC ¶¶ 144, 219. Bilalov filed this lawsuit in November 2020. As such, Bilalov's abuse of process claim is time-barred.

**C. The Doctrines of Equitable Estoppel, Equitable Tolling, and Separate Accrual Cannot Save Bilalov's Claims**

In an effort to avoid the statutes of limitations, Bilalov invokes in conclusory fashion the doctrines of equitable tolling and equitable estoppel. *See* SAC ¶¶ 1-10, pp. 57-59. Moreover, in his Pre-Motion Letter, Bilalov argues that his RICO claims are timely due to the separate accrual doctrine. *See* ECF No. 56, pp. 1-2. None of these doctrines salvage Bilalov's time-barred claims.

**1. Equitable Tolling and Equitable Estoppel**

Under New York law, equitable tolling applies "where a plaintiff has been prevented in some extraordinary way from exercising rights, such that it would have been impossible for a reasonably prudent person to learn about his or her cause of action." *Pearl v. City of Long Beach*, 296 F.3d 76, 85 (2d Cir. 2002) (internal quotations and citations omitted). To qualify for equitable tolling, the plaintiff bears the burden of showing that "some extraordinary circumstance, such as fraudulent concealment, stood in the way of bringing suit and that he had been pursuing his rights diligently." *Wright v. Rensselaer Cty. Jail*, 771 Fed. Appx. 58, 60 (2d Cir. 2019). By contrast, equitable estoppel is available "where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay bringing the lawsuit." *Dillman v. Combustion Eng'g, Inc.*, 784 F.2d 57, 61 (2d Cir. 1986) (citation omitted); *see Seck v. Info. Mgmt. Network*, 2016 U.S. Dist. LEXIS 200890, at *7 (S.D.N.Y. June 30, 2016) ("Equitable estoppel has been invoked in cases where the defendant misrepresented the length of the limitations period or in some way lulled the plaintiff into believing that it was not necessary for him to commence litigation." (citation omitted)). As with equitable tolling, "[d]ue diligence on the part of the plaintiff in bringing [an]

action [] is an essential element" of equitable estoppel. *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) (internal quotations and citation omitted).

Apart from conclusory statements, the SAC alleges no facts justifying the application of either equitable doctrine. Although Bilalov argues in broad strokes that the statute of limitations should be equitably tolled because Defendants "actively concealed" the "true nature and intent of their conduct" in their takeover of Plaintiff's shares, SAC ¶ 5, p. 58, Bilalov alleges no concealment separate and distinct from the alleged misconduct culminating with the misappropriation of his shares. *See Meyer v. Seidel*, 2021 U.S. Dist. LEXIS 153919, at *27 (S.D.N.Y. Aug. 16, 2021) ("To secure equitable tolling, plaintiff must establish that it was the defendants' subsequent actions—separate from the ones for which they sue—that kept [him] from bringing suit." (internal quotations and citation omitted)). To the contrary, the SAC makes clear that Bilalov was aware of the alleged fraud and resulting injury as soon as he and his brother were "forced to sell" their shares in 2013. *See* SAC ¶ 87; *HV Assocs. v. PNC Bank, N.A.*, 2020 U.S. Dist. LEXIS 180642, at *21-23 (S.D.N.Y. Sept. 30, 2020) (rejecting application of equitable tolling where it was "refuted by Plaintiffs' own allegations" evidencing that Plaintiffs "had all the information they needed" to prosecute their claims). Thus, the SAC fails to allege a plausible basis to equitably toll the statute of limitations.

Bilalov next argues that Defendants should be estopped from invoking the statute of limitations because their continuing "wrongful conduct" prevented Bilalov from timely filing his lawsuit. SAC ¶ 10, p. 59. Bilalov does not allege that SCIB took any action that caused him to delay bringing his putative claims. Bilalov instead claims that certain individuals affiliated with Defendants told him that Mr. Gref "wanted to amicably resolve the conflict" without litigation and that, as a result, he refrained from filing his lawsuit. *Id.* ¶¶ 127, 130. Bilalov also alleges that after

a year of settlement talks, he was informed that Defendants did not intend to settle the lawsuit and he was subsequently threatened. *Id.* ¶¶ 132, 138-140.

Even if the foregoing conduct were sufficiently egregious to warrant equitable estoppel—which it is not—Bilalov cannot invoke this doctrine because he did not diligently pursue his claims. *Abbas*, 480 F.3d at 642. The SAC does not allege a single instance of misconduct directed at Bilalov by any Defendant between 2014 and 2017. And even if, as Bilalov maintains, he could not bring suit in Russia due to the "corrupt nature of the Russian courts,"[5] *see* SAC ¶ 6, p. 58, Bilalov does not explain why he refrained from filing suit in 2016 when he moved to New York. *See id.* ¶ 124. Bilalov instead decided to wait until late spring 2018 to "back channel members of the 'inner circle' in an effort to recover some of his assets." *See id.* ¶¶ 125; *see also Beneficial Capital Corp. v. Richardson*, 1995 U.S. Dist. LEXIS 7354, at *5 (S.D.N.Y. May 31, 1995) (denying equitable estoppel where delay was due in part to settlement negotiations). This was a strategic decision by Bilalov, not deception or inducement by Defendants. *See HV Assocs.*, 2020 U.S. Dist. LEXIS 180642, at *23-24 (finding equitable estoppel inapplicable where the time to file lapsed due to the plaintiffs' own "tactical decision not to pursue claims that they admittedly knew about"). The fact that Bilalov may regret his decision not to file his lawsuit in 2016 (or earlier) is not a valid basis for invoking the doctrine of equitable estoppel against Defendants.

### 2. Separate Accrual Rule

Bilalov separately argues that his RICO claims are timely because the RICO statute of limitations restarted upon discovery of the last alleged predicate act, *i.e.*, the Hobbs Act violation that allegedly occurred in 2019. *See* Pl.'s Pre-Mot. Ltr., p. 2. Contrary to Plaintiff's claim,

[5] Contrary to Bilalov's claim, various courts in this District have held that Russia is a competent and available forum for Russian disputes. *See* Section I.B of the submission of Defendants Gref and Sberbank, filed contemporaneously herewith.

however, later-in-time predicates do no reset the clock for a prior RICO injury. *See, e.g.*, *Zahl v. Kosovsky*, 2011 U.S. Dist. LEXIS 22028, at *39-40 (S.D.N.Y. Mar. 3, 2011). Although the Second Circuit recognizes a separate accrual rule that permits a plaintiff to bring a RICO claim each time the plaintiff discovers a new RICO injury, *see id.* at *37, the SAC does not allege any cognizable RICO injury that is new and independent from the core 2013 alleged theft of shares.

Bilalov's RICO claims are each premised upon the alleged Reiderstvo scheme by which Defendants allegedly misappropriated Bilalov's and his brother's interest in Krasnaya Polyana in Russia in 2013. *See* SAC ¶¶ 192, p. 45, 173 p. 47, 180 p. 49. In a misguided attempt to invoke the separate accrual rule, Bilalov contends that the four-year statute of limitations should run anew as of 2019 because the Hobbs Act Extortion resulted in a fresh injury, *i.e.*, Bilalov was pressured into abandoning his legal claims, which in turn allowed Defendants to retain his property.[6] Pl.'s Pre-Mot. Ltr., p. 2. As set forth below, Bilalov has failed to plead the essential elements of Hobbs Act extortion, including because the SAC does not allege that any Defendant wrongfully acquired Plaintiff's property in 2019. In any event, the alleged Hobbs Act injuries are derivative of the alleged misappropriation of Bilalov's shares and, therefore, cannot form the basis of a new and independent injury for purposes of the separate accrual rule. *See Tech. Opportunity Grp., Ltd. v. BCN Telecom, Inc.*, 2019 U.S. Dist. LEXIS 164387, at *21 (S.D.N.Y. Sept. 23, 2019) (subsequent payments extorted in furtherance of a scheme are not new and independent injuries).

*Simmons v. Reich*, 2020 U.S. Dist. LEXIS 223479 (E.D.N.Y. Nov. 30, 2020), is instructive. There, the plaintiffs brought RICO claims alleging a scheme to defraud borrowers by making and

[6] "A necessary corollary of the separate accrual rule is that plaintiff may only recover for injuries discovered or discoverable within four years of the time suit is brought." *Strother v. Harte*, 171 F. Supp. 2d 203, 209 (S.D.N.Y. 2001) (citation omitted)). Thus, even if the separate accrual rule applied, Bilalov could not recover for alleged injuries predating this lawsuit by more than four years.

enforcing unlawful mortgage agreements with the ultimate objective of securing an interest in the borrowers' property upon default. *Id.* at *23. Invoking the separate accrual rule, the plaintiffs argued that they suffered new RICO injuries when the defendants threatened one of the plaintiffs with harmful consequences if he refused to sell his property to defendants. *Id.* at *30-31. The court disagreed, finding that the alleged threats related back to the underlying RICO injury, *i.e.*, plaintiffs' assumption of the loan agreements. *See id.* at *31 ("[T]he separate accrual rule does not apply where the complaint alleges new RICO violations that merely reinforce the same injury." (internal quotations and citation omitted) (emphasis in original)). The court also observed that while the complaint alleged that threats were made, it was "silent as to whether [plaintiff] was injured in his business or property as a result." *Id.*

So too here. Bilalov contends that "Defendants threated Plaintiff with physical violence *in furtherance of their plan* to deprive Plaintiff of his ownership interest in Krasnaya Polyana." *See* Pl.'s Pre-Mot. Ltr., p. 2 (emphasis added). Thus, contrary to Bilalov's claim, Defendants' alleged extortionist threats do not constitute new and independent injuries. *See, e.g.*, *Tech. Opportunity Grp., Ltd.*, 2019 U.S. Dist. LEXIS 164387, at *22 ("The fact that [defendant] allegedly made additional threats to continue exactly the same [RICO] scheme does not restart the clock on the statute of limitations."). Moreover, as in *Simmons*, the SAC does not allege that Bilalov suffered any injury to his business or property as a result of the alleged threats underlying his Hobbs Act claim. As such, Bilalov's RICO claims are not rendered timely by the separate accrual rule.

## III. <u>The SAC Fails To State A Claim</u>

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the Court on a motion to dismiss must accept as true the facts alleged in the complaint,

bald assertions and bare legal conclusions are not entitled to such consideration. *See Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013) (courts are "not required to credit conclusory allegations or legal conclusions couched as factual allegations"). The SAC fails to state a claim as a matter of law.

### A. The SAC Does Not Satisfy Rule 9(b)'s Heightened Pleading Requirements

In addition to the requirements of Rule 12(b)(6), a complaint alleging fraud must satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b) by stating the circumstances constituting fraud with particularity. *Fisher v. APP Pharms., LLC*, 783 F. Supp. 2d 424, 432-33 (S.D.N.Y. 2011). To satisfy this requirement, the complaint must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 187 (2d Cir. 2004) (citation omitted). Rule 9(b) applies not only to Plaintiff's fraud and conspiracy to commit fraud claims, but also to his RICO, conversion and unjust enrichment claims insofar as they sound in fraud. *See, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith v. Young*, 1994 U.S. Dist. LEXIS 2929, at *21 (S.D.N.Y. Mar. 15, 1994) (RICO); *Daly v. Llanes*, 30 F. Supp. 2d 407, 414 (S.D.N.Y. 1998) (conversion); *Doe v. Solera Capital LLC*, 2019 U.S. Dist. LEXIS 55860, at *33 (S.D.N.Y. Mar. 31, 2019) (unjust enrichment).

The SAC does not satisfy Rule 9(b). It is replete with references to "Defendants" without specifying which Defendant made the allegedly false statements, when the statements were made, and why the statements were fraudulent. *See, e.g.*, SAC ¶ 128 ("The Defendants misrepresented to Plaintiff that Defendants are negotiating in good faith."), ¶ 196 ("Defendants made misrepresentations to Plaintiff related to his ownership interest in the company."). As Bilalov's own case law makes clear, this type of group pleading is impermissible under Rule 9(b). *See* Pl.'s

Pre-Mot. Ltr., p. 3 ("Federal Rule of Civil Procedure 9(b) requires that when 'multiple defendants are involved in the alleged fraud, it is especially important that the fraud be particularized as to each one of them.'" (quoting *Asdourian v. Konstantin*, 77 F. Supp. 2d 349, 354 (E.D.N.Y. 1999))).

In an attempt to skirt the dictates of Rule 9(b), Bilalov contends that where, as here, defendants are insiders, "specific connection need not be necessarily made between fraudulent representations and the specific defendants." *Id*. However, bare allegations of an individual defendant's affiliation with entities allegedly committing fraud are insufficient to satisfy Rule 9(b). *See Ouaknine v. MacFarlane*, 897 F.2d 75, 80 (2d Cir. 1990) (citation omitted). "Rule 9(b) requires that a complaint allege facts specifying each defendant's contribution to the fraud." *Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 249 (S.D.N.Y. 2011). The SAC does not do so here. As to SCIB, the SAC simply recites the conclusion that Sberbank operates in New York through SCIB, but it does not allege any non-conclusory facts describing SCIB's role in the alleged misappropriation of Bilalov's shares. For this reason alone, Counts I-IV (RICO), V-VI (fraud and conspiracy to commit fraud) VII (conversion), and IX (unjust enrichment) require dismissal.

**B. The SAC Fails to State a RICO Claim**

Courts look with particular scrutiny at civil RICO claims "[b]ecause the mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants." *See Purchase Real Estate Grp., Inc. v. Jones*, 2010 U.S. Dist. LEXIS 87571, at *18 (S.D.N.Y. Aug. 24, 2010) (dismissing RICO and RICO conspiracy claims). Thus, courts "strive to flush out frivolous RICO allegations at an early stage of the litigation." *Id.* (citation omitted). In order to avoid dismissal, the plaintiff must establish each element of the RICO claim as to each individual defendant. *Id.* at *17.

The SAC asserts four RICO claims under 18 U.S.C. §§ 1962(a)-(d). These sections make it unlawful to "(1) use money derived from a pattern of racketeering activity to invest in an

enterprise (§ 1962(a)); (2) acquire control of an enterprise through a pattern of racketeering activity (§ 1962(b)); (3) conduct or participate in the affairs of an enterprise through a pattern of racketeering activity (§ 1962(c)); and (4) conspire to violate §§ 1962(a)-(c)." *Mehrkar v. Schulmann*, 2001 U.S. Dist. LEXIS 717, at *12 (S.D.N.Y. Jan. 29, 2001). Bilalov's four RICO claims each suffer from a fatal lack of factual support, and instead rely on conclusory statements that mimic the statutory language. These pleading deficiencies are evident throughout, but are most notable in Bilalov's allegations relating to: (i) the RICO injury, (ii) the investment injury and acquisition injury under sections 1962(a) and (b), respectively, (iii) the pattern of racketeering activity, and (iv) the RICO enterprise. In each of these instances, Bilalov fails to plead sufficient supporting facts to make any claim "plausible." *See Twombly*, 550 U.S. at 570.

**1. The SAC Fails to Allege a Domestic Injury to Business or Property**

As an initial matter, Bilalov does not have standing to bring civil RICO claims because the SAC does not allege that Defendants' conduct caused a domestic injury to Bilalov's business or property. *See RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2096 (2016). This pleading deficiency, discussed in further detail in Section III.A of the submission of Defendants Sberbank and Gref, alone mandates dismissal of Plaintiff's four RICO claims.

**2. The SAC Fails to Allege an Investment Injury or Acquisition Injury**

To state a claim under Section 1962(a), a plaintiff must allege that (i) defendants used or invested racketeering income to acquire or maintain an interest in the alleged enterprise, and (ii) the plaintiff suffered an injury as a result of that investment by the defendants. *O&G Carriers, Inc. v. Smith*, 799 F. Supp. 1528, 1542 (S.D.N.Y. 1992). To state a claim under Section 1962(b), a plaintiff must allege an injury that stems not from the alleged predicate acts (*i.e.*, the basis of a Section 1962(c)) claims, but from the defendant's acquisition or maintenance of an interest in the pertinent enterprise. *See Cont'l Fin. Co. v. Ledwith*, 2009 U.S. Dist. LEXIS 52618, at *14

(S.D.N.Y. June 22, 2009) ("Without a distinct 'acquisition injury,' [the plaintiff] cannot state a cause of action under subsection 1962(b)." (citation omitted)). The SAC does not plead any injury due to Defendants' alleged investment of racketeering income or acquisition of an interest in an enterprise. To the contrary, Bilalov's alleged injuries all stem from the purported misappropriation of his shares; as a result, the Section 1962(a)-(b) claims should be dismissed. *See also* Section III.B of the submission of Defendants Sberbank and Gref.

**3. The SAC Fails to Allege a Pattern of Racketeering Activity**

A pattern of racketeering activity is an element common to each RICO violation alleged in the SAC. The phrase "pattern of racketeering activity" is a term of art under the RICO statute, requiring a plaintiff to plead at least two predicate acts of racketeering activity occurring within ten years of each other. 18 U.S.C. § 1961(5). Racketeering activity, in turn, is defined as an act that violates any of the federal or state laws enumerated in the RICO statute. 18 U.S.C. § 1961(1). Here, Bilalov purports to predicate his RICO claims on Defendants' alleged violations of a series of federal statutes: the mail and wire fraud statutes, the Hobbs Act, the Travel Act, and various money laundering statutes. In each case, the alleged predicates are inadequately pled.[7] Moreover, where, as here, a plaintiff fails to allege that *each* Defendant committed at least two predicate acts, dismissal of the RICO claims is warranted. *See Nat'l Union Fire Ins. Co. v. Archway Ins. Servs. LLC*, 2012 U.S. Dist. LEXIS 48735, at *16 (S.D.N.Y. Mar. 23, 2012) ("In a RICO case with more than one defendant, it is necessary for a plaintiff to particularize and prove each defendant's … enactment of the two necessary predicate acts." (internal quotations and citation omitted)).

[7] Further, the mail and wire fraud statutes and the Travel Act do not apply extraterritorially. Thus, even if they were adequately pled, Bilalov could not employ them as RICO predicates. *See Worldwide Directories, S.A. De C.V. v. Yahoo! Inc.*, 2016 U.S. Dist. LEXIS 44265, at *21, *28 (S.D.N.Y. Mar. 31, 2016).

**a. Mail Fraud and Wire Fraud**

To state a claim for mail and wire fraud, a plaintiff must allege: "(1) the existence of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme." *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996). With respect to the alleged fraudulent communications, Plaintiff must also plead "the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993).

The SAC fails to plead any facts about the alleged fraudulent communications, including which Defendant made them, what was stated and when, and why the alleged statements were fraudulent. Instead, the SAC alleges summarily that (i) "[h]undreds of telephone conversations and faxes were made to further the fraudulent scheme on virtually a daily basis during the course of the conspiracy," and (ii) Defendants, "acting through their employees, agents, and coconspirators, made or caused to be made such telephone calls, mailings, and wire transfers of funds." SAC ¶¶ 184(g); 168 pp. 45-46. These conclusory allegations would be improper under any pleading standard, let alone the Rule 9(b) standard applicable to mail and wire fraud. *See Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013). Indeed, the SAC fails to specify a single instance of Defendants' participation in any wire or mail communication or any act committed by Defendants in furtherance of a mail or wire fraud scheme. *See Newman v. Jewish Agency for Israel*, 2017 U.S. Dist. LEXIS 202524, at *16 (S.D.N.Y. Dec. 8, 2017) (dismissing RICO claim with "scant detail" supporting its mail and wire fraud predicates).

**b. Hobbs Act Extortion**

The essential elements of Hobbs Act extortion are that the defendants (1) induced the plaintiff, with the plaintiff's consent, to part with property, (2) through the wrongful use of actual

or threatened force, violence, or fear, (3) in such a way as to adversely affect interstate commerce. *Santana v. Adler*, 2018 U.S. Dist. LEXIS 51401, at *12 (S.D.N.Y. Mar. 26, 2018). The Hobbs Act requires further a showing "that the defendant did not merely seek to deprive the victim of the property right in question, but also sought to obtain that right for himself." *United States v. Gotti*, 459 F.3d 296, 300 (2d Cir. 2006).

The SAC fails to plead a Hobbs Act extortion claim. Plaintiff alleges that, on or about May 2019, Defendants caused Plaintiff to be threatened "through use of force, violence, and fear to forfeit his rights to all claims of his assets and interest in Krasnaya Polyana; and to abandon any potential lawsuits or actions available to Plaintiff." SAC ¶ 184(i). By Plaintiff's own admission, he sold his rights to Krasnaya Polyana in 2013, so that alleged theft cannot form the basis for a Hobbs Act claim six years later. *See id.* ¶¶ 87-88. To the extent Plaintiff claims a potential lawsuit equates to a property interest, his claim fails because Plaintiff's putative claims cannot be sold, transferred, or taken by Defendants for themselves. *See Sekhar v. United States*, 570 U.S. 729, 734-36 (2013) ("The property extorted [under the Hobbs Act] must . . . be transferable—that is, capable of passing from one person to another."). And even assuming, *arguendo*, that a claim for extortion of a cause of action lies under the Hobbs Act, the SAC does not allege that Defendants obtained the cause of action. *See Worldwide Directories, S.A. De C.V.*, 2016 U.S. Dist. LEXIS 44265, at *20. Finally, the SAC does not plead that the alleged extortion had any effect on interstate commerce.

**c. Travel Act**

"A Travel Act violation occurs when (1) a person travels in interstate or foreign commerce or uses a facility of interstate or foreign commerce, (2) with intent to facilitate the promotion, management, establishment, or carrying on, of any of the unlawful activities specified in § 1952(b), and (3) thereafter performs an additional act in furtherance of that specified unlawful

activity." *Merrill Lynch, Pierce, Fenner & Smith*, 1994 U.S. Dist. LEXIS 2929, at *42. Under section 1952(b), "unlawful activity" may include extortion under the Hobbs Act, acts indictable under certain money laundering statutes, or bribery under the Foreign Corrupt Practices Act.

Plaintiff does not plead sufficient facts with respect to any of the foregoing elements. Plaintiff's Travel Act allegations, pled in the same conclusory fashion as the other RICO predicates, states:

> The DEFENDANTS traveled in interstate or foreign commerce, and used facilities in interstate and foreign commerce, including the mail, with intent to distribute the proceeds of unlawful activity, and to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of unlawful activity, and thereafter performed or attempted to perform unlawful activity.

SAC ¶ 184(h). The SAC does not allege any facts suggesting that Defendants "traveled across national borders and otherwise used the facilities of foreign commerce…." *See id.* ¶ 184(h); *Worldwide Directories, S.A. De C.V.*, 2016 U.S. Dist. LEXIS 44265, at *23 (dismissing Travel Act claim where "the complaint fail[ed] to allege with any specificity that the [defendants] . . . travelled in interstate commerce as part of their bribery or fraudulent scheme"). And other than its conclusory money laundering allegations, the SAC also fails to identify and allege facts in support of any "unlawful activity" that Defendants intended to facilitate or promote or the additional act that was allegedly performed in furtherance of the unlawful activity.

### d. Money Laundering

The SAC alleges a series of federal money laundering predicates that simply cut and paste the statutory language. Bilalov's threadbare allegations, made upon information and belief, that Defendants laundered the proceeds of his putative assets through the "Troika Laundromat" is devoid of any factual support whatsoever. *See Moore v. City of New York*, 2017 U.S. Dist. LEXIS 379, at *69 (S.D.N.Y. Jan. 3, 2017) ("[A]llegations 'upon information and belief' fail to state a

claim when a plaintiff does not support them with a statement of facts that create a plausible inference of their truth." (citing *Twombly*, 550 U.S. at 551-53)); *Schlesinger v. Schlesinger*, 2007 U.S. Dist. LEXIS 104921, at *23-24 (E.D.N.Y. Feb. 8, 2007) (dismissing RICO claims where "Plaintiff's allegation of money laundering consists of the conclusory assertion that [defendant] used various corporations to … launder funds"). Moreover, to establish a violation of the money laundering statutes, Plaintiff must allege that Defendants participated in a specified unlawful activity that is "distinct from the money laundering allegation itself." *W. 79th St. Corp. v. Congregation Kahl Minchas Chinuch*, 2004 U.S. Dist. LEXIS 19501, at *29-30 (S.D.N.Y. Sept. 29, 2004). Given that Bilalov has not adequately pled any underlying predicate acts, his money laundering allegations based on those predicates must also fail.[8]

**4. The SAC Fails to Allege a RICO Enterprise**

RICO defines an "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity" 18 U.S.C. § 1961(4). A plaintiff alleging an association-in-fact ("AIF") enterprise, as Bilalov does here, *see* SAC ¶ 183, must plead the enterprise's purpose, "relationships among those associated with the enterprise," and "longevity sufficient to permit these associates to pursue the enterprise's purpose." *Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 439 (S.D.N.Y. 2019) (citations omitted). Courts in this jurisdiction look to the "hierarchy, organization, and activities" of the association to determine whether "its members functioned as a

[8] The SAC also appears to allege as the underlying offense a scheme to defraud a foreign bank under 18 U.S.C. § 1956(c)(7)(B)(iii) and violations of the Foreign Corrupt Practices Act under 18 U.S.C. § 1956(c)(7)(D). *See* SAC ¶¶ 184(e)-(f). These claims likewise fail. With respect to the former, Plaintiff has not alleged, as the statute requires, a financial transaction occurring in whole or in part in the United States involving an offense against a foreign nation. With respect to the FCPA, the SAC is devoid of allegations about SCIB, the only U.S.-based Defendant, corruptly offering a payment or anything of value to a foreign official for purposes of influencing the foreign official to act.

unit." *Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444, 450 (S.D.N.Y. 2007) (citation omitted).

Here, Plaintiff alleges that Defendants and various third parties formed an AIF with the objective of "acquiring private companies by illegal means, money laundering, and carrying out other elements of the SberBank DEFENDANTS' scheme." SAC ¶ 183. Even if it were plausibly alleged that Defendants and the various unnamed third parties shared those objectives (it is not), the SAC fails to allege a sufficient relationship among them to plead an enterprise:

> Gref, Sberbank and Sberbank CIB, along with their coconspirators Does 1-100, including associated 'inner circle' members and companies, including institutions controlled by SberBank, Herman Gref, and third-parties related to them consisting of currency dealers, money brokers, and other participants in the schemes identified above, were, at all relevant times, an association-in-fact of individuals and corporations engaged in, and the activities of which affected, interstate and foreign commerce, and thus constituted an 'enterprise' within the meaning of 18 U.S.C. § 1961(4) (the 'Sberbank Enterprise').

*Id.* Listing the Defendants and then stringing together a host of unnamed third parties, including currency dealers, money brokers, and other participants in Reiderstvo schemes, without explaining their respective connections or roles, is insufficient to establish a RICO enterprise. *See Cedar Swamp*, 487 F. Supp. 2d at 450 ("[M]erely stringing together a list of defendants and labeling them an enterprise is insufficient to state a RICO claim."). Moreover, the only allegations of any hierarchy or organization is the conclusory statement that the enterprise "has an ascertainable structure." SAC ¶ 183. Absent any facts suggesting that Defendants and the various unnamed third parties "functioned as a unit" or "operated according to any structure or hierarchy," the SAC fails to plead an enterprise. *Cedar Swamp*, 487 F. Supp. 2d at 450-51.

### 5. The SAC Fails to Allege a RICO Conspiracy

Plaintiff's RICO conspiracy claim fails because, among other reasons, the SAC does not adequately plead a substantive RICO claim under 18 U.S.C. §§ 1962(a)-(c). *See First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004) (citing *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1996), *vacated on other grounds*, 525 U.S. 128 (1998) ("Since we had have held that the prior claims do not state a cause of action for substantive violations of RICO, the present claim does not set forth a conspiracy to commit such violations.")).

### C. The SAC Fails to State an Alien Tort Statute Claim

The SAC pleads an ATS claim based on Defendants' alleged practice of Reiderstvo. *See* SAC ¶ 226. This claim fails as to SCIB as a matter of law.

As set forth in Section IV.A of the submission of Defendants Gref and Sberbank, the ATS does not apply extraterritorially. Because Plaintiff's core allegations all took place in Russia, the ATS has no application here. Moreover, the Supreme Court recently held that "mere corporate presence" and "general corporate activity," which is, at best, all that is alleged as to SCIB, is not sufficient to support domestic application of the ATS. *Nestle USA, Inc. v. Doe*, No. 19-416, 2021 U.S. LEXIS 3120, at *9 (June 17, 2021). In any event, the SAC does not allege that SCIB (or any Defendants, for that matter) violated any universally recognized international law, as required under the ATS. Indeed, money laundering—which is the only misconduct in which SCIB allegedly partook—is not actionable under the ATS. *See Nahl v. Jaoude*, 2018 U.S. Dist. LEXIS 100056, at *14 (S.D.N.Y. June 14, 2018), *aff'd* 968 F.3d 173, 181 (2d Cir. 2020) (declining to extend ATS liability to money laundering given the Supreme Court's admonition that ATS covers only a "modest number of international violations" (citation omitted)).

### D. The SAC Fails to State Any State Law Claims

Plaintiff pleads a host of common law claims, including fraud, conspiracy to commit fraud, conversion, and unjust enrichment, all of which are based on the alleged 2013 misappropriation in Russia of Plaintiff's putative shares in Krasnaya Polyana. As set forth below, in addition to being time-barred, each of these causes of action fail to state a claim under New York law.[9] Bilalov's malicious abuse of process claim is similarly defective and should be dismissed.

#### 1. Fraud and Conspiracy to Commit Fraud

Under New York law, fraud requires proof of (1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages. *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006).

In perhaps the most egregious example of Plaintiff's deficient group pleading, Plaintiff alleges that "Defendants made representations to Plaintiff related to his ownership interest in the company," that "these representations were false," and that "Plaintiff justifiably relied upon the representations." SAC ¶¶ 196-97, 200. The SAC pleads no facts as to the substance, speaker, and date of the allegedly fraudulent statements, or explain why the statements were fraudulent. *See Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) ("Rule 9(b) . . . require[s] that a complaint (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." (internal quotations and citation omitted)). Nor does the SAC plead falsity, reasonable

[9] In general, under New York choice of law principles, which apply where the Court has diversity jurisdiction, the law of the place of the alleged tort, *i.e.*, Russia, governs. *Padula v. Lilarn Props. Corp.*, 84 N.Y.2d 519, 522 (1994). The SAC, however, does not state the substance of the Russian law relied upon in asserting these claims. As such, SCIB applies New York law to each of Plaintiff's state law claims.

reliance by Bilalov on the alleged misrepresentations, or damages traceable to a misrepresentation. Any of these pleading failures supports dismissal of Plaintiff's eight-year-old fraud claim.

By extension, Bilalov's claim for conspiracy to commit fraud must be dismissed. *See Valentini v. Grp. Health Inc.*, 2021 U.S. Dist. LEXIS 112081, at *48 (S.D.N.Y. June 15, 2021) ("Because the Complaint fails to state a claim for fraud, the conspiracy count must be dismissed."). The conspiracy claim also fails for the independent reason that it does not allege that SCIB (or any other Defendant) entered into an agreement to misappropriate Plaintiff's putative assets. *See Savitsky v. Mazzella*, 2004 U.S. Dist. LEXIS 22104, at *16-17 (S.D.N.Y. Nov. 1, 2004) (requiring, among other elements, allegations of a corrupt agreement between two or more persons).

**2. Conversion**

To state a claim for conversion, a plaintiff must allege (1) legal ownership or an immediate superior right of possession to a specific identifiable thing, and (2) that the defendant exercised an unauthorized dominion over the thing in question, to the exclusion of the plaintiff's rights. *Ancile Inv. Co. v. Archer Daniels Midland Co.*, 784 F. Supp. 2d 296, 312 (S.D.N.Y. 2011).

Initially, Bilalov fails to plead a possessory interest in the allegedly stolen shares. *See* SAC ¶ 45 (alleging that Plaintiff's brother owned the shares); ¶ 79 ("As of March 2013, Plaintiff's brother was an actual shareholder of 41.429% (1426 ordinary shares) of 'Krasnaya Polyana….'"). Without a possessory right in the converted property, Plaintiff cannot adequately plead a claim for conversion. *See Colavito v. N.Y. Organ Donor Network, Inc.*, 860 N.E.2d 713, 717 (2006) (a key element of conversion is "plaintiff's possessory right or interest in the property"). Moreover, Plaintiff admits that he and his brother sold their putative stake in Krasnaya Polyana in 2013 for $20 million to an individual named Mikhail Gutzeriev. *See* SAC ¶¶ 87-88, 91. Accordingly, by Plaintiff's own admission, Defendants did not exercise dominion over his putative shares and, even if they had, it would not have been unauthorized. *See B&C Realty, Co. v. 159 Emmut Props. LLC*,

106 A.D.3d 653, 656 (1st Dep't 2013) (affirming dismissal of conversion claim where plaintiff transferred funds in exchange for a 7% interest in the subject property; defendants' possession of the funds was not without authority). Plaintiff also fails to plead with particularity SCIB's alleged exercise of unauthorized dominion over his putative shares.

**3. Unjust Enrichment**

To state a claim for unjust enrichment under New York law, a plaintiff must allege that (1) the defendant was enriched, (2) at the expense of the plaintiff, and (3) it would be inequitable to permit the defendant to retain that which plaintiff is seeking to recover. *See Doe v. Solera Capital LLC*, 2019 U.S. Dist. LEXIS 55860, at *32 (S.D.N.Y. Mar. 31, 2019). A claim for unjust enrichment "is available only in unusual situations when the defendant has not breached a contract nor committed a recognized tort, but circumstances create an equitable obligation running from the defendant to the plaintiff." *Maya NY, LLC v. Hagler*, 106 A.D.3d 583, 585 (1st Dep't 2013). "The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties concerned." *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 907 N.E.2d 268, 274 (2009) (internal quotations and citation omitted).

In support of his unjust enrichment claim, Plaintiff alleges, in conclusory fashion, that "[a]s a result of "Defendants' unauthorized dominion over the unlawfully transferred shares of Krasnaya Polyana . . . , they were unjustly enriched to the detriment of Plaintiff" and that "Defendants had no legal or equitable rights to Plaintiff's funds and corporate shares." SAC ¶¶ 221, 223. As above, where the plaintiff lacks a possessory interest in the property, his claim for unjust enrichment must fail. *A.I.A. Holdings, S.A. v. Lehman Bros.*, 1999 U.S. Dist. LEXIS 971, at *20 (S.D.N.Y. Jan. 28, 1999). Additionally, Bilalov's claim is belied by his allegations confirming that Plaintiff's brother sold his putative shares more than eight years ago to Mikhail Gutzeriev for $20 million. *See* SAC

¶¶ 79, 83. At bottom, the SAC does not allege any conduct by SCIB that would create an equitable obligation running to Plaintiff, and it is devoid of non-conclusory allegations of Defendants' unjust enrichment at Plaintiff's expense.

**4. Abuse of Process**

To state a claim for malicious abuse of process, the plaintiff must show that the defendant (1) employed regularly issued legal process to compel performance or forbearance of some act, (2) with the intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process. *Mortimer v. City of New York*, 2018 U.S. Dist. LEXIS 53492, at *69 (S.D.N.Y. Mar. 29, 2018). In order to plead a "collateral objective," the plaintiff must allege that the defendants had an "improper purpose" in instigating the action beyond or in addition to the criminal prosecution. *Curanaj v. Cordone*, 2012 U.S. Dist. LEXIS 135101, at *36-37 (S.D.N.Y. Sept. 19, 2012). The collateral objective element is the "crux" of a malicious abuse of process claim, *Kraft v. City of New York*, 696 F. Supp. 2d 403, 416 (S.D.N.Y. 2010), as the claim centers on "the improper use of process *after* it is regularly issued." *Richardson v. N.Y.C. Health & Hosps. Corp.*, 2009 U.S. Dist. LEXIS 25247, at *46 (S.D.N.Y. Mar. 25, 2009) (citation omitted) (emphasis in original). Thus, to properly plead this claim, a plaintiff must not only show a collateral objective, but also that that objective was pursued after legal process was issued.

In support of his malicious abuse of process claim, Plaintiff alleges that "Defendants provided false and defamatory information to Interpol and to the United States DHS which led to Plaintiff's arrest in Miami" and that "Defendants' actions were retaliatory and malicious." SAC ¶¶ 219-20. Setting aside the fact that the SAC offers no factual detail about the allegedly false and defamatory information that was provided to law enforcement or the circumstances of its alleged provision—which alone mandates dismissal of this cause of action—Bilalov's abuse of process

claim fails because allegations of retaliation do not establish a "collateral objective." *See Curanaj*, 2012 U.S. Dist. LEXIS 135101, at *36 ("[I]t is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him. Instead, he must claim that they aimed to achieve a collateral purpose *beyond or in addition* to his criminal prosecution." (citation omitted) (emphasis added)). The SAC does not allege any collateral objective or pursuit of such objective by Defendants upon Plaintiff's arrest. *See* SAC ¶¶ 137, 141, 144. As a result, Bilalov's malicious abuse of process claim should be dismissed.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss the SAC as to SCIB with prejudice.

Dated: New York, New York
September 6, 2021

Respectfully submitted,

WHITE & CASE LLP

By: */s/ Claire DeLelle*

Claire DeLelle
Email: claire.delelle@whitecase.com
701 Thirteenth Street, NW
Washington, DC 20005
Telephone: (202) 626-3600

Kim Havlin
Email: kim.havlin@whitecase.com
Scott Hershman
Email: scott.hershman@whitecase.com
Isaac Glassman
Email: isaac.glassman@whitecase.com
1221 Avenue of the Americas
New York, New York 10020-1095
Telephone: (212) 819-8200

*Counsel for Defendant*
*Sberbank CIB USA, Inc.*