**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------------x

                                      Civil Action No.:
                                      1:20-cv-09153-AT-KNF

AKHMED GADZHIEVICH BILALOV,

                Plaintiff,

                -against-

HERMAN GREF, SBERBANK CIB USA, INC.,
SBERBANK OF RUSSIA PJSC, and DOES 1-
100 inclusive,

                Defendants.

--------------------------------------------------------------------------x


<u>**PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW**</u>
<u>**IN OPPOSITION TO SBERBANK CIB USA, INC'S AND SBERBANK OF RUSSIA AND**</u>
<u>**HERMAN GREF'S MOTIONS TO DISMISS THE SECOND AMENDED COMPLAINT**</u>




Dated: New York, New York
          October 18th, 2021

                                      Respectfully submitted,


                                      <u>*/s/Irina Shpigel*</u>
                                      Irina Shpigel, Esq.
                                      SHPIGEL LAW,  P.C.
                                      250 Greenwich Street, 46th
                                      Floor 7 World Trade Center
                                      New York, NY 1007
                                      Ph. 1.212.390.1913

# TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................................. 1

ARGUMENTS IN OPPOSITION .......................................................................... 2

STANDARD OF REVIEW ...................................................................................... 2

I.   The Doctrine of Forum Non Conveniens Favors Adjudication in this Court........ 4

  A.   Plaintiff does not have an adequate alternative forum and Public and Private Interests Weight Strongly in Favor of U.S. Adjudicaion........................... 5

  B.   The Court Should Give Deference to Plaintiff's Choice of Forum ............ 5

II.   The Court has Personal Jurisdiction over the Russian Defendants........................ 9

III.   The SAC's Claims are not Time-Barred................................................................ 15

  A.   Bilalov's Fraud, Conspiracy to Commit Fraud, RICO, Conversion and Unjust Enrichment Claims were Timely Commenced .......................................................15

  B.   Bilalov's Abuse of Process Claim was Tolled by New York Executive Order No. 202.8 ..................................... 16

IV.   The RICO Counts are Pled with Sufficient Specificity ........................................ 17

  A.   The SAC Does Not Satisfy Rule 9(b)'s Heightened Pleading Requirements ......................................................... 16

  B.   The SAC Fails to State a RICO Claim..................................................... 17

    1.   RICO'S Extraterritorial Application............................................... 17

    2.   The SAC identifies Harm to Plaintiff's Business or Property ...... 18

    3.   The SAC alleges an Investment Injury or Acquisition Injury ...... 21

      a.   Mail Fraud and Wire Fraud................................................ 23

      b.   Hobbs Act Extortion .......................................................... 24

      c.   Travel Act .......................................................................... 25

      d.   Money Laundering.............................................................. 25

    4.   The SAC Alleges a RICO Enterprise ........................................... 26

    5.   The SAC Alleges a RICO Conspiracy........................................... 27

V.     The Alien Tort Statute is Legally Sustainable and Adequately Pled ................... 27

VI.    The Non-Federal Claims are Legally Sustainable and Adequately Pled ............. 28

VII.   Leave to Amend .................................................................................. 29


CONCLUSION................................................................................................ 30

Plaintiff, AKHMED GADZHIEVICH BILALOV (hereinafter referred to as "Plaintiff"), by and through undersigned counsel, hereby files this, his Omnibus Memorandum of Law in Opposition to Motions to Dismiss the Second Amended Complaint (hereinafter SAC) filed by Sberbank CIB USA, Inc. (ECF Dkt. No. 62) and Sberbank of Russia and Herman Gref (ECF Dkt.. No. 59), and in support thereof, states as follows:

## PRELIMINARY STATEMENT

Plaintiff brought forth the claims in the SAC as a direct result of  a calculated and orchestrated conspiracy throughout Russia and the United States, perpetrated by Defendants, particularly the Russian Defendants, aimed to defraud Plaintiff of his ownership interest of Krasnaya Polyana AO, using classic *Reiderstvo* tactics including sophisticated methods of coercion, fraud, money laundering, attempted assassination via mercury poisoning, and through use of corrupt politicians and legal institutions.  Instead of addressing the factual merits of the SAC, the Russian Defendants as described herein have elected to rely on unsupported and meritless technical legal shortcuts to dismissal of the claims in the Second Amended Complaint (hereinafter "SAC").  In large part, this action is based upon violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), which was specifically intended by Congress to eradicate organized crime on all fronts (including in foreign and interstate commerce) and to deprive violators of their ill-gotten gains.  Accordingly, for the reasons herein, Russian Defendants' motion to dismiss the SAC should be denied in its entirety.

## ARGUMENT IN OPPOSITION

Defendants Sberbank CIB USA, Inc. , Sberbank of Russia and Herman Gref (hereinafter the "Defendants" bring forth their motion to dismiss the Second Amended Complaint ("SAC") on

the following meritless grounds: (1) that under the doctrine of Forum Non Conveniens, adjudication should occur in Russia; (2) that the SAC does not establish personal jurisdiction over the Russian Defendants; (3) that the RICO claims are not legally sustainable; (4) that the Alien Tort Statute Count is not legally sustainable; and that (5) the Court should dismiss the non-federal claims by exercising its supplemental jurisdiction.

The crux of Defendants' Motion to Dismiss is extraterritoriality. Most recently this Court considered this argument and rejected it in *Schansman v. Sberbank of Russia PJSC*. In *Schansman*, the Plaintiff's alleged that Sberbank of Russia PJSC directly funded a terrorist organization, DPR, which downed Malaysian Airlines Flight 17 in Ukraine on July 17, 2014. *Shansman et.al., v. Sberbank of Russia PJSC et. al., 19 Civ 2985 (ALC) (SDNY September 2021).* Sberbank argued, as it does here, that the case is extra-territorial and that therefore the Southern District of New York does not have personal jurisdiction over it. Judge Andrew Carter in that case rejected that argument and found personal jurisdiction over Sberbank of Russia PJSC. The Complaint alleged that Sberbank provided financial services to the DPR using New York's banking system and correspondent banks in New York. Likewise, in the case at bar, this Court should reject Sberbank's arguments regarding personal jurisdiction.

Plaintiff addresses each of these arguments in turn and requests for the reasons herein that the Court deny the Defendants', Sberbank Motions to Dismiss the SAC in its entirety.

## STANDARD OF REVIEW

When deciding a motion to dismiss for lack of personal jurisdiction, courts may rely on pleadings and affidavits, in which case "the plaintiff need only make a prima-facie showing that the court possesses personal jurisdiction over the defendant." *DiStefano v. Carozzi North America, Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (internal quotation marks omitted). When deciding whether

Plaintiffs have made such a showing, the Court must "construe the pleadings and affidavits in the light most favorable to [Plaintiffs], resolving all doubts in [their] favor." Id.

"This prima facie showing must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) ("*Licci* I") (internal quotation marks and alterations omitted). When parties do not submit "an affidavit or other evidence on which the court could rely . . . the court must rely on the allegations in the complaint to determine if personal jurisdiction exists." *MacFarlane v. Brock*, No. 3:00 CV 97, 2000 WL 1827353, at *2 (D. Conn. Nov. 30, 2000). To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (*citing Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," and accordingly, where the plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (*quoting Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *See Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555); see also id. at 681. Instead, the complaint must provide factual

allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc*., 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555). In addition to the factual allegations in the complaint, the court also may consider "the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (citation and internal quotation marks omitted).

## I.      The Doctrine of Forum Non Conveniens Favors Adjudication in this Court

Russian Defendants first argue that Plaintiff's claims should be dismissed under the doctrine of *forum non conveniens*, in favor of adjudication in Russian Court. Doc. No. 59; Page 9. Russian Defendants proffer that the Russian courts plainly "have more interest than the United States and far readier capacity to adjudicate this clearly Russian dispute…" Doc. No. 59; Page 9.

The doctrine of *forum non conveniens* allows a court to dismiss an action "even if the court is a permissible venue with proper jurisdiction over the claim." *Carey v. Bayerische Hypo-Und Verinsbank AG*, 370 F.3d 234, 237 (2d Cir. 2004) (citation omitted). A district court dismisses a complaint where, on balance, the resolution of the claim in an adequate alternative forum would be more convenient and more just. *See R. Maganlal Co. v. M.G. Chemical Co.*, 942 F.2d 164, 167 (2d Cir. 1991) ("The central purpose of a *forum non conveniens* inquiry is to determine where trial will be most convenient and will serve the ends of justice."). The relevant factors are well established. "The first step in a *forum non conveniens* analysis is for the court to establish the existence of an adequate alternative forum. Second, the court must determine the level of deference to accord the plaintiff's choice of forum. Third, the court must weigh the public and private interests in order to determine which forum will be the most convenient and will best serve the ends of justice." *USHA (India), Ltd. v. Honeywell Int'l, Inc.*, 421 F.3d 129, 134 (2d Cir. 2005). A

4

decision to dismiss for *forum non conveniens* "lies wholly within the broad discretion of the district court and may be overturned only when we believe that discretion has been *clearly abused.*" *Id.* (emphasis in original and citations omitted). It should be noted that the honorable court of this district has recently ruled on *Shansman* a matter with similar jurisdictional challenges and the Court there ascertained that the Plaintiff's claim had merit as it pertained to the Court's jurisdiction over the Defendants.

A. Plaintiff does not have an adequate alternative forum and Public and Private Interests Weigh Strongly in Favor of U.S. Adjudication

An alternative forum is adequate for *forum non conveniens* analysis "if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75(2d Cir. 2003).

An adequate forum is simply one that offers a remedy for the claim and will treat the plaintiff with aa basic level of fairness. *See Piper Aircraft v. Reyno*, 454 U.S. 254-55(1981). Here an adequate alternative forum does not exist. The Plaintiff would not be able to get a fair trial in Russia against Defendants Sberbank, the official bank of Russia and its chairman Herman Gref. Firstly, Plaintiff has alleged in his complaint that he was unjustly arrested in absentia in Russia on falsified charges, which were directly connected to his political position, and that Defendants used the Russian criminal system to deprive Plaintiff of his property. SAC at ¶ 82-101. As indicated in the SAC, Plaintiffs issue are at their root political persecution as they are intertwined with the issues of his jailed political descendant cousin, Ziyavudin Magomedov, who the U.S. Senate recognized to be a victim of the Russian corrupt government and its corrupt courts.

According to the Department of State's Russia Country Report on Human Rights Practices for 2020 the Russian court system is very corrupt and Russia lacks an independent judiciary Furtheremore, the Report published by the Department of State indicated that like the Plaintiff,

other victims of Russia's corrupt government experienced similar treatment, which included poisoning (A. Navalny who was poisoned and on his return to Russia for what he assumed to be a fair trial was detained and sentenced by a tribunal which the U.S. and E.U. condemned and determined to be a biased and corrupt court)   According to the Report,   "Corruption was widespread throughout the executive branch, including within the security sector, as well as in the legislative and judicial branches at all levels." *2020 DOS Report on Human Rights on Russia*, at page 48.

Moreover, "[s]ignificant human rights issues included: extrajudicial killings and attempted extrajudicial killings,[]enforced disappearances; pervasive torture by government law enforcement officers that sometimes resulted in death and occasionally involved sexual violence or punitive psychiatric incarceration; harsh and life-threatening conditions in prisons; arbitrary arrest and detention; political and religious prisoners and detainees; politically motivated reprisals against individuals located outside the country; severe arbitrary interference with privacy;" and according to the "government failed to take adequate steps to identify, investigate, prosecute, or punish most officials who committed abuses, resulting in a climate of impunity."

According to the report, corruption manifested itself in the following areas "bribery of officials, misuse of budgetary resources, theft of government property, kickbacks in the procurement process, extortion, and improper use of official position to secure personal profits." *Id*.

The State Department Report outlines that Russia has political prisoners and that authorities detained and prosecuted individuals for political reasons. Charges usually applied in politically motivated cases included "terrorism," "extremism," "separatism," and "espionage." Political prisoners were reportedly placed in particularly harsh conditions of confinement and subjected to

other punitive treatment within the prison system, such as solitary confinement or punitive stays in psychiatric units.

Likewise, the report highlights that Russia has used the International Criminal Police Organization (Interpol) to target political enemies abroad. *Id. at Page 18.*

Court's in this jurisdiction often give weight to DOS Reports on Human Rights. *See Meriyu v. Barr*, 950 F.3d 503 (7th Cir. 2020) *see also Ping Zheng v. Holder*, 701 F.3d 237 (7th Cir. 2012) ; *Lin Xing Jiang v. Holder*, 639 F.3d 751 (7th Cir. 2011).

There is no real alternative forum for Plaintiff to bring his case, he left Russia several years ago and never returned, his departure was necessitated by his poisoning, which is directly connected to the matter at hand. Since coming to the U.S. Plaintiff's family was persecuted, some of whom remain detained in horrific conditions with no access to an independent judiciary, Plaintiff's assets were plundered, and he received direct threats in the U.S. by members of Russia's government. The matter started in the Russian Federation, which has a long history of jailing and killing people who try to seek justice, however, by virtue of Defendants' actions which occurred when Plaintiff was already in the relative safety of the United States, the Defendants availed themselves to the fair, equitable, and independent U.S. Courts.

B. <u>Deference to the Plaintiff's Choice of Forum</u>

It is well established that "A plaintiff's choice of forum is generally entitled to considerable weight and should not be disturbed unless the balance of the factors is strongly in favor of the defendant. Where the factors are equally balanced, the plaintiff is entitled to its choice." *Berman v. Informix Corp.*, 30 F.Supp.2d 653, 659 (S.D.N.Y. 1998) (citations omitted); accord In re *Warrick*, 70 F.3d 736, 740-41 (2d Cir. 1995) *(per curiam)* ("[Plaintiff's] choice of venue [is] entitled to substantial consideration.") (citation and internal quotation marks omitted). However,

"plaintiffs' choice of forum is accorded less weight where the plaintiffs' chosen forum is neither their home nor the place where the operative facts of the action occurred." *Dwyer v. Gen. Motors Corp.*, 853 F.Supp. 690, 694 (S.D.N.Y. 1994) (citation omitted); accord Emp'rs Ins. of *Wausau v. News Corp.*, 2008 WL 4443899, at *3 (S.D.N.Y. Sept. 29, 2008) ("[W]here the plaintiff has chosen a forum that is neither the district of its residence, nor the locus of the operative facts in the case, this choice is given considerably less weight.") (citations omitted).  Here, although Plaintiff is a resident of the State of Florida, and although some of the civil RICO acts occurred in Russia, the SAC adequately alleges that Russian Defendants were integral in moving the proceeds of their wrongful acts to the United States, particularly in New York, via the Troika Laundromat and the subsequent acts of Russian Defendants constituting Hobbs Act Extortion in the State of New York. SAC ¶¶102-119, 184(i).

The Hobbs Act makes it unlawful for Defendants, or any officer, director, employee, or agent thereof, to obstruct, delay or affect commerce, by extortion or an attempt to do so, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to commit Hobbs Act Extortion. 18 U.S.C. § 1951. The SAC alleges that on or about May 2019, while Plaintiff was in San Francisco, the Defendants directed their representatives and coconspirators to threaten Plaintiff through use of force, violence, and fear to forfeit his rights to all claims of his assets and interest in Krasnaya Polyana; and to abandon any potential lawsuits or actions available to Plaintiff. Defendants told Plaintiff that if he continues to pursue his claims against the Defendants, the Defendants will harm the Plaintiff and his family. On or about July 2019- September 2019 on several separation occasions, while Plaintiff was in New York, the Defendants directed their representatives and coconspirators to make multiple threats to intimidate Plaintiff through use of force, violence, and fear to forfeit his rights to all claims of his assets and

interest in Krasnaya Polyana and to abandon any potential lawsuits or actions available to Plaintiff. Defendants, through their coconspirators and agents, threatened Plaintiff with detention in Lefortovo Prison, where Plaintiff's cousins are being held without a fair trial for over three years and physical harm, unless Plaintiff abandons his claims regarding Krasnaya Polyana.

These activities, as alleged, have a substantial effect in the United States, and these offenses have caused direct and substantial injury to important economic and legal interest in the United States. *United States v. Parness*, 503 F.2d 430 (2d Cir. 1974).

Accordingly, Plaintiff's choice of forum carries significant weight in favor of denial of dismissal on this point.

## II.     This Court has Personal Jurisdiction over the Russian Defendants.

Russian Defendants Gref and Sberbank of Russia next argue that this Court does not have personal jurisdiction over them. Doc. No. 59, pages 21-27. Clearly the SAC properly alleges that this Court has jurisdiction not only over the actions claimed, but the Defendants as well, including the Russian Defendants.

In determining whether it possesses personal jurisdiction, the Court employs a two-step inquiry. First, the Court must determine whether there is a "statutory basis for exercising personal jurisdiction." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 129 (2d Cir. 2013) (citation omitted). A federal court applies the forum state's personal jurisdiction rules unless a federal statute "specifically provide[s] for national service of process." *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997) (citation omitted); see also Fed. R. Civ. P. 4(k)(1) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant: (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located ... or (C) when authorized by a federal statute."). Second, the court must consider whether exercise

of personal jurisdiction over the defendant is consistent with due process under the Constitution. *Licci*, 732 F.3d at 167-68.

As to the statutory inquiry, a federal court first determines whether the defendant is subject to the general jurisdiction of a court of the state in which the federal court sits or if the relevant statute provides for service of process. When a claim arises under federal law and state law, through its long-arm statute, does not provide a statutory basis for exercise of personal jurisdiction, a court may then determine whether Federal Rule of Civil Procedure 4(k)(2) offers a basis for personal jurisdiction over the defendant. See *Daventree Ltd. v. Republic of Azerbaijan*, 349 F.Supp.2d 736, 757-58 (S.D.N.Y. 2004). Rule 4(k)(2) provides that: "For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws."

The constitutional due process inquiry has two steps. The Court must determine, first, whether the defendant has sufficient minimum contacts with the forum (the "minimum contacts") inquiry; and, if so, second, whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice" (the "reasonableness" inquiry). See *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567-68 (2d Cir. 1996) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

This Court has jurisdiction over Russian Defendant Gref on the ground that he has committed a tortious act within the State of New York.  SAC ¶¶102-119, 184(i).  Additionally, Russian Defendant Gref furthered the conspiracy in that he directed Alexey Nikolaevich and other individuals  to threaten, extort and intimidate Plaintiff in the State of New York, beginning in August of 2019.  Russian Defendant Gref, along with co-conspirators Sberbank US and Sberbank

Russia, committed acts in furtherance of a conspiracy which they knew included acts in the United States, such as investing in US businesses and using US-based banks for the transfer of money and/or US dollar payments for the assets of Krasnaya Polyana. As mentioned above, recently, a court in this district, ascertained that jurisdicon was valid based on circumstances more limited than are present in the instant matter.

Russian Defendant Gref is further subject to this Court's jurisdiction under New York's Long-Arm Statute, CPLR §302(a). New York's long-arm statute permits personal jurisdiction over non-New York domiciliaries based upon four distinct circumstances. A court may exercise personal jurisdiction over a non-domiciliary who, "in person or through an agent:" (1) "transacts any business within the state or contracts anywhere to supply goods or services in the state;" (2) "commits a tortious act within the state[;]" (3) "commits a tortious act without the state causing injury to person or property within the state ... if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce;" or (4) "owns, uses or possesses any real property situated within the state." N.Y. CPLR § 302(a). As sufficiently alleged in the SAC, Russian Defendant Gref is subject to this Court's personal jurisdiction. Gref has committed a tortious act in this state. Gref has conducted business in this state and has sufficient contacts in this state. Gref's tortious acts have caused injury to Plaintiff in the State of New York.

Courts applying CPLR § 302(a)(1), the "transaction of business" provision, look at the totality of the circumstances of the party's interactions and activities within New York to determine whether the nonresident party has "purposely availed [himself] of the privilege of conducting

activities within New York and thereby invoked the benefits and protections of its laws." *Bank Brussels Lambert*, 171 F.3d at 787 (citation omitted). To satisfy § 302(a)(1), **a party need not be physically present in the state, and a single act may suffice, provided the claim against the defendant arises from that act**. *Id*.  (emphasis added).  Among relevant factors under § 302(a)(1) are, for example, **whether an out-of-state defendant transacts business in New York**, whether the defendant has an **ongoing contractual relationship with a New York corporation**; and in cases involving a contract, whether it was negotiated or executed in New York and what, if any, choice of law provision it contains. See *Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 22-23 (2d Cir. 2004).  (emphasis added).

Russian Defendant Sberbank is subject to this Court's personal jurisdiction on the ground that it trades Level II ADRs on the New York Stock Exchange, conducts business within the United States directly and through its subsidiary.  Sberbank of Russia operates in the United States and New York through its subsidiary SberBank CIB USA Inc. ("SberBank CIB), a co-defendant in this case, which is located at 152 W. 57th Street, 46th Floor, New York, New York 10019.  Further, Russian Defendant Sberbank has availed itself of this Court's jurisdiction in previous litigation, as recently as 2018.  SAC ¶¶18-31.  Accordingly, Plaintiff has established that Russian Defendant Sberbank has the requisite minimum contacts with this District to establish jurisdiction.

Once a plaintiff has demonstrated the required minimum contacts between the defendant and the forum, the Court then assesses the reasonableness of exercising personal jurisdiction over the defendant, i.e., whether the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Metro. Life Ins. Co*., 84 F.3d at 568 (citation omitted); see also *Burger King*, 471 U.S. at 476, 105 S.Ct. 2174 ("Once it has been that a defendant purposefully established minimum contacts within the forum" the Court may consider the contacts in light of the

reasonableness factors); cf. *Walden*, 134 S.Ct. at 1126 (holding personal jurisdiction lacking because of lack of minimum contacts without undertaking reasonableness inquiry). To do so, the Court applies the five-factor test of *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). *Id.*  These factors are "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Id.* (citing *Asahi*, 480 U.S. at 113-14, 107 S.Ct. 1026). When a court reaches the reasonableness inquiry, the Court assesses the minimum contacts and the reasonableness inquiry in tandem, such that a lesser showing as to one may be tolerated if the other strongly favors an exercise of jurisdiction, and vice-versa. *Id.* (citing *Burger King*, 471 U.S. at 477, 105 S.Ct. 2174) (while exercise of personal jurisdiction is favored when plaintiff has made a threshold showing of minimum contacts, it may be defeated if defendant makes "a compelling case that the presence of some other considerations would render jurisdiction unreasonable.").

Furthermore, a single transaction may be sufficient to satisfy this requirement, provided the relevant claims arise from that transaction. Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 787 (2d Cir. 1999). To exercise specific jurisdiction over a defendant consistent with the defendant's due process rights, "the defendant's suit-related conduct must create a substantial connection with the forum State." Waldman v. Palestine Liberation Organization, 835 F.3d 317, 335 (2d Cir. 2016). However, "[t]here is no requirement under [New York's long-arm statute] that a plaintiff's claim must arise exclusively from New York conduct." *Strauss v. Crédit Lyonnais*, S.A., 175 F.Supp.3d 3, 25 (E.D.N.Y. 2016) (Strauss II).

Here, Plaintiff's SAC satisfies the *Asahi* factors.  Russian Defendants conduct business in New York, so it would not cause an undue burden for this Court to exercise jurisdiction.  Secondly, as previously argued, the activities of the Russian Defendants have a substantial effect in the United States, particularly New York, and these wrongful acts have caused direct and substantial injury to important economic and legal interests in the United States.  Thirdly, Plaintiff believes that this forum is best in order to safely receive the requested relief in a convenient forum.  For the purposes of judicial efficiency and effectiveness, this forum is the most suited to hear the controversy herein.  As alleged in the SAC, Plaintiff believes that his life would be in danger if he were to pursue these legal claims in Russia.  Defendants have threatened Plaintiff with retaliation and harm if he chose to pursue his claims in Russia. Based on the above identified Department of State Reports, those individuals whose cases have a political hinderance, as is the case here, do not receive justice, rather they are subjected to unlawful detention and fall victim to government sponsored torture and extrajudicial killings.

It is quite obvious and for good cause that Russian Defendants want the Plaintiff to come to Russia and "seek justice", whereby as soon as Plaintiff's feet touch Russian soil, he will at the very least experience Navalny's fate and be jailed or at the most the prior attempt or Plaintiff's life would be brought to a successful conclusion and the instant lawsuit will be rendered moot. The fear of the Russian Defendants is that Plaintiff would attempt to assert his rights in the U.S. where they do not control the courts, and this is why they threatened him when he was in the U.S., subsequently, further availing themselves to the jurisdiction of this Honorable Court.  Accordingly, Russian Defendants' argument is without merit and dismissal is not warranted for a lack of jurisdiction.

### III.   The SAC's Claims are Not Time-Barred

#### A.   Bilalov's Fraud, Conspiracy to Commit Fraud, RICO, Conversion and Unjust Enrichment Claims were Timely Commenced

As for timeliness, it is well established that a civil RICO claim is subject to a statute of limitations period of four years from when Plaintiff had notice of his injury.  *Rotella v. Wood*, 528 US 549, 553 (2000).  However, there is a "separate accrual" rule in the Second Circuit.  A new four-year limitations period accrues each time plaintiff discovers, or should have discovered, a new injury caused by the predicate RICO violation.  *Bingham v. Zold*, 66 F.3d 553, 559 (2d Cir. 1995), cert. denied, 517 US 1134 (1996).   This Court has referred to this "separate accrual" rule for RICO claims in *World Wrestling Ent., Inc. v. Jakks P., Inc*., 530 F. Supp. 2d 486, 524 (SDNY 2007), *aff'd*, 328 Fed. Appx. 695 (2d Cir. 2009).  Under this rule, the accrual of a civil RICO action is premised on when plaintiff first knew of each injury caused by the individual predicate acts alleged.

Here, Plaintiff has adequately alleged that the last predicate act, Hobbs Act extortion, occurred in or around August of 2019, thus the filing of the civil RICO claims in November 2020 were timely.  See SAC ¶¶137-143.  Plaintiff alleges in the SAC that in or around August 2019, he started to pursue his claims against the Defendants. See SAC ¶¶137-143.  Russian Defendants began to use intimidation and force of threat to pressure Plaintiff into abandoning his allegations against them. See SAC ¶¶137- 143. The Hobbs Act Extortion acts caused injury to Plaintiff in that it deprived Plaintiff from exercising his rights and allowed Russian Defendants to retain Plaintiff's property.  Furthermore, Defendants threatened Plaintiff with physical violence in furtherance of their plan to deprive Plaintiff of his ownership interest of Krasnaya Polyana. See SAC ¶¶137-143. Hobbs Act Extortion is a new and independent injury and falls under the Second Circuit's "separate

accrual" rule.  See SAC at ¶ 184(i). The statute of limitations, therefore, began to accrue in or around August of  2019. Russian Defendants' request for dismissal on this ground is without merit.

### B.  Bilalov's Abuse of Process Claim was Tolled by New York Executive Order No. 202.8

The statute of limitations for abuse of process is one year, Borison v. Cornacchia, 1997 U.S. Dist. LEXIS 6248, at *4 (S.D.N.Y. May 6, 1997), and it begins to run upon the institution of the improper process.  See Gomez v. City of New York, 2016 U.S. Dist. LEXIS 128338, at *15-16 (S.D.N.Y. Sept. 14, 2016) ("Plaintiff's state law claim for abuse of process has been held in this and other districts to be subject to a one- year statute of limitations as well, accruing at the time of the initiation of the criminal complaint or arrest.").

The SAC alleges that Bilalov was arrested in October 2019.  See SAC ¶¶ 144, 219. Bilalov filed this lawsuit in November 2nd 2020.  See ECF Dkt. #1.  The Statute of Limitations would have expired on October 2019, however, Governor Cuomo tolled the limitations periods on March 20, 2020, when he issued Executive Order No. 202.8, providing in pertinent part that:

> "any specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding, as prescribed by the procedural laws of the state, including but not limited to the criminal procedure law, the family court act, the civil practice law and rules, the court of claims act, the surrogate's court procedure act, and the uniform court acts, or by any other statute, local law, ordinance, order, rule, or regulation, or part thereof, is hereby tolled from the date of this executive order until April 19, 2020…"

Executive Order No. 202.8.

Thereafter, Governor Cuomo issued a series of subsequent Executive Orders which extended the suspension or tolling period set forth in Executive Order No. 202.8 through and including November 3, 2020.  Executive Order No. 202.67.

Therefore, Plaintiff's Abuse of Process Claim was tolled pursuant to the Executive Order, and did not begin to run until November 3rd,2020. Consequently, Plaintiff's November 2nd, 2020 Complaint was timely filed.

## IV.   The RICO Counts are Adequately Pled.

A.   RICO'S Extraterritorial Application

Russian Defendants then seek dismissal of Plaintiff's RICO claims based on the assertion that the claims do not "take account of civil RICO's recognized limits on extraterritorial application," and does not "plead injury to the Plaintiff's business or property located in the United States," and that the RICO claims are time-barred.  ECF Doc. No. 59, Page 28.  These assertions are without merit and do not warrant dismissal of the RICO claims against Russian Defendants.

Civil RICO is silent on its extraterritorial reach. Drawing from the anti-trust laws, courts have applied the "conduct" and "effects" test to find that RICO applies to extraterritorial conduct where the defendants conduct within the United States affects U.S. citizens and commerce within the United States. *OSRecovery, Inc. v. One Group Int'l Inc*., 354 F. Supp. 2d 357, 365-68 (S.D.N.Y. 2005) (applying "conduct" and "effects" test).

In *Alfadda v. Fenn*, the plaintiffs, foreign nationals, sued a foreign defendant under RICO. See *Alfadda* at 935 F.2d 475 (2d Cir. 1991). The alleged predicate acts included violations of the Securities Exchange Act of 1934, based upon a sale of securities that took place in part in the United States. *Id*. at 479. The plaintiffs alleged that the defendants had diluted plaintiffs' stake in a Saudi Arabian venture in contravention of an offering prospectus, and that defendants had diverted the proceeds from the sale of additional shares for their personal benefit. *Id*.   The court reasoned that extraterritorial application of RICO turned on Congress' intent.  *Id*. The court noted that there is "no indication that Congress intended to limit [RICO] to infiltration of domestic

enterprises.  The mere fact that the corporate defendants are foreign entities does not immunize them from the reach of RICO." *Alfadda*, 935 F.2d at 479 (citation omitted). The defendants' commission of predicate acts within the United States provided a basis for subject matter jurisdiction for the RICO claims. *Id*. at 480; *see also Sumitomo v. Chase Manhattan Bank*, 2000 WL 1616960, at *2 (S.D.N.Y. Oct. 30, 2000) (holding that subject matter jurisdiction was proper even though most of the relevant acts occurred outside the United States when the plaintiff had alleged predicate acts, including fund transfers and wire communications, that were committed within the United States for the benefit of a major United States corporation); *C.A. Westel De Venezuela v. Am. Tel. & Tel. Co*.,WL 209641, at *15–17 (S.D.N.Y. Aug. 17, 1992) (holding that subject matter jurisdiction was proper when the plaintiff had alleged predicate acts of mail and wire fraud committed within the United States, even though the majority of the alleged racketeering conduct occurred in Venezuela).

While it may be true that many of the alleged predicate acts are not in fact violations of the mail or wire fraud statutes because they took place outside the United States, there are predicate acts alleged which did take place in this country including the transfer of funds in and out of the United States and wire communications between people in the United States, including the head of Sberbank Bank in New York. Given that the transactions at issue are alleged to be for the benefit of a major United States corporation with its headquarters in New York, there is an ample basis for the exercise of United States jurisdiction over these transactions. *See Alfadda v. Fenn*, 935 F.2d 475, 480 (2d Cir. 1991); *Madanes v. Madanes*, 981 F. Supp. 241, 251-52 (S.D.N.Y. 1997).

1. **The SAC Identifies Harm to Plaintiff's Busines or Property**

"Where a civil RICO plaintiff alleges separate schemes that harmed materially distinct interests to property or business, each harm — that is to say, each "injury" — should be analyzed separately." *Bascunan v. Elsaca*, [Cite]

In *RJR Nabisco the Supreme Court held that* "RICO applies to *some* foreign racketeering activity," explaining that "[a] violation of § 1962 may be based on a pattern of racketeering that includes predicate offenses committed abroad, provided that each of those offenses violates a predicate statute that is itself extraterritorial." *RJR Nabisco* 136 S.Ct. at 2099.

 The Court concluded that Section 1964(c), the civil RICO provision, "[i]rrespective of any extraterritorial application of §1962," does not overcome the presumption against extraterritoriality and, consequently, a plaintiff must allege a domestic injury. 35. *Id.* at 2106.

Nevertheless, the Supreme Court stated that the "domestic injury" requirement of Section 1964(c) — more specifically, the fact that RICO's private right of action lacks language expressly providing recovery for injuries to foreign persons — "does not mean that foreign plaintiffs may not sue under RICO." *Id.* at 2110 n.12.

Here Plaintiff has alleged a domestic injury. Plaintiff has alleged violations of the Corrupt Practices Act. SAC at ¶ F, pp 39 and Hobbs Act Extortion, SAC at ¶ I, pp 42 which both occurred in the United States. The SAC alleges that in late Spring 2018 while Plaintiff was in New York, he contacted Gref, to negotiate a settlement of his claims regarding the unlawful taking of Krasnaya Polyana. SAC at ¶126-28. Plaintiff further alleges, that Defendant Gref threatened and intimidated Plaintiff with bodily harm, and political retaliation through his Russian associates, to give up his claim against Defendants SAC at ¶127, 137-142. Thereafter, the SAC alleges that when Plaintiff continued to pursue his claims Defendants provided false, unfounded, politically motivated accusations to Interpol, in order to prevent him from filing claims against Defendants.  SAC at ¶

131. While in Miami in October 2019 Plaintiff was "wrongfully arrested based on the false information provided by Defendants to Interpol and to the United States Department of Homeland Security ("DHS")." SAC at ¶ 144. The arrest took place just like the Defendants warned. *Id*. Plaintiff filed an appeal with Interpol. After an investigation, Interpol removed the diffusion because Plaintiff was found to be a collateral victim of a politically and improperly motivated persecutory campaign. SAC at ¶145-47. Plaintiff further alleges that "Defendants through intermediaries, provided money or things of value to foreign officials to obtain an Interpol red notice and/or diffusion against Bilalov. Through their actions Defendants proximately and directly caused Bilalov to be detained. As a direct and proximate result of Defendants wrongful conduct as specified above, Plaintiff Bilalov suffered damages to his reputation and suffered a loss of employment opportunities. SAC at ¶179.

"The guidance from the Supreme Court in *RJR Nabisco* regarding what constitutes a domestic injury is admittedly sparse. The Court held that "[s]ection 1964(c) requires a civil RICO plaintiff to allege and prove a domestic injury to business or property. "

Courts have allowed Plaintiff's to recover for pecuniary injuries to intangible business assets. *See Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.,* 271 F.3d 374, 381-82 (2d Cir. 2001) (company had standing to assert RICO claims for lost profits against its direct competitor whose hiring of illegal immigrants allowed it to submit lower bids); *Lewis v.Lhu*, 696 F. Supp 723, 727 (D.D.C. 1988) (damages for reputation of telecommunications consultant caused by "smear campaign" recoverable under RICO.

In the case at bar, the Plaintiff, is a former Russian Olympics Official. Defendants' actions in submitting falsified reports to Interpol, which led to his detention and the subsequent press

coverage of the incident directly led Plaintiff to suffer a loss of business and reputation in the United States.

Likewise, Plaintiff suffered a domestic injury when Defendants employed threat of force to discourage Plaintiff from pursuing his claims against them.  SAC at ¶178.

Therefore, Bilalov's complaint adequately states a domestic injury to the types of intangible assets that this Court has held are recoverable under RICO, and has properly pled the direct proximate relationship between its injury and Defendants' pattern of racketeering activity.

**2.  SAC Alleges an Investment Injury or Acquisition Injury**

3.  The SAC Alleges a Pattern of Racketeering Activity

Section 1961(5) of RICO provides the statutory definition of a "pattern of racketeering activity" as requiring "at least two acts of racketeering activity . . . the last of which occurred within ten years after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). Racketeering activity, in turn, is defined as an act that violates any of the federal or state laws enumerated in the RICO statute.  18 U.S.C. § 1961(1).

Continuity may be close-ended or open-ended. _H.J. Inc._, 492 U.S. at 241. "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." _Id._ at 242.

Here Plaintiff pleads both closed ended and open-ended continuity. Plaintiff pleads that between March 2013 and Defendants until October 2019 _See_ SAC ¶87 - ¶144, the Defendants have committed at least nine (9) predicate acts including (1) Money Laundering (18 U.S.C. §§ 1956(a)(1), 1961(1)(B)), (2) International Money Laundering (18 U.S.C. §§ 1956(a)(2), 1961(1)(B)), (3) Conspiracy to Engage in Money Laundering 18 U.S.C. §§ 1956(h), 1961(1)), (4) Money Laundering 18 U.S.C. §§ 1957, 1961(1)), (5) Money Laundering of Proceeds of Offenses

Against a Foreign Nation Involving a Scheme to Defraud Foreign Banks. (18 U.S.C. § 1956(c)(7)(B)(iii), (6) Money Laundering of Proceeds of Violations of Foreign Corrupt Practices Act. (18 U.S.C. § 1956(c)(7)(D); 18 U.S.C. § 1961(1)(B)), (7) Wire fraud and mail fraud. (18 U.S.C. §§ 1341, 1343, 1961(1)(B)), (8) Violation of the Travel Act. (18 U.S.C. §§ 1952, 1961(1)(B)), and (9) Hobbs Act Extortion (18 U.S.C. 1951).

In the instant case, Plaintiff has pled that the Defendants are insiders, therefore Sberbank US and Sberbank of Russia are co-conspirators and insiders. The general rule is that "in a RICO case with more than one defendant, it is necessary for a plaintiff to particularize and prove each defendant's … enactment of the two necessary predicate acts." See Nat'l Union Fire Ins. Co. v. Archway Ins. Servs. LLC, 2012 U.S. Dist. LEXIS 48735, at *16 (S.D.N.Y. Mar. 23, 2012). Federal Rule of Civil Procedure 9(b) requires that when "multiple defendants are involved in the alleged fraud, it is especially important that the fraud be particularized as to each one of them." *Asdourian v. Konstantin*, 77 F.Supp.2d 349, 354 (E.D.N.Y. 1999). "[S]pecific connection need not be necessarily made between fraudulent representations and the specific defendants where the defendants are insiders." *Id*. (citing *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987)).

Russian Defendant Gref is and was the CEO of Sberbank of Russia and was likewise directly involved. See the SAC at ¶ 28. Plaintiff has alleged that he communicated and negotiated directly with Gref. At all times he was acting both on behalf of himself and in his official capacity on behalf of Sberbank of Russia. See SAC at ¶¶ 30, 31.  In the present case, Gref Sberbank US and Sberbank of Russia are alleged to be an insider in an illicit enterprise. Because defendants are insiders, the particularity that Russian Defendants argue is lacking in the SAC "need not be necessarily made." *Id*.  Russian Defendants' request for dismissal on this ground is without merit.

a.   Mail and Wire Fraud.

In his SAC Plaintiff has alleged that on March 4th, 2018 provided money or things of value to foreign officials to obtain an Interpol red notice and/or diffusion against Bilalov. Bilalov was located in the U.S.A at the time. The red notice and/or diffusion was based on false, unfounded, politically motivated accusations. SAC at ¶ 131. The Defendants necessarily used the mails and wires to obtain the fraudulent red notice and/or diffusion. Firstly, through use of money transfers, and through use of the internet and phone to communicate with Interpol. Plaintiff further alleges that [t]he defendant intended to cause Bilalov to be detained and deported to Russia, where Defendants would be able to use their influence to imprison and/or execute Bilalov, similar to the case of Magnitsky. *See* SAC at ¶131.

Furthermore, Plaintiff outlines the dates and times wherein he spoke with Herman Gref and members of his inner circle by telephone while Plaintiff was in New York and Defendant Herman Gref was in Russia. For example, Plaintiff alleges that on or about May 2019, when Plaintiff returned from San Francisco, he called a member of the inner circle by telephone, during that phone call Gref through his associate, Androsov, threatened Plaintiff that if he pursues his claims he is a "fool" and threatened him with a "wave of problems". SAC at ¶135, 138. Furthermore the SAC alleges that in August 2019, Plaintiff again spoke to Andrasov by telephone to ask Defendants not to harm his family. SAC at ¶ 141.

For almost a year, Plaintiff spoke with Androsov by telephone and had his representative speak with Oleg Gref, Herman Gref's brother, all in a perceived contemplation of an amicable settlement. *See* SAC at ¶ 132. The Defendants misrepresented to Plaintiff that Defendants are negotiating in good faith. The whole purpose of the negotiations was to lull Plaintiff into a false sense of security and to prevent him from pursuing his claims against the Defendants in the United

States.  SAC at ¶128. Unbeknownst to Plaintiff, at the time of the negotiations, the Defendants had already filed false, unfounded, politically motivated charges against Plaintiff. Plaintiff did not pursue any claims against the Defendants in 2018 in reliance on Defendant's misrepresentations that the Defendants will settle Plaintiff's claims in good faith. SAC at ¶130.

When pled as RICO predicate acts, the elements of mail or wire fraud have been identified as (1) a plan or scheme to defraud, (2) intent to defraud, (3) reasonable foreseeability that the mail or wires will be used, and (4) actual use of the mail or wires to further the scheme. *See also, In Sumitomo Copper Litig.,* 995 F. Supp. 451, 455 (S.D.N.Y. 1998) (noting that elements of mail fraud are more broadly defined than elements of common law fraud).

The mailings and wire communications need not be fraudulent in and of themselves; innocuous or "innocent" mailings and wirings are sufficient RICO predicates as long as they further a fraudulent scheme. *See Spira v. Nick*, 876 F. Supp. 553, 558-59 (S.D.N.Y. 1995).

As demonstrated above, Plaintiff has alleged the Mail and Wire Fraud allegations with the requisite specificity by pleading the time, place, and content of the communications. Plaintiff has pled the, parties to the fraudulent communications. and has shown that the plaintiff was deceived by those communications.  Therefore, Plaintiff has met the heightened pleading requirement of Federal Rule of Civil Procedure 9(b).

b.  Hobbs Act Extortion

The essential elements of Hobbs Act extortion are that the defendants (1) induced the plaintiff, with the plaintiff's consent, to part with property, (2) through the wrongful use of actual or threatened force, violence, or fear, (3) in such a way as to adversely affect interstate commerce. Santana v. Adler, 2018 U.S. Dist. LEXIS 51401, at *12 (S.D.N.Y. Mar. 26, 2018).

The Plaintiff has alleged that On or about May 2019, while Plaintiff was in San Francisco, the Defendants directed their representatives and coconspirators to threaten Plaintiff through use of force, violence, and fear to forfeit his rights to all claims of his assets and interest in Krasnaya Polyana; and to abandon any potential lawsuits or actions available to Plaintiff. Defendants told Plaintiff that if he continues to pursue his claims against the Defendants, the Defendants will harm the Plaintiff and his family. SAC at ¶184 (i).

"The property extorted [under the Hobbs Act] must . . . be transferable—that is, capable of passing from one person to another." *See Sekhar v. United States*, 570 U.S. 729, 734-36 (2013). A cause of action is an intangible property right, but can be transferred and assigned. Although, Defendants did not obtain the cause of action, they received a tangible benefit and an economic benefit.

c.  Travel Act

"A Travel Act violation occurs when (1) a person travels in interstate or foreign commerce or uses a facility of interstate or foreign commerce, (2) with intent to facilitate the promotion, management, establishment, or carrying on, of any of the unlawful activities specified in § 1952(b), and (3) thereafter performs an additional act in furtherance of that specified unlawful activity." *Merrill Lynch, Pierce, Fenner & Smith*, 1994 U.S. Dist. LEXIS 2929, at *42. Under section 1952(b), "unlawful activity" may include extortion under the Hobbs Act, acts indictable under certain money laundering statutes, or bribery under the Foreign Corrupt Practices Act.

Here Plaintiff has adequately pled elements of the Travel Act. Plaintiff has pled with specificity that several members of the Defendants inner circle traveled from Russia to the United States for the purpose of intimidate and extort Plaintiff. SAC at ¶ 136- 143. The SAC pleads with

specificity that Defendants that the [defendants] . . . travelled in interstate commerce as part of their bribery or fraudulent scheme".

    d.  Money Laundering

Plaintiff has adequately pled that Defendants moved money obtained from Plaintiff through New York accounts including money that was moved through New York-based correspondent accounts at U.S. banks. *See Schansman et al., v. Sberbank et al.,* 19-Civ 2985 (SDNY 2021).

    4.  The SAC Alleges a RICO Enterprise-

Plaintiff has alleged an association-in- fact Enterprise. An association-in-fact enterprise may be a group of individuals, or a group of corporations, or a group that includes both individuals and legal entities. *Philip Morris USA, Inc.*, 566 F.3d at 1111.

In *Bolye* the Supreme Court resolved the split and clarified the characteristics of an actionable association-in-fact enterprise. The Supreme Court stated that an association-in-fact enterprise possesses three characteristics: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose. The Supreme Court further explained:

> *Such a group need not have a hierarchical structure or a chain of command; decisions may be made on an ad hoc basis and by any number of methods-by majority vote, consensus, a show of strength, etc. Members of the group need not have fixed roles; different members may perform different roles at different times. The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies. While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence. Nor is the statute limited to groups whose crimes are sophisticated, diverse, complex, or unique; for example, a group that does nothing but engage in extortion through old-fashioned, unsophisticated, and brutal means may fall squarely within the statute's reach.*

129 S.Ct. 2245-46.

Plaintiff has sufficiently pled an enterprise in the Second Amended Complaint. "Defendants and various third parties formed an AIF with the objective of "acquiring private companies by illegal means, money laundering, and carrying out other elements of the SberBank DEFENDANTS' scheme."  SAC ¶ 183.

5.   The SAC Alleges a RICO Conspiracy

Plaintiff has adequately pled a substantive RICO claim under 18 U.S.C. §§ 1962(a)-(c), and has sufficiently pled conspiracy. Likewise Plaintiff has sufficiently pled wrong doing by Defendant Sberbank SCIB.

Plaintiff has pled that Defendants Sberbank and Gref laundered money through Sberabnk SCIB. Furthermore, Plaintiff has alleged that Sberabank SCIB was an insider, and was instrumental in the conspiracy.

To the merits of the RICO claims, Russian Defendants again fail to satisfy their burden which would warrant dismissal.  The allegations against Russian Defendants are pled with requisite particularity as required under Federal Rule of Civil Procedure 8 and 9(b).

V.   **The Alien Tort Statute Count is Legally Sustainable and Adequately Pled.**

Russian Defendants claim that the SAC's Alien Tort Statute Count is not legally sustainable.

The Alien Tort Claims Act ("ATS"), codified at 28 U.S.C. §1350, is properly and adequately pled in the SAC.  See SAC ¶¶225-227, *in passim*.  The ATS confers district courts with "original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350.  A defendant may be liable for conduct that is "either a direct violation of the law of nations or the aiding and abetting of another's

violation of the law of nations." *Balintulo v. Ford Motor Co*., 796 F.3d 160, 166 (2d Cir. 2015);

accord *Licci* by *Licci v. Lebanese Canadian Bank*, 834 F.3d 201, 213 (2d Cir. 2016).

> To state an ATS claim, a plaintiff must show:
>
> > (1) the complaint pleads a violation of the law of nations;
> >
> > (2) the presumption against the extraterritorial application of the ATS, announced
>
> by the Supreme Court in *Kiobel v. Royal Dutch Petroleum Co*., 569 U.S. 108, 124, 133
>
> S.Ct. 1659, 185 L.Ed.2d 671 (2013)], does not bar the claim;
>
> > (3) customary international law recognizes the asserted liability of a defendant; and
> >
> > (4) the theory of liability alleged by plaintiffs (i.e., aiding and abetting, conspiracy)
>
> is recognized by customary international law or "the law of nations."

*Balintulo*, 796 F.3d at 165-66 (alterations and internal quotation marks omitted) (quoting *Mastafa*

*v. Chevron Corp.,* 770 F.3d 170, 179 (2d Cir. 2014)).

As argued *supra*, although some of the RICO acts occurred in Russia, the SAC alleges that

Russian Defendants were integral in moving the proceeds of the Defendants' wrongful acts to the

United States via the Troika Laundromat and subsequently Russian Defendants committed acts

constituting Hobbs Act extortion in New York.  See SAC at ¶¶102-119, 184(i). Consequently, these

activities have a substantial effect in the United States, and these offenses have caused direct,

substantial injury to important economic and legal interests in the United States, thus satisfying

the requisite elements of the ATS.


**VI.     The Non-Federal Claims are Legally Sustainable and Adequately Pled.**

Lastly, Russian Defendants urge this Court to exercise its supplemental jurisdiction to

"dismiss the remaining non-federal counts under 28 U.S.C. §1367(a) as time-barred and otherwise

legally unsustainable."  Doc. No. 59, Page 38.  This claim is equally without merit.  Clearly the

claims brought forth give this Court the requisite jurisdiction to hear them and adjudicate the claims accordingly.   Supplemental jurisdiction gives this Court the authority to hear all of the claims, including the ones Russian Defendants claim are "non-federal."

It is well established that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action... that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a).  See *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).  A review of the SAC indicates clearly that the non-federal claims are so related to all of the obviously federal claims, including the civil RICO and ATS counts. Russian Defendants proffer a non-sensical argument that diversity jurisdiction does not exist.  Doc. No. 59, Page 38.  As adequately alleged in the SAC, the parties are individual citizens of diverse states (Florida, New York, Russia), thus dismissal under § 1367(a) would be completely unwarranted at this stage.

## VII.   Leave to Amend

In the event that the Court grants Defendants Motions to Dismiss, Plaintiff respectfully requests leave to amend the SAC to address any pleading deficiencies. Rule 15(a) of the Federal Rules of Civil Procedure provides that the "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).

In interpreting Rule 15(a), the Second Circuit has explained that "district courts should not deny leave unless there is a substantial reason to do so, such as excessive delay, prejudice to the opposing party, or futility." *Friedl v. City of New York*, 210 F.3d 79, 87 (2d Cir. 2000); *see also Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir.  1993) ("The rule in this Circuit has been

to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.").

## <u>CONCLUSION</u>

For the reasons herein, Plaintiff respectfully requests that Russian Defendants' motion to dismiss the SAC be denied in its entirety, and Plaintiff be awarded any other such relief deemed just and proper.

Dated: New York, New York
      October 18, 2021

Respectfully submitted,

*/s/ Irina Shpigel*
Irina Shpigel, Esq.
SHPIGEL LAW P.C.
250 Greenwich Street, 46th Floor
7 World Trade Center
New York, NY 1007
Ph. 1.212.390.1913

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served upon the following parties on this 19th day of October 2021 via ECF:

Debevoise & Plimpton LLLP
John S. Kiernan
Email: jskiernan@debevoise.com
Address:  919 Third Avenue
New York, New York 10022

*Counsel for Defendants Sberbank of Russia and Herman Gref*

Claire DeLelle
Email: claire.delelle@whitecase.com 701 Thirteenth Street, NW Washington, DC 20005
Telephone: (202) 626-3600
Kim Havlin
Email: kim.havlin@whitecase.com Scott Hershman
Email: scott.hershman@whitecase.com Isaac Glassman
Email: isaac.glassman@whitecase.com 1221 Avenue of the Americas
New York, New York 10020-1095 Telephone: (212) 819-8200

*Counsel for Defendant   Sberbank CIB USA, Inc.*

Irina Shpigel