UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

AKHMED GADZHIEVICH BILALOV,

        Plaintiff,

    -against-

HERMAN GREF, SBERBANK CIB USA, INC.,
SBERBANK OF RUSSIA PJSC, and DOES 1-
100 inclusive,

        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

1:20-cv-09153-AT-KNF

Hon. Analisa Torres

# REPLY MEMORANDUM IN SUPPORT OF MOTION BY SBERBANK OF RUSSIA AND HERMAN GREF TO DISMISS THE SECOND AMENDED COMPLAINT

John S. Kiernan
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022

*Counsel for Defendants Sberbank of Russia and Herman Gref*

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT...................................................................................................................................2

I.    The SAC Should Be Dismissed Under the Doctrine of *Forum Non Conveniens*...............2

        A.    The SAC's Allegations About U.S. Events Do Not Warrant Adjudication Here .................................................................................................................3

        B.    This Dispute Can Be Heard Fairly in Russian Courts ..........................................4

        C.    An Asserted Fear of Suing in Russia Does Not Support a Different Result ...........6

II.    The SAC Does Not Establish Personal Jurisdiction Over These Defendants.....................7

        A.    The SAC Does Not Establish General Jurisdiction Over Sberbank .......................7

        B.    The SAC Does Not Establish Specific Jurisdiction Over Mr. Gref........................8

III.    The SAC's RICO Counts Are Not Legally Sustainable ...................................................11

        A.    The SAC's Claims Impermissibly Seek Extraterritorial Application of RICO ...................................................................................................................11

            1.    The SAC Identifies No Harm to Plaintiff's U.S. Business or Property ....11

            2.    The SAC's Predicates Do Not Allege Relevant U.S. Conduct.................12

        B.    The SAC's Four RICO Counts are Also Substantively Unsustainable ................13

IV.    The SAC's Alien Tort Statute Count Is Not Legally Sustainable....................................14

V.    The Court Should Also Dismiss the SAC's Non-Federal Claims....................................15

CONCLUSION..............................................................................................................................16

# **TABLE OF AUTHORITIES**

Page

**CASES**

*Abdullahi v. Pfizer, Inc.*, 01 Civ. 8118, 2002 WL 31082956 (S.D.N.Y. Sept. 16, 2002),
 *vacated and remanded*, 77 Fed. App'x 48 (2d Cir. 2003) ........................................................5

*Aguinda v. Texaco, Inc.*, 142 F. Supp. 2d 534 (S.D.N.Y. 2001), *aff'd*, 2002 WL 188015
 (2d Cir. Aug. 16, 2002) ............................................................................................................5

*Alfadda v. Fenn*, 935 F.2d 475 (2d Cir. 1991), *aff'd*, 457 Fed. App'x 35 (2d Cir. 2012) ............13

*Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal.*, 480 U.S. 102 (1987) ........................... 10, 11

*Balintulo v. Daimler AG*, 727 F.3d 174 (2d Cir. 2013) ................................................................14

*Barge v. Apple Comput., Inc.*, No. 97-9068, 1998 WL 650578 (2d Cir. Aug. 21, 1998) ........14-15

*Bascuñán v. Elsaca*, 927 F.3d 108 (2d Cir. 2019) .......................................................................12

*Base Metal Trading SA v. Russian Aluminum*, 253 F. Supp. 2d 681 (S.D.N.Y. 2003),
 *aff'd*, 98 F. App'x 47 (2d Cir. 2004) .......................................................................................4

*BFI Grp. Divino Corp. v. JSC Russian Aluminum*, 298 F. App'x 87 (2d Cir. 2008) ......................5

*Cedeño v. Castillo*, 457 F. App'x 35 (2d Cir. 2012) ....................................................................13

*Cedeño v. Intech Group, Inc.*, 733 F. Supp. 2d 471 (S.D.N.Y. 2010) ..........................................13

*Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68 (2d Cir. 2018) ....................................9

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ...............................................................................7

*Daventree Ltd. v. Republic of Azer.*, 349 F. Supp. 2d 736 (S.D.N.Y. 2004) ................................10

*Ferri v. Berkowitz*, 678 F. Supp. 2d. 66 (E.D.N.Y. 2009) .............................................................9

*Foman v. Davis*, 371 U.S. 178 (1962) ..........................................................................................15

*Freidzon v. Lukoil*, 14 Civ. 5445 (AT), 2015 WL 13021409 (S.D.N.Y. Mar. 12, 2015) ...............6

*Hollander v. Flash Dancers Topless Club*, 340 F. Supp. 2d 453 (S.D.N.Y. 2004), *aff'd*,
 173 F. App'x 15 (2d Cir. 2006) .............................................................................................12

*In re Mexican Gov't Bonds Antitrust Litig.*, No. 18 Civ. 2830 (JPO), 2020 WL 7046837
 (S.D.N.Y. Nov. 30, 2020) ......................................................................................................10

*In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219 (S.D.N.Y. 2019) ...................................... 9

*Lewis ex rel. Am. Express Co. v. Robinson (In re Am. Express Co. S'holder Litig.*, 39 F.3d 395 (2d Cir. 1994) ............................................................................................ 15

*Meriyu v. Barr*, 950 F.3d 503 (7th Cir. 2020) ............................................................................ 5

*Monegasque De Reassurances S.A.M. (monde Re) v. Nak Naftogaz of Ukr.*, 311 F.3d 488 (2d Cir. 2002) ................................................................................................ 4, 5

*Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010) ............................................... 13

*Nahl v. Jaoude*, 968 F.3d 173 (2d Cir. 2020) ............................................................................ 15

*Nestle USA, Inc. v. Doe*, 141 S. Ct. 1931 (2021) ....................................................................... 14

*RIGroup LLC v. Trefonisco Mgmt.*, 949 F. Supp. 2d 546 (S.D.N.Y. 2013), *aff'd*, 559 F. App'x 58 (2d Cir. 2014) ........................................................................................... 5, 6

*RJR Nabisco v. Eur. Comm.*, 136 S. Ct. 2090 (2016) ................................................................ 11

*Schansman v. Sberbank*, 19 civ. 2985 (ALC), 2021 WL 4482172 (S.D.N.Y. Sept. 30, 2021) .................................................................................................................................. 8

*Spiteri v. Russo*, 12 Civ. 2780 (MKB) (RLM), 2013 WL 4806960 (E.D.N.Y. Sep. 7, 2013) ................................................................................................................................ 13

*Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17 (2d Cir. 2004) .................................................. 8

*Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124 (2d Cir. 2020) ......................................................... 15

*United States v. Gotti*, 459 F.3d 296 (2d Cir. 2006) ................................................................. 13

**STATUTES AND RULES**

18 U.S.C. § 1964 ......................................................................................................................... 11

28 U.S.C. § 1350 ........................................................................................................................... 2

28 U.S.C. § 1367 ......................................................................................................................... 15

Fed. R. Civ. P. 4 ................................................................................................................... 10, 11

N.Y. CPLR § 302 ..................................................................................................................... 8, 9

Defendants Sberbank of Russia ("Sberbank") and Herman Gref (together, the "Russian Defendants") submit this reply memorandum in further support of their motion to dismiss the Second Amended Complaint (the "SAC"), ECF No. 51. The Russian Defendants also join in the reply submission of Sberbank CIB USA, Inc. ("SCIB").

## PRELIMINARY STATEMENT

Plaintiff's submission presents no cognizable reason why this Court is the proper forum to adjudicate Plaintiff's Russia-based dispute regarding his alleged loss of his investment in Krasnaya Polyana. Plaintiff's argument against adjudication in Russia does not even pretend that the center of gravity for Plaintiff's claims relating to Krasnaya Polyana is the United States. His proposal that this Court disregard this obvious Russian focus—based on asserted U.S. touches that are remote in time and factually disconnected from the transactions that led to the transfer of interests in Krasnaya Polyana, or on Russian courts' alleged inadequacy to adjudicate his claims fairly—is not supported by citation to a single court decision agreeing with his approach.

This Court and numerous other courts have repeatedly granted *forum non conveniens* ("FNC") motions directed at Russian-centered disputes, including ones that, like Plaintiff's, seek U.S. adjudication based on collateral and secondary alleged U.S. events or challenge Russian courts' adequacy as alternative forums. Courts have also rejected opposition to *forum non conveniens* motions based on State Department reports addressing the risk of judicial corruption in Russia, recognizing that those general reports about judicial reliability are not predictive of outcomes in particular civil cases, and have rejected as insufficient to satisfy plaintiffs' burden bare denunciations of the forum and conclusory submissions about the risks plaintiffs may face from litigating in another forum.

Plaintiff's submissions also provide no basis for asserting personal jurisdiction over the Russian Defendants. His assertion of general jurisdiction over Sberbank ignores controlling

1

authority rejecting jurisdiction over corporations not "at home" in a forum, and his assertions of specific jurisdiction offer no link between alleged actions by either Russian Defendant reflecting contacts with the United States and any cause of action sustainably pleaded in the SAC.

Plaintiff has presented no basis to sustain his RICO claims in light of his inability to plead that the Russian Defendants' challenged actions caused injury to Plaintiff's "business or property" in the United States. His unsupported contentions that his U.S. business or property interests were adversely affected by his detention by ICE (which he does not dispute was publicly stated by the U.S. government to be for overstaying his visa)—because that brief detention hurt his reputation (in unspecified ways)—and business prospects (which he does not particularize) are at odds with settled authority. His efforts to plead a cause of action under each alternative ground for civil liability set forth in the RICO statute also ignore and fail to meet the required specific elements of each claim.

Plaintiff's effort to plead violations of the Alien Tort Statute, 28 U.S.C. § 1350 ("ATS") likewise disregards the strict limits on that statute's extraterritorial application and the extremely narrow range of recognized violations of the law of nations that the Supreme Court and lower courts have recognized for claims under that statute—a range that does not include the claims Plaintiff purports to advance relating to alleged conduct in the United States.

## ARGUMENT

### I.  The SAC Should Be Dismissed Under the Doctrine of *Forum Non Conveniens*

Plaintiff does not seriously contest that the dispute over his claimed loss of an economic interest in Krasnaya Polyana has its center of gravity in Russia, where the property is located, the transactions in issue occurred, the relevant witnesses and participants lived at the time and the alleged loss took place. Plaintiff's effort to present New York as an appropriate forum for this Russian-centric dispute is based on assertions about an entitlement to deference that he does not

2

enjoy, allegations about events in the United States that do not shift the Russian locus, contentions about the inadequacy of the Russian courts that this Court and others have repeatedly rejected, and assertions about his fear of litigating in Russia that have no evidentiary support and are based on unsupported premises about his need to travel to Russia to advance such claims.

### A.   The SAC's Allegations About U.S. Events Do Not Warrant Adjudication Here

Plaintiff's allegations about New York money laundering, U.S. threats of harm if he pursued his claims and the alleged illicit procurement of Plaintiff's Florida arrest all fall short of making New York the appropriate forum for this dispute. All of these alleged events took place long after Plaintiff allegedly sold his interests in Krasnaya Polyana in 2013, and the SAC does not and cannot allege any causal link between any of these alleged events in the U.S. and the damages Plaintiff claims from alleged loss of his interest in Russian property. *See* Russian Defs.' Mem. of Law to Dismiss the SAC at 12-13 (ECF No. 59) ("Russian Defs.' Br.").

The SAC presents no facts explaining how alleged money laundering of unspecified "proceeds" in New York was integral and essential to the process by which Sberbank as lender and investor acquired interests in Krasnaya Polyana and allegedly squeezed out Plaintiff, or how any such alleged activity alters the center of gravity of this dispute. *See* Russian Defs.' Br. at 11 (citing cases finding in-forum events insufficient to prevent dismissal for FNC when the dispute's center of gravity remained outside New York).

The alleged threats in New York and elsewhere to deter Plaintiff from bringing this action and the alleged wrongful procurement of Plaintiff's detention by ICE similarly do not alter this dispute's Russian center of gravity. Plaintiff has not identified a single witness or piece of evidence relating to any of these alleged events that will be located in New York, and the reputational harms he vaguely asserts based on these alleged events are far less central to this

3

dispute than the economic and other harms he claims from events in Russia. *See, e.g., Base Metal Trading SA v. Russian Aluminum*, 253 F. Supp. 2d 681, 711 (S.D.N.Y. 2003), *aff'd* 98 F. App'x 47 (2d Cir. 2004) (dismissing for FNC when allegations of money laundering in the U.S. as a predicate RICO act "that may involve witnesses located in the United States pale[d] in comparison to those involving persons and companies located in Russia.").

New York courts have an interest in allegations of threats made in New York, but the alleged threats are not an element of any sustainably pleaded cause of action here. Even if they satisfied elements of a count of the SAC, they would still be ancillary to the core, Russian-centric disputed issues regarding Krasnaya Polyana's ownership. *See* Russian Defs.' Br. at 12-13.

### B. This Dispute Can Be Heard Fairly in Russian Courts

Plaintiff's contention that this dispute must be litigated in New York rests substantially on insisting that his civil suit concerning the loss of his Russian property cannot be heard fairly in Russia, a contention that courts have repeatedly rejected. While Plaintiff predicates his contention that the Russian courts are intolerably biased on statements concerning corruption in Russia's government and courts in an annual U.S. State Department report ("the State Dep't Report"),[1] much more than these general statements must go into the Court's determination whether another country's courts provide an inadequate alternative forum for specific disputes.

U.S. courts are extremely cautious in questioning the overall fairness of foreign courts in the context of the FNC analysis. *Monegasque De Reassurances S.A.M. (monde Re) v. Nak Naftogaz of Ukr.*, 311 F.3d 488, 499 (2d Cir. 2002). Courts have repeatedly recognized that State Department country reports offer largely "broad, conclusory assertions as to the relative corruptibility or incorruptibility of the [a nation's] courts, with scant reference to specifics,

---

[1] U.S. Dep't of State, Country Reports on Human Rights Practices for 2020: Russia 2020 Human Rights Report (Mar. 30, 2021), https://bit.ly/DOSRussiaReport.

evidence, or application to the instant case[].*" Aguinda v. Texaco, Inc.*, 142 F. Supp. 2d 534, 544 (S.D.N.Y. 2001), *aff'd*, 2002 WL 188015 (2d Cir. Aug. 16, 2002); *Meriyu v. Barr*, 950 F.3d 503, 508 (7th Cir. 2020) (cited in Pl.'s Opp'n to Mot. to Dismiss the SAC at 7 (ECF No. 67) ("Opp'n") (State Dep't reports are not especially probative in the context of any individual's situation, because "their generalized nature often limits their discussion of more specific or local problems."). "Allegations of corruption or bias on the part of the foreign forum will not prevent a dismissal on *forum non conveniens* grounds," even when supported by State Department Country Reports. *Abdullahi v. Pfizer, Inc.*, 01 Civ. 8118, 2002 WL 31082956, at *9 (S.D.N.Y. Sept. 16, 2002) (collecting cases), *vacated and remanded on other grounds*, 77 Fed. App'x 48 (2d Cir. 2003). The Report's sole paragraph on civil suits focuses on human rights suits against the government and does not suggest that a politically disfavored plaintiff in a commercial dispute cannot receive a fair hearing. *See* State Dep't Report at 18-19.

Insofar as Plaintiff asserts that Russian courts will inevitably favor the Russian Defendants, the contention of such categorical bias is foreclosed by Plaintiff's own choice to do business in Russia. *See Monegasque*, 311 F.3d at 499 (subrogor to plaintiff "voluntarily conducted business with [] a Ukrainian company, and must have anticipated the possibility of litigation in Ukraine."); *RIGroup LLC v. Trefonisco Mgmt.*, 949 F. Supp. 2d 546, 553 (S.D.N.Y. 2013), *aff'd*, 559 F. App'x 58 (2d Cir. 2014). The Court should not accept Plaintiff's conclusory allegation that the Russian Defendants will receive preferential treatment. *See BFI Grp. Divino Corp. v. JSC Russian Aluminum*, 298 F. App'x 87, 91 (2d Cir. 2008) ("[T]his Court will not presume judicial bias against the plaintiff when the defendant is a state-owned entity."); *Monegasque*, 311 F.3d at 499. Plaintiffs have not presented a basis to distinguish this case from

5

the cases cited in the Russian Defendants' opening brief, at 11, in which multiple courts have found Russian courts adequate forums to adjudicate Russia-centric civil disputes.

### C. An Asserted Fear of Suing in Russia Does Not Support a Different Result

Plaintiff bears the burden of showing FNC to Russia will expose him to unacceptable risk. *RIGroup LLC*, 949 F. Supp. 2d at 554 ("Conclusory submissions, bare denunciations, and sweeping generalizations about the alternative forum's legal system do not satisfy the plaintiff's burden on this issue.") (*quoting Monegasque*, 311 F.3d at 499). Plaintiff's assertions (Opp'n at 5, 7, 14) that he cannot bring this suit in Russia because of fear of harm if he returns to Russia are the type of assertions that courts have repeatedly found insufficient when, as here, the assertions are unsubstantiated. *See, e.g.*, *RIGroup LLC*, 949 F. Supp. 2d at 554 (rejecting arguments against FNC in favor Russian adjudication despite allegations of a "baseless criminal investigation targeting [plaintiff]; various threats against [plaintiff]; and corruption in the Russian judiciary, which allows and supports widespread corporate raiding activities like those alleged in this case"); *Freidzon v. Lukoil*, 14 Civ. 5445 (AT), 2015 WL 13021409, at *6 (S.D.N.Y. Mar. 12, 2015) (Torres, J.) (despite "unsubstantiated allegations about the risk of threat [plaintiff] faces should he pursue legal action in Russia, courts in the Second Circuit have consistently found these and similar arguments unavailing.").

To the extent Plaintiff's position rests on his asserted perception of personal risk from traveling to litigate a claim in Russia, Plaintiff presents no factual or legal support (and the Russian Defendants are not aware of any) for the proposition that a plaintiff must travel to Russia to pursue a claim in Russian courts. Plaintiffs in Russia, like U.S. plaintiffs, can appear in litigation through counsel, and submissions on a party's behalf can be made without a party's physical presence. *See, e.g.*, E. Bokeschenko and D. Lysenko, Westlaw Practical Law Country Q&A No. 5-502-0694, Litigation and Enforcement in the Russian Federation: Overview (Apr. 1,

2021) ("[P]arties can file submissions either on paper or electronically…Individuals who are parties to the proceedings can appear in court in person or have a legal representative.").[2] Plaintiff has not demonstrated that he would inevitably have to travel to Russia in person to participate in the proceedings. *See* M. Ivanov & R. Zaitsev, Dentons, Top-10 Procedural Changes 2020 (Mar. 12, 2021), https://bit.ly/DentonsTop10 ("A web conference makes it possible to attend…from other countries. For example, a participant in one of the first online hearings at Russia's Supreme Court joined it from California. Online hearings can now be held at 99 commercial courts. These include…the Moscow Circuit Commercial Court, nine Commercial Courts of Appeal and others."). Plaintiff cannot justify litigation of his Russian-centric claims in New York based on speculation about scenarios for which he presents no factual or legal support.

## II.     The SAC Does Not Establish Personal Jurisdiction Over These Defendants

### A.     The SAC Does Not Establish General Jurisdiction Over Sberbank

Plaintiff's submission seeks to assert general personal jurisdiction over Sberbank, (apparently without also seeking specific jurisdiction over it), Opp'n at 12, without even addressing the authorities demonstrating that general personal jurisdiction over a corporation exists only in a forum where it is "at home"—the forum that is the corporation's place of incorporation or principal place of business. *See Daimler AG v. Bauman*, 571 U.S. 117, 138-39 & n.19 (2014). Plaintiff does not and cannot dispute that Sberbank's place of incorporation and principal place of business is Russia. Plaintiff offers no response to the authorities cited by the Russian Defendants, Russian Defs.' Br. at 14-15, demonstrating that Sberbank's use of ADRs in

---

[2]     *See also* V. Butyrina, *et. al*, Russian Arbitration Center at the Russian Institute for Modern Arbitration, Litigation & Dispute Resolution Laws and Regulations 2021, https://bit.ly/InsightsRussia ("Since 2011, the web platform of commercial (*arbitrazh*) courts has allowed for the submitting of documents online.").

American markets, the presence of a non-banking subsidiary in New York, and past use of New York courts for litigation of unrelated matters do not make Sberbank at home in New York or amount to suit-specific minimum contacts.

### B.     The SAC Does Not Establish Specific Jurisdiction Over Mr. Gref

While Plaintiff seeks to assert specific personal jurisdiction over Mr. Gref, Plaintiff does not dispute that a plaintiff's pleadings "must establish the court's jurisdiction with respect to each claim asserted." *See Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) (cited in Opp'n at 12).  In presenting specific jurisdictional arguments relating only to alleged money laundering and alleged threats in New York, Opp'n at 10-12, Plaintiff offers no basis for finding specific jurisdiction over the Russian Defendants for the SAC's claims for fraud, unlawful conversion and unjust enrichment related to the alleged taking of Krasnaya Polyana in 2013 or malicious abuse of process related to Plaintiff's alleged wrongful arrest in Florida (Counts V-VII, IX).  Lacking alleged contacts with New York, these claims should be dismissed.

Plaintiff's allegation that this Court has personal jurisdiction over Mr. Gref under New York's long-arm statute, CPLR § 302(a) (Opp'n at 11-12), for the SAC's money laundering claims and claims about extortionate threats follows Plaintiff's typical pattern of alleging multifarious violations of a statute, without appreciation of the differences between provisions and the need to plead all elements of any applicable subsection.[3]  As explained in the Russian Defendants' opening brief, CPLR § 302(a)(1) (permitting jurisdiction over a foreign defendant who "transacts any business within the state or contracts anywhere to supply goods or services in

---

[3]     Plaintiff's reliance on the recent decision in *Schansman v. Sberbank*, 19 Civ. 2985 (ALC), 2021 WL 4482172 (S.D.N.Y. Sept. 30, 2021) is misplaced.  There, the court found personal jurisdiction over Sberbank in New York when (among other inferences) the complaint alleged use of Sberbank's New York correspondent accounts led to the complaint's alleged harm. *Id.* at *5.  Here, Plaintiff makes no allegations of use of New York based correspondent accounts related to his claims against Defendants, and does not even allege any action taken by the Russian Defendants in New York.

8

the state") is not applicable here because Mr. Gref is not alleged to have conducted any business in New York related to allegations in the SAC. *See* Russian Defs.' Br. at 16. CPLR § 302(a)(2), which permits jurisdiction over a cause of action when a defendant has committed a tortious act within the state, does not apply here since "New York courts, both state and federal, have interpreted this section to apply only when the Defendant is physically present in the state when the tort is committed." Mr. Gref is not alleged to have been in New York, nor does any cause of action arise from the acts of Mr. Gref or an agent in New York. *See Ferri v. Berkowitz*, 678 F. Supp. 2d. 66, 77 (E.D.N.Y. 2009). Plaintiff's opposition does not discuss (and apparently does not dispute) that CPLR § 302(a)(3) (which permits jurisdiction in certain circumstances when a defendant's act outside New York causes an injury to the plaintiff in New York) does not apply, because no cause of action in the SAC is based upon any such alleged act, and the situs of every claim alleged in the SAC is outside of New York. *See* Russian Defs.' Br. at 17.

Plaintiff's argument that the Russian Defendants are subject to jurisdiction by virtue of their relationship to conspirators with in-state contacts, because the Russian Defendants "furthered the conspiracy" to threaten Plaintiff, Opp'n at 10-11, disregards that conspiracy is not an independent basis for personal jurisdiction but only allows jurisdiction over conspiracy causes of action where a defendant-conspirator is already subject to jurisdiction. *See, e.g.*, *In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219, 236, 239 (S.D.N.Y. 2019). For conspiracy jurisdiction to exist, "the plaintiff must allege that (1) a conspiracy existed; (2) the defendant participated in the conspiracy; and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 87 (2d Cir. 2018). Here, the SAC does not allege that SCIB had any role in the acts relating to Krasnaya Polyana or any other

conduct alleged, *see* SCIB's Mem. of Law to Dismiss the SAC at 6-8 (ECF No. 62) ("SCIB Br."), and therefore lacks an alleged conspirator party with sufficient New York contacts to permit jurisdiction over Mr. Gref or Sberbank, even for causes of action alleging conspiracy. *Cf. In re Mexican Gov't Bonds Antitrust Litig.*, No. 18 Civ. 2830 (JPO), 2020 WL 7046837, at *4 (S.D.N.Y. Nov. 30, 2020) ("Having determined that none of the Moving Defendants is subject to personal jurisdiction in its own right…the Court cannot find that they are nonetheless subject to personal jurisdiction because of their alleged affiliation with one another. The doctrine…does not permit Plaintiffs to turn nothing into something.").

While Plaintiff alternatively contends that the Russian Defendants are subject to the Court's jurisdiction pursuant to Fed. R. Civ. P. 4(k)(2) (which permits personal jurisdiction over federal claims against defendants not subject to any state's courts of general jurisdiction if consistent with the Constitution), the SAC does not satisfy the constitutional due process requirements for jurisdiction over absent defendants. *See Daventree Ltd. v. Republic of Azer.*, 349 F. Supp. 2d 736, 760 (S.D.N.Y. 2004) (cited in Opp'n at 10) ("personal jurisdiction over [] defendants pursuant to Rule 4(k)(2) turns on the requirements of due process"). Aside from the Russian Defendant's lack of contacts with the U.S., it would be constitutionally unreasonable to subject the Russian Defendants to jurisdiction under the five factor test set forth in *Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal.*, 480 U.S. 102, 113 (1987) (cited in Opp'n at 13), which directs courts to "consider [1] the burden on the defendant, [2] the interests of the forum State,…[3] the plaintiff's interest in obtaining relief,…[4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and [5] the shared interest of the several States in furthering fundamental substantive social policies.") (internal quotes omitted).

Here, the burden on the Russian Defendants of having to defend this action (under 4(k)(2) or any other jurisdictional statute) in New York is "severe"—not only because they have such insignificant contacts with this forum thousands of miles away from their homes and the relevant conduct, witnesses and evidence—but also because, as in *Asahi*, they would have to submit a dispute about their conduct in Russia "to a foreign nation's judicial system." *Id.* at 114. The Plaintiff's interest in asserting jurisdiction in New York over defendants is similarly "slight," because "the transaction on which the [] claim is based" took place abroad, the Plaintiff cannot demonstrate that it is more convenient to litigate the claims here than in Russia, and Plaintiff is not even a New York resident. *Id.* New York's interests are also minimal, given the secondary nature of the few acts that allegedly occurred in New York, and "it is not at all clear at this point that [New York] law should govern the question[s]" relating to the dispute over ownership of Krasnaya Polyana that are at the center of this action. *Id.* at 115. The "international context" of this dispute calls for the Court to consider the "procedural and substantive policies" and interests of Russia. *Id.* These interests, especially in the efficient resolution of commercial disputes concerning high-profile Russian property and dealings among Russians, also suggest the Court should decline to exercise jurisdiction.

### III. The SAC's RICO Counts Are Not Legally Sustainable

#### A. The SAC's Claims Impermissibly Seek Extraterritorial Application of RICO

##### 1. The SAC Identifies No Harm to Plaintiff's U.S. Business or Property

Plaintiff's RICO counts should not survive the absence of allegations of cognizable injury to his U.S. business or property, a threshold requirement of any claim under the limited private right of action established by Section 1964(c) of the RICO statute. Plaintiff cannot even try to argue that the loss of his alleged interest in Krasnaya Polyana in March 2013 constituted an injury to U.S. business or property. *RJR Nabisco v. Eur. Comm.*, 136 S. Ct. 2090, 2111 (2016).

11

His effort to overcome this defect by asserting that his alleged wrongful arrest as a result of "abuse of process" by defendants caused him unspecified reputational harm and loss of business and "employment opportunities," Opp'n at 20-21, falls far short of plausibly pleading the required harm to property interests. Neither the SAC nor Plaintiff's opposition provides any support for the allegation that Plaintiff suffered reputational harm or lost any business or employment opportunity due to any act by any Defendant. Plaintiff does not allege what concrete economic harm he was caused by being detained for a short period or by public reports that his detention was for overstaying his visa. Courts regularly find harms to reputation or future business prospects insufficient to state a RICO claim. *See, e.g.*, *Hollander v. Flash Dancers Topless Club*, 340 F. Supp. 2d 453, 459 (S.D.N.Y. 2004), *aff'd*, 173 F. App'x 15 (2d Cir. 2006) (harm to "business reputation and goodwill" is not actionable under RICO).

### 2. The SAC's Predicates Do Not Allege Relevant U.S. Conduct

Plaintiff does not dispute that even if he could plead a cognizable injury to his U.S. business or property from acts both outside and inside the United States, his RICO claim cannot stand unless he also pleads RICO predicates that (i) have extraterritorial application or (ii) allege domestic conduct at the "core" of the acts constituting a pattern of racketeering activity. *See Bascuñán v. Elsaca*, 927 F.3d 108, 119-125 (2d Cir. 2019). Most of Plaintiff's alleged predicate acts do not apply extraterritorially. *See* Russian Defs.' Br. at 22. Plaintiff's supposed predicates that allege U.S. conduct—his money laundering and Hobbs Act extortion claims, *see* Opp'n at 19—are insufficient to sustain his RICO claims. These claims concern conduct after the Krasnaya Polyana transfer and are untethered from the core of the alleged racketeering activity.

Plaintiff's money laundering claim cannot support his RICO claims because Plaintiff pleads no connection between any laundering and the core conduct or any harm to himself arising from it. Russian Defs.' Br. at 22-23; *Cedeño v. Castillo*, 457 F. App'x 35, 37-38 (2d Cir.

12

2012). Plaintiff's extortion claim is not a viable RICO predicate because Plaintiff has not actually alleged that he was extorted under the Hobbs Act. *See* SCIB Br. at 20-21. Hobbs Act extortion requires that a defendant obtain property from a plaintiff through actual or threatened force. *See United States v. Gotti*, 459 F.3d 296, 300 (2d Cir. 2006) (Hobbs Act requires "that the defendant…sought to obtain [the property] right for himself"). Plaintiff cannot link the threats he alleges he received in May 2019 to his decision to sell his interest in Krasnaya Polyana six years earlier, and although Plaintiff suggests (incorrectly), Opp'n at 8-9, 25, that his putative causes of action were cognizable property interests, he also acknowledges that he never transferred those causes of action. *See Spiteri v. Russo*, 12 Civ. 2780 (MKB) (RLM), 2013 WL 4806960, at *48 (E.D.N.Y. Sep. 7, 2013) (discontinuing suit not cognizable property under Hobbs Act).[4]

### B. The SAC's Four RICO Counts are Also Substantively Unsustainable

The Russian Defendants' opening brief explained why Plaintiff's attempts to squeeze the SAC within any of the four permissible private causes of action under the RICO statute—three substantive provisions, and a provision for conspiracy to violate any of those three provisions—additionally fail to state a claim. *See* Russian Defs.' Br. at 23-25. Plaintiff's opposition does not rebut or even address these arguments, except to nakedly assert Plaintiff has pleaded such claims. Opp'n at 21, 26-27. Plaintiff's four RICO counts should be dismissed for these reasons as well.

---

[4] Plaintiff's reliance on *Alfadda v. Fenn*, 935 F.2d 475 (2d Cir. 1991) (cited in Opp'n at 17-18), for his contention that the (unspecified) benefit rendered to Defendants from the purchase of Krasnaya Polyana justifies extraterritorial application of civil RICO, disregards that the Supreme Court later rejected that decision's logic in *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 255 (2010). *See Cedeño v. Intech Group, Inc.*, 733 F. Supp. 2d 471, 474 n.3 (S.D.N.Y. 2010), *aff'd*, 457 Fed. App'x 35 (2d Cir. 2012) ("The *Alfadda* Court's approach is exactly the kind that *Morrison* found to impermissibly "disregard…the presumption against extraterritoriality…this Second Circuit case is no longer good precedent in light of *Morrison*.").

13

### IV. The SAC's Alien Tort Statute Count Is Not Legally Sustainable

Plaintiff's attempt to save his claims under the ATS cannot overcome his inability to establish that (i) the locus of his alleged claims arose within the U.S. and (ii) his limited allegations relating to activities in the U.S. attach to a tort cognizable under the ATS because it violates the law of nations. Plaintiff's submission does not and cannot dispute that a claim under the ATS must allege a violation of the law of nations, which the Supreme Court has narrowly circumscribed, and that the ATS does not apply to extraterritorial conduct. Plaintiff's assertion that the alleged laundering of proceeds from the sale of Krasnaya Polyana and alleged Hobbs Act extortion through threats of reprisal if he initiated legal action took place in the U.S. and have "caused direct, substantial injury to important economic and legal interests in the United States, thus satisfying the requisite elements of the ATS," Opp'n at 28, doubly misapprehends the statute. These ancillary allegations are insufficient to shift the locus of the alleged violation from Russia to the U.S., and money laundering and extortion do not violate the law of nations. *See Nestle USA, Inc. v. Doe*, 141 S. Ct. 1931, 1937 (2021) (plaintiff must plead facts "establish[ing] that the conduct relevant to the statute's focus occurred in the United States"); *Balintulo v. Daimler AG*, 727 F.3d 174, 180 n.2 (2d Cir. 2013) (collecting cases and explaining law of nations are "the specific and universally accepted rules that the nations of the world treat as binding in their dealings with one another") (internal quotes and citations omitted).

Plaintiff offers no authority to suggest that an individual's extortion claim can support a viable finding of violation of the law of nations under the ATS. Plaintiff cannot explain why one individual's allegedly extorting another rises to the level of an international law violation, and it would be anomalous if the crime of extortion, which does not give rise to a private tort claim under federal or New York law, permitted a private claim under the ATS. *See Barge v. Apple Comput., Inc.*, No. 97-9068, 1998 WL 650578, at *1 (2d Cir. Aug. 21, 1998) (no private right of

14

action under Hobbs Act). Money laundering itself is also not an ATS violation. *See Nahl v. Jaoude*, 968 F.3d 173, 181, 183 (2d Cir. 2020).

## V. The Court Should Also Dismiss the SAC's Non-Federal Claims

The parties agree the Court can exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) over the SAC's non-federal claims. Opp'n at 29. The Court should exercise that jurisdiction to dismiss those claims. As explained in the SCIB's submission, *see* SCIB Br. at 26-30, the SAC's non-federal claims are legally unsustainable and largely, if not entirely, time-barred. If, however, the Court elects not to dismiss these claims on these grounds, it should dismiss them for lack of subject matter jurisdiction upon dismissal the federal claims. Plaintiff's Florida residency does not alter his Russian citizenship and therefore his lack of diversity with Defendants. *See Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124, 127 (2d Cir. 2020).

Dismissal with prejudice is appropriate, where, as here, further amendment would be futile, the time and expense of amendment would prejudice Defendants and prior amendments have not cured the complaint's deficiencies. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Plaintiff has now had the benefit of filing three operative complaints, including one directed to addressing the pre-motion letters Defendants sent in accordance with this Court's rules, and Plaintiff elected to respond to Defendants' latest pre-motion letters by presenting his third iteration of the complaint to the Court for evaluation rather than seeking to amend again. Plaintiff has not identified how another amendment would give his claims the legal viability they lack now. *See* Opp'n at 29-30. These circumstances warrant dismissal with prejudice, without leave to replead. *See, e.g., Lewis ex rel. Am. Express Co. v. Robinson (In re Am. Express Co. S'holder Litig.*, 39 F.3d 395, 402 (2d Cir. 1994) (affirming denial of leave to replead when it was "hardly self-evident [plaintiffs] could transform the facts pleaded into a sufficient allegation of proximate injury").

15

## **CONCLUSION**

For these reasons, the Court should dismiss the SAC as to Sberbank and Mr. Gref.

Dated: New York, New York
November 2, 2021

                                              Respectfully submitted,

                                              DEBEVOISE & PLIMPTON LLP

                                              By: */s/ John S. Kiernan*
                                                    John S. Kiernan
                                                    jskiernan@debevoise.com

                                                    919 Third Avenue
                                                    New York, New York 10022
                                                    (212) 909-6000

                                                    *Counsel for Defendants Sberbank of Russia and Herman Gref*