UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
: 
AKHMED GADZHIEVICH BILALOV, :
: 1:20-cv-09153-AT-KNF
               Plaintiff, :
: Hon. Analisa Torres
          -against- :
:
HERMAN GREF, SBERBANK CIB USA, INC., :
SBERBANK OF RUSSIA PJSC, and DOES 1- :
100 inclusive, :
:
             Defendants. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION BY SBERBANK OF RUSSIA AND HERMAN GREF TO DISMISS THE SECOND AMENDED COMPLAINT FOR LACK OF SUBJECT-MATTER JURISDICTION

John S. Kiernan
William H. Taft V
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022

*Counsel for Defendants Sberbank of Russia and Herman Gref*

# **TABLE OF CONTENTS**

Page

Table of Authorities ................................................................................................................. ii

PRELIMINARY STATEMENT .................................................................................................1

ARGUMENT.................................................................................................................................2

I.    Sberbank of Russia Is Immune Under the Foreign Sovereign Immunities Act and No Exception to the FSIA Applies....................................................................................2

    A.    Sberbank Is Majority Owned by the Russian Federation and Is Therefore Presumptively Immune from Suit................................................................2

    B.    No Exception to the FSIA Applies ....................................................................3

        1.    The Commercial Activity Exception Does Not Apply..............................4

        2.    The Expropriation Exception Does Not Apply..........................................7

        3.    The Non-Commercial Tort Exception Does Not Apply............................9

II.    Mr. Gref Is Immune from Suit as Sberbank Is the Real Party in Interest, and as an Immune Official Under the Common Law ....................................................................11

CONCLUSION............................................................................................................................14

i

# **TABLE OF AUTHORITIES**

**CASES**

*Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989) ................................ 2

*Arndt v. UBS AG*, 342 F. Supp. 2d 132 (E.D.N.Y. 2004) ............................................................. 9

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct.
     1312 (2017) ........................................................................................................................ 3, 8

*Cabiri v. Gov't of the Republic of Ghana*, 165 F.3d 193 (2d Cir. 1999) ..................................... 10

*El Omari v. Ras Al Khaimah Free Trade Zone Auth.*, 16-cv-3895, 2017 WL 3896399
     (S.D.N.Y. Aug. 17, 2017), *aff'd sub nom Omari v. Kreab (USA) Inc.*, 735 F. App'x
     30 (2d Cir. 2018) ..................................................................................................................... 13

*Eliahu v. Jewish Agency for Israel*, 919 F.3d 709 (2d Cir. 2019) ......................................... 12, 13

*F. Palicio y Compañía, S.A. v. Brush*, 256 F. Supp. 481 (S.D.N.Y. 1966), *aff'd*, 375 F.2d
     1011 (2d Cir. 1967) ................................................................................................................. 8

*F.R.G. v. Philipp*, 141 S. Ct. 703 (2021) ...................................................................................... 8

*Fir Tree Capital Opportunity Master Fund, LP v. Anglo Ir. Bank Corp.*, 2011 WL
     6187077 (S.D.N.Y. Nov. 28, 2011) ........................................................................................ 5

*Gomes v. ANGOP,* 11-CV-0580 (DLI) (JO), 2012 WL 3637453 (E.D.N.Y. Aug. 22,
     2012)*, aff'd*, 541 Fed. App'x 141 (2d Cir. 2013) .................................................................. 13

*Guirlando v. T.C. Ziraat Bankasi A.S.*, 602 F.3d 69 (2d Cir. 2010) .............................................. 6

*Hirsh v. State of Israel*, 962 F. Supp. 377 (S.D.N.Y. 1997) .......................................................... 9

*Hulton v. Bayerische Staatsgemaldesammlungen*, 346 F. Supp. 3d 546, 550 (S.D.N.Y.
     2018) .................................................................................................................................. 7-8

*In re Terrorist Attacks on Sept. 11, 2001*, 718 F. Supp. 2d 456 (S.D.N.Y. 2010) ....................... 13

*In re Terrorist Attacks on Sept. 11, 2011*, 714 F.3d 109 (2d Cir. 2013) ....................................... 9

*In re Terrorist Attacks on September 11, 2001*, 03-MD-1570 (GBD)(SN), 2021 U.S. Dist.
     LEXIS 235947 (S.D.N.Y. Dec. 8, 2021) .............................................................................. 12

*Kensington Int'l, Ltd. v. Itoua*, 505 F.3d 147 (2d Cir. 2007) .................................................... 5, 6

*Kentucky v. Graham*, 473 U.S. 159 (1985) ................................................................................. 11

*Lambros v. Federative Republic of Brazil*, 19-cv-1929 (TSC), 2021 WL 1820206 (D.D.C. May 6, 2021) ............................................................................................................... 10

*Matar v. Dichter*, 563 F.3d 9 (2d Cir. 2009) ......................................................................... 1, 12

*OBB Personenverkehr AG v. Sachs*, 577 U.S. 27 (2015) ........................................................ 4, 5

*Odhiambo v. Republic of Kenya*, 930 F. Supp. 2d 17 (D.D.C. 2013) ......................................... 11

*Samantar v. Yousuf*, 560 U.S. 305 (2010) ............................................................................ 1, 11

*Saudi Arabia v. Nelson*, 507 U.S. 349 (1993) ................................................................. 1, 2, 3, 4

*Schoeps v. Bayern*, 27 F. Supp. 3d 540, 545 (S.D.N.Y. 2014), *aff'd*, 611 Fed. App'x 32 (2d Cir. 2015) ................................................................................................................ 5

*Torres v. Kohlberg, Kravis, Roberts & Co L.P.*, 1:20-cv-05025 (MKV), 2021 U.S. Dist. LEXIS 216716, at *1-3 (S.D.N.Y. Nov. 9, 2021) ................................................................. 2

*Vera v. Republic of Cuba*, 867 F.3d 310 (2d Cir. 2017) .............................................................. 2

*Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480 (1983) ................................................. 2

*Virtual Countries, Inc. v. Republic of South Africa*, 300 F.3d 230 (2d Cir. 2002) ..................... 3, 6

*Weiming Chen v. Ying-Jeou Ma*, 12 civ. 5232 (NRB), 2013 WL 4437607 (S.D.N.Y. Aug. 19, 2013) ............................................................................................................... 12-13

*Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247 (2d Cir. 2000) .................. 7

**STATUTES AND RULES**

28 U.S.C. § 1330 ........................................................................................................................ 1

28 U.S.C. §§ 1602–1611 .................................................................................................... *passim*

Fed. R. Civ. P. 12 .................................................................................................................. 1, 2

With prior leave of the Court, Defendants Sberbank of Russia ("Sberbank") and Herman Gref (together, the "Russian Defendants") submit this memorandum to supplement their motion to dismiss the Second Amended Complaint (the "SAC"), ECF No. 51, to request dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) for absence of subject-matter jurisdiction under the applicable doctrines of immunity.

## PRELIMINARY STATEMENT

Under the Foreign Sovereign Immunities Act (the "FSIA"), 28 U.S.C. §§ 1330, 1602–1611, a foreign state, including its agencies and instrumentalities, is immune from jurisdiction unless an exception set forth in the FSIA applies. 28 U.S.C. § 1604. Because Sberbank is a "separate legal person" that is directly majority owned by a "foreign state or political subdivision thereof," Sberbank meets the FSIA's definition of an "agency or instrumentality of a foreign state." 28 U.S.C. § 1603(b). Sberbank therefore falls within the FSIA's definition of "foreign state" and is entitled to immunity under the FSIA. 28 U.S.C. § 1603(a). No exception to Sberbank's immunity under the FSIA applies or is alleged in the SAC. Because the FSIA provides the sole basis for subject-matter jurisdiction over a foreign state (including agencies or instrumentalities) in U.S. courts, the Court lacks subject-matter jurisdiction over Plaintiff's claims against Sberbank. *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993).

Mr. Gref, as Sberbank's chairman and CEO, also is immune from suit in this action. Sberbank (and not Mr. Gref) is the real party in interest in the suit, *Samantar v. Yousuf*, 560 U.S. 305, 325 (2010), and in any event, the gravamen of the claims against Mr. Gref relate to actions in his official capacity that are immunized under the common law of foreign official immunity, *Matar v. Dichter*, 563 F.3d 9, 14 (2d Cir. 2009).

The Russian Defendants reaffirm positions that they have already advanced on why the SAC should be dismissed on multiple other grounds and refer to their prior briefs for the factual

1

context, but submit that the SAC should be dismissed at the outset based on their immunity from suit. The Russian Defendants' assertions of sovereign immunity represent a threshold jurisdictional question that must be resolved before the Court may consider the merits. *Vera v. Republic of Cuba*, 867 F.3d 310, 316-17 (2d Cir. 2017) ("At the threshold of every action in a district court against a foreign state…the court must satisfy itself that one of the exceptions [to the FSIA] applies…If the court fails to undertake that analysis and determine for itself that an exception applies, it has no authority to hear the claim.") (*quoting Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 493-94 (1983)) (cleaned up).

## ARGUMENT

A party may move for dismissal for "lack of subject-matter jurisdiction," Fed. R. Civ. P. 12(b)(1), at any time, even after decision of a motion to dismiss on other grounds. *See* Fed. R. Civ. P. 12(g)(2), (h)(3); *Torres v. Kohlberg, Kravis, Roberts & Co L.P.*, 1:20-cv-05025 (MKV), 2021 U.S. Dist. LEXIS 216716 (S.D.N.Y. Nov. 9, 2021).

**I.  Sberbank of Russia Is Immune Under the Foreign Sovereign Immunities Act and No Exception to the FSIA Applies**

   **A.  Sberbank Is Majority Owned by the Russian Federation and Is Therefore Presumptively Immune from Suit**

The FSIA provides "the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989). Under the FSIA, a "foreign state"—which is defined to include an agency or instrumentality of a foreign state, 28 U.S.C. § 1603(a)—is "presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." *Nelson*, 507 U.S. at 355; *see* 28 U.S.C. § 1604 (under the FSIA, "a foreign state shall be immune from the jurisdiction of the courts of the United States," subject to exceptions in the FSIA).

2

The SAC alleges and the Russian Defendants do not dispute that Sberbank is a corporate entity organized under the laws of Russia that is legally separate from, but majority owned by, the Russian Federation. *See* SAC ¶ 22 (government of the Russian Federation "owns 51% of the bank."); Sberbank's Fed. R. Civ. P. 7.1 Disclosure Statement (ECF No. 53) ("The Russian Federation in the person of the Ministry of Finance of the Russian Federation owns a 50% equity stake plus one ordinary share in Defendant Sberbank of Russia."). Sberbank is therefore an "agency or instrumentality of a foreign state" as defined in 28 U.S.C. § 1603(b), because it is a "separate legal person, corporate or otherwise," "a majority of [its] shares or other ownership interest[s] [are] owned by a foreign state," and it is not organized under the laws of a U.S. state or a third country. As defined in the FSIA, "a foreign state…includes…an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a). As an agency or instrumentality of a foreign state, Sberbank is "presumptively immune" from suit, and the Court lacks jurisdiction over the claims against it unless Plaintiff demonstrates that one of the FSIA's exceptions to sovereign immunity applies. *Nelson*, 507 U.S. at 355; *cf.* 28 U.S.C. §§ 1605–1607 (listing exceptions to immunity under the FSIA).

### B.  No Exception to the FSIA Applies

To avoid dismissal based on immunity, a complaint's factual allegations must establish an exception to immunity under the FSIA; merely presenting "[a] good argument to that effect is not sufficient." *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1316 (2017). "Bald assertions" and "conclusory allegations" are insufficient to establish an exception to sovereign immunity. *Virtual Countries, Inc. v. Republic of South Africa*, 300 F.3d 230, 241 (2d Cir. 2002) (citations omitted). Here, Plaintiff's factual allegations offer no reason to apply any exception to the FSIA.

3

### 1.   The Commercial Activity Exception Does Not Apply

Plaintiff's claims do not satisfy the exception to immunity in 28 U.S.C. § 1605(a)(2) (the "Commercial Activity Exception"), which provides that foreign states and instrumentalities are not immune from jurisdiction for an action "[1] based upon a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." (Bracketed numbers added). The SAC's claims do not meet any of the exception's requirements.

To show that a claim is "based upon" commercial activity in the United States, the plaintiff has the burden of demonstrating that "the 'particular conduct' that constitutes the 'gravamen' of the suit" took place in the United States. *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 35 (2015) (*quoting Nelson*, 507 U.S. at 358). The SAC does not plead a claim that is "based upon commercial activity carried on in the United States by the foreign state," but rather seeks to plead a claim based on allegations that a sequence of wrongful steps that occurred exclusively in Russia progressively transformed Sberbank from primary lender to owner of Krasnaya Polyana. Such alleged foreign misconduct does not fall within the Commercial Activity Exception. *See Nelson*, 507 U.S. at 357-58 (granting FSIA dismissal for lack of subject-matter jurisdiction where complaint was based upon tortious activity outside the United States). The SAC's conclusory, incongruous and unsupported allegations of money laundering of unspecified proceeds in the United States—plus plainly non-commercial activities such as alleged abuse of process in connection with Plaintiff's detention for overstaying his visa and alleged threats to deter him from bringing this action—do not transform Plaintiff's claims into causes of action "based upon" commercial activity in the U.S. by the Russian Defendants. *See,*

4

*e.g., OBB*, 577 U.S. at 34 (establishing "a single element of a claim" through commercial activity in the United States is "insufficient to demonstrate that the claim is 'based upon'" that act).

The SAC's allegations based on commercial activity all focus on the alleged misappropriation of Krasnaya Polyana in Russia in 2014. That alleged loss would have taken place without any acts, commercial or otherwise, in the United States. *See Kensington Int'l, Ltd. v. Itoua*, 505 F.3d 147, 156 (2d Cir. 2007) (first prong of the Commercial Activity Exception did not apply when alleged acts in the U.S. "had no bearing on Kensington's ability or inability to recover the money owed by Congo under the loan agreements…Th[e] scheme would have the same alleged effect…even if all of the oil shipments had been to destinations outside the United States").

The SAC equally does not plead a claim "based…upon" non-commercial acts in the United States "in connection with a commercial activity of the foreign state elsewhere." *See Kensington Int'l, Ltd.*, 505 F.3d at 157. To satisfy this prong of the exception, the alleged non-commercial acts in the United States must form the "basis" for causes of action alleged in the complaint. *Schoeps v. Bayern*, 27 F. Supp. 3d 540, 545 (S.D.N.Y. 2014), *aff'd*, 611 Fed. App'x 32 (2d Cir. 2015). Here, nine of the ten causes of action are entirely focused on the alleged loss of ownership in Krasnaya Polyana in Russia in 2014. The tenth cause of action (Count VIII), for abuse of process allegedly resulting in wrongful arrest, does not satisfy the requirements of being "based…upon" and "in connection with" the foreign commercial activity involved in the alleged wrongful acquisition of Plaintiff's interest in Krasnaya Polyana more than five years earlier. *See Fir Tree Capital Opportunity Master Fund, LP v. Anglo Ir. Bank Corp.*, 2011 WL 6187077, at *17 (S.D.N.Y. Nov. 28, 2011) ("Plaintiffs have not, however, pointed to any '*non-commercial*

5

*act* by the Bank in the United States that relates to commercial acts abroad.'") (emphasis in original) (*quoting Kensington Int'l, Ltd.*, 505 F.3d at 157).

The SAC likewise does not plead a claim based "upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere [when] that act causes a direct effect in the United States." The SAC does not and cannot plead any "direct effect" in the United States from the Russian Defendants' commercial activity in Russia resulting in Plaintiff's alleged loss of his interest in Krasnaya Polyana, which occurred several years before Plaintiff moved to the United States. *See Kensington Int'l, Ltd.,* 505 F.3d at 158 ("the financial losses allegedly suffered by Kensington, a foreign corporation that is not present in the United States, do not meet the 'direct effect in the United States' standard."); *Virtual Countries*, 300 F.3d at 241 (affirming dismissal under the FSIA for lack of "direct effect").

An effect is "direct" only where "it follows as an immediate consequence of the defendant's activity." *Guirlando v. T.C. Ziraat Bankasi A.S.*, 602 F.3d 69, 74 (2d Cir. 2010) (ellipsis and internal quotation marks omitted). While the SAC tries to link the loss of Plaintiff's interest in Krasnaya Polyana to alleged later money laundering in the United States, that inadequately pleaded speculation does not, in any event, amount to a direct effect on Plaintiff in the United States. *See* SAC ¶¶ 111, 119; *Kensington Int'l, Ltd.*, 505 F.3d at 158 (alleged "straw men" transactions to hide revenue from creditors, including U.S. creditors, are insufficient to trigger exception).[1]

---

[1]  The sole cause of action in the SAC that does *not* stem from the sale of shares in Krasnaya Polyana is for malicious abuse of process, which is based on vague and unsupported allegations that the "Defendants worked in concert with Russian law enforcement agencies, [and] the Courts, using their broad influence in order to have Plaintiff detained" by ICE in Miami in October 2019.  SAC ¶¶ 144, 224.  Putting aside that these allegations do not make out a legally sufficient abuse of process claim, *see* Sberbank CIB USA, Inc.'s Mem. in Supp. of Mot. to Dismiss the SAC (ECF No. 62) at 29-30, these allegations cannot be the basis for denying

6

## 2. The Expropriation Exception Does Not Apply

The exception to immunity in 28 U.S.C. § 1605(a)(3) for certain cases involving "rights in property taken in violation of international law" when the property is used in the United States for commercial activity or owned by an agency or instrumentality engaged in commercial activity in the United States (the "Expropriation Exception") is not applicable. The loss of Plaintiff's alleged ownership interest in Krasnaya Polyana was not an expropriation—and even if it was, it was not in violation of international law.

An expropriation is a public act of a sovereign taking ownership of property through eminent domain, nationalization or similar processes. In this case, the dispute relates to Sberbank's alleged actions *as a lender and as a partner* that ultimately resulted in its becoming an owner of Krasnaya Polyana. Even if Sberbank was acting at the behest of the Russian state as the SAC alleges, *see* SAC ¶ 172 (p. 33) (alleging campaign for "de-privatization of [Plaintiff's] assets), the SAC does not actually allege a taking of property by exercise of governmental authority, *see* SAC ¶ 100 (alleging that actions by Sberbank ultimately "led to the transfer of [Plaintiff and his brother's] stake in 'Krasnaya Polyana' to the institutions of SberBank [sic]"). As the Second Circuit has held, "the acts of a private commercial entity, even one that supports a government, cannot be attributed to a government that has not authorized the private entity to act on its behalf." *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 252 (2d Cir. 2000); *see also Hulton v. Bayerische Staatsgemaldesammlungen*, 346 F. Supp. 3d 546, 550

---

Sberbank its immunity under the Commercial Activity Exception because, for purposes of the first and third prongs of the exception, no commercial activity is involved in causing an arrest, and for purposes of the second prong, the arrest allegations are not "based on" and have no substantial connection to alleged commercial activity involved in the change of ownership of Krasnaya Polyana in Russia five years earlier.

7

(S.D.N.Y. 2018) ("[T]he taking must be done by a sovereign—not a private entity.") (internal quotation marks omitted).

If the alleged loss of Krasnaya Polyana was executed by Sberbank as an alter ego of the Russian Federation, the expropriation cannot have violated international law for the simple reason that a foreign sovereign's expropriation of its *own* nationals' property does not violate international law. As the Supreme Court recently reaffirmed in *F.R.G. v. Philipp*, 141 S. Ct. 703, 709 (2021), "a foreign sovereign's taking of its own nationals' property remains a domestic affair" and outside the reach of the FSIA's Expropriation Exception. *See also, e.g., F. Palicio y Compañía, S.A. v. Brush*, 256 F. Supp. 481, 487 (S.D.N.Y. 1966) ("[C]onfiscations by a state of the property of its own nationals, no matter how flagrant and regardless of whether compensation has been provided, do not constitute violations of international law."), *aff'd,* 375 F.2d 1011 (2d Cir. 1967). As an exception, an expropriation of a company's property might fall outside the "domestic takings" rule if the expropriation was based on unreasonable discrimination against shareholders who were foreign nationals, *see Helmerich*, 137 S. Ct. at 1318, but Plaintiff and his brother, the alleged principal shareholders of Krasnaya Polyana, were themselves Russian nationals.

To plead the Expropriation Exception, a plaintiff must offer supporting factual allegations amounting to more than simply "nonfrivolous" claims that property was taken in violation of international law. *Helmerich*, 137 S. Ct. at 1316 ("the relevant factual allegations must make out a legally valid claim that a certain kind of right is at issue (property rights) and that the relevant property was taken in a certain way (in violation of international law.") Here, the SAC does not and cannot establish that the loss of Plaintiff's ownership in Krasnaya Polyana was a violation of international law. Nothing of the sort is alleged: a dispute over Sberbank's conduct in evolving

8

from primary lender to owner of Krasnaya Polyana does not implicate violations of international law. *See* Russian Defendants' Br. in Supp. of Mot. to Dismiss (ECF No. 59) (the "Russian Defendants' Br.") at 28-30 (explaining how no claims in the SAC allege violations of international law); *Arndt v. UBS AG*, 342 F. Supp. 2d 132, 141 (E.D.N.Y. 2004) ("fraud, conversion and misrepresentation may be legal theories that can be advanced in many if not all States, but these are not wrongs expressed by mutual concern and reflected in international accords" such that these forms of conduct violate international law) (internal punctuation omitted).

### 3. The Non-Commercial Tort Exception Does Not Apply

The SAC equally does not satisfy the exception in 28 U.S.C. § 1605(a)(5), which permits jurisdiction when "damages are sought…for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission" of a foreign state or agency or instrumentality (the "Non-Commercial Tort Exception"). This exception does not apply here because the alleged torts took place abroad, the SAC does not plausibly allege personal injury or property loss to Plaintiff in the U.S., and the exception does not permit claims based on fraud, misrepresentation and similar conduct that are the foundation of the SAC's claims.

The Non-Commercial Tort Exception applies only when the "entire tort" takes place in the United States. *See Hirsh v. State of Israel*, 962 F. Supp. 377, 384 (S.D.N.Y. 1997) ("[G]iven that Plaintiffs' allegations involve conduct that occurred—at least in part—in Israel and Germany, the 'entire' tort could not have taken place in the United States as required."); *In re Terrorist Attacks on Sept. 11, 2011*, 714 F.3d 109, 115-16 (2d Cir. 2013) (Non-Commercial Tort Exception not satisfied because "*all of the tortious conduct* allegedly…occurred abroad") (emphasis in original). Here, the entirety of the alleged torts relating the taking of Plaintiffs'

9

ownership in Krasnaya Polyana took place in Russia, not the United States, and the Non-Commercial Tort Exception therefore cannot apply. *See* Russian Defendants' Br. at 5-7 (showing that all SAC allegations involving conduct in the United States are unrelated to the alleged taking of Plaintiffs' ownership interest).

The FSIA further limits the Non-Commercial Tort Exception with an explicit proviso that the exception does not apply to claims like the SAC's state law claims for fraud, conspiracy to commit fraud, unlawful conversion, malicious abuse of process and unjust enrichment (Counts V-IX). *See* 28 U.S.C. § 1605(a)(5)(B) (exception does not apply to "any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights"). Each of the SAC's purported causes of action, inherently "arise[s] out of" Plaintiff's allegations of "misrepresentation, deceit [and] interference with contract rights" stemming from his loss of ownership in Krasnaya Polyana, which is excluded by the proviso to the Non-Commercial Tort Exception, or allegations of "abuse of process," which is also expressly excluded by the proviso. Attempting to plead these claims by reference to state law causes of action that use different labels for the same substantive claims still triggers the proviso. *Cabiri v. Gov't of the Republic of Ghana*, 165 F.3d 193, 200 (2d Cir. 1999) (courts should ignore attempts to "plead around the proviso" of § 1605(a)(5)(B) and focus on the "wrongful acts alleged to have caused the injury"); *Lambros v. Federative Republic of Brazil*, 19-cv-1929 (TSC), 2021 WL 1820206, at *4 (D.D.C. May 6, 2021) ("Plaintiff's claims of fraud, misrepresentation, breach of contract, breach of fiduciary duty, false arrest, and false imprisonment are explicitly excluded from the tortious conduct exception" of § 1605(a)(5)).

**II. Mr. Gref Is Immune from Suit as Sberbank Is the Real Party in Interest, and as an Immune Official Under the Common Law**

Sberbank, as the actor that ultimately became the owner of Krasnaya Polyana, is the real party in interest in the SAC's claims—not Mr. Gref, the Sberbank chairman and CEO who allegedly helped to effectuate that result for Sberbank. The SAC repeatedly portrays Mr. Gref's actions as Sberbank's leader as playing a role in Sberbank's ultimate acquisition of its ownership interest in Krasnaya Polyana. *See, e.g.*, SAC ¶ 28 ("Herman Gref is and was the CEO and chairman of the executive board of Sberbank."); ¶ 72 (Mr. Gref allegedly reached agreement whereby assets of Krasnaya Polyana would "be allocated and transferred to SberBank [sic]."); ¶ 91 (Sberbank eventually became "the owner of 92% of 'Krasnaya Polyana.'").

"Some actions against an official in his official capacity should be treated as actions against the foreign state itself, as the state is the real party in interest." *Samantar v. Yousuf*, 560 U.S. 305, 325 (2010) (*quoting Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity.")). In these circumstances, a dismissal of claims against Sberbank based on its immunity also should extend to Mr. Gref. *See Odhiambo v. Republic of Kenya*, 930 F. Supp. 2d 17, 35 (D.D.C. 2013) ("the Kenyan government is 'the real party in interest' and the suit against the individual defendants will be treated as one against the Republic of Kenya. The Court's FSIA analysis thus applies to all defendants including the individuals.").

To the extent the SAC alleges acts by Mr. Gref constituting elements of any of the substantive claims, each of those acts is alleged to have been in his official capacity as the leader of Sberbank, and the SAC repeatedly treats Mr. Gref as the representative of and functionally indistinguishable from Sberbank. *See, e.g.*, SAC ¶ 30 ("The DEFENDANTS are and were,

11

during all relevant times, responsible for the acts and omissions of their employees, for acts undertaken within the general area of their authority and for the benefit of the DEFENDANTS."); ¶ 31 ("[T]he DEFENDANTS have undertaken responsibility for the acts of the employees of the DEFENDANTS, wherever taken"); ¶ 72 ("an agreement was reached during a meeting [with] SberBank [sic] Chairman Herman Gref…whereas it was agreed…an actual division of assets would be made," with a third of the assets allocated "to Plaintiff and his brother" and the balance "to be allocated and transferred to SberBank [sic]."). These allegations amount to claims against Mr. Gref in his official capacity, with Sberbank presented as the real party in interest because it—and not Mr. Gref himself—was the alleged beneficiary of the asserted wrongdoing. As such, the claims against Mr. Gref should be treated as claims against Sberbank and dismissed under the FSIA's sovereign immunity principles. *See In re Terrorist Attacks on September 11, 2001*, 03-MD-1570 (GBD)(SN), 2021 U.S. Dist. LEXIS 235947, at *8 (S.D.N.Y. Dec. 8, 2021) (state is real party in interest when "any damages in a successful suit would be paid by the government rather than out of an individual's 'own pockets'") (internal citation omitted).

Even if Mr. Gref were an actual party in interest in this suit, the Court would still lack subject-matter jurisdiction over him because he is immune from suit under settled principles of common law immunity, which immunize foreign officials for acts undertaken in an official capacity. *See Matar*, 563 F.3d at 14 ("[T]he common law of foreign sovereign immunity recognize[s] an individual official's entitlement to immunity for 'acts performed in his official capacity.'") (citation omitted); *Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 712 (2d Cir. 2019) ("as foreign government officials acting [in] their official capacity, [sued Israeli officials] are entitled to immunity"); *Weiming Chen v. Ying-Jeou Ma*, 12 civ. 5232 (NRB), 2013 WL

12

4437607, at *3 (S.D.N.Y. Aug. 19, 2013) (official capacity found when official "executed (and allegedly breached) the contract at issue" and commercial activity exception does not apply to common law sovereign immunity for officials.). The conduct by Mr. Gref alleged in the SAC that is even arguably relevant to the SAC's claims was undertaken in his official capacity as head of Sberbank. He is therefore immune from suit on the claims alleged against him in the SAC. *See, e.g.*, *Eliahu*, 919 F.3d at 713 (affirming immunity of various Israeli government officials, because their acts were "official in nature," even if allegedly improper); *El Omari v. Ras Al Khaimah Free Trade Zone Auth.*, 16-cv-3895, 2017 WL 3896399, at *10 (S.D.N.Y. Aug. 17, 2017), *aff'd sub nom Omari v. Kreab (USA) Inc.*, 735 F. App'x 30 (2d Cir. 2018) (head of UAE political subdivision entitled to immunity for alleged wrongful detention because it was "undertaken through…official channels and on behalf of the" political subdivision); *Gomes v. ANGOP*, 11-CV-0580 (DLI) (JO), 2012 WL 3637453, at *12-13, *18-19 (E.D.N.Y. Aug. 22, 2012), *aff'd*, 541 Fed. App'x 141 (2d Cir. 2013) (dismissing suit against editorial staff of media company found to be an agency or instrumentality by applying official capacity analysis).[2]

---

[2] Insofar as Mr. Gref is being sued in his personal capacity, there is no personal jurisdiction over him in this action (in addition to the reasons advanced in the Russian Defendants' Br. at 13-19) because the only contacts he is alleged to have in the United States are those undertaken in connection with his work on behalf of Sberbank. *In re Terrorist Attacks on Sept. 11, 2001*, 718 F. Supp. 2d 456, 476 (S.D.N.Y. 2010) ("contacts [defendant] had with the United States while acting in his official capacity on behalf of the sovereign state[] cannot be imputed to him for purposes of determining" personal jurisdiction over him in his personal capacity).

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the SAC as to Sberbank and Herman Gref.

Dated: New York, New York
December 20, 2021

Respectfully submitted,

DEBEVOISE & PLIMPTON LLP

By: */s/ John S. Kiernan*
John S. Kiernan
William H. Taft V
jskiernan@debevoise.com
whtaft@debevoise.com

919 Third Avenue
New York, New York 10022
(212) 909-6000

*Counsel for Defendants Sberbank of Russia and Herman Gref*