UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

AKHMED GADZHIEVICH BILALOV,

                     Plaintiff,

          -against-

HERMAN GREF, SBERBANK CIB USA, INC.,
SBERBANK OF RUSSIA PJSC, and DOES 1-
100 inclusive,

                   Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

1:20-cv-09153-AT-JW

Hon. Analisa Torres

## REPLY MEMORANDUM IN SUPPORT OF MOTION
## BY SBERBANK OF RUSSIA AND HERMAN GREF
## TO DISMISS THE SECOND AMENDED COMPLAINT
## FOR LACK OF SUBJECT-MATTER JURISDICTION

Mark P. Goodman
William H. Taft V
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022

*Counsel for Defendants Sberbank of
Russia and Herman Gref*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT .......................................................................................................................... 2

I.     Sberbank is Entitled to Immunity Under the FSIA ..................................................... 2

       A.     Plaintiff Does Not Dispute Sberbank is Presumptively Immune and
              Argues Only Two Exceptions to the FSIA Potentially Apply ............................. 2

       B.     The Commercial Activity Exception is Not Applicable ...................................... 3

              1.     The Gravamen of Plaintiff's Suit is Not "Based Upon Commercial
                     Activity Carried on in the United States" .................................................. 3

              2.     The SAC Does Not Allege Any Relevant Non-Commercial
                     Activity in the United States That Would Permit Jurisdiction .................. 4

              3.     The Commercial Activity Exception is Not Satisfied by
                     Allegations of Money Laundering of Proceeds of the Alleged
                     Wrongful Acts .......................................................................................... 6

       C.     The Expropriation Exception is Not Applicable Because There was No
              State Taking or Taking in Violation of International Law .................................... 7

II.    Mr. Gref is Entitled to Immunity Because the Second Amended Complaint
       Alleges He was Acting Within the Scope of His Authority ......................................... 9

III.   The Court Should Deny Plaintiff's Request for Jurisdictional Discovery Because
       There are No Factual Disputes to be Resolved ......................................................... 13

CONCLUSION ..................................................................................................................... 15

## TABLE OF AUTHORITIES

CASES

*Anglo-Iberia Underwriting Mgmt. Co. v. Jamostek*, 97 Civ. 5116, 1998 WL 289711
(S.D.N.Y. June 4, 1998) ............................................................................. 10, 12

*Barnet v. Ministry of Culture & Sports of the Hellenic Republic*, 961 F.3d 193

(2d Cir. 2020) .......................................................................................... 6, 7

*Bascuñán v. Elsaca*, 927 F.3d 108 (2d Cir. 2019) ....................................................... 7

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct.
1312 (2017) ................................................................................................... 9

*Butcher v. Wendt*, 975 F.3d 236 (2d Cir. 2020) ...................................................... 14

*Cabiri v. Assasie-Gyimah*, 921 F. Supp. 1189 (S.D.N.Y. 1996) ............................... 12, 13

*Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012 (2d Cir. 1993) ....................... 13

*Chiat/Day Direct Mktg. v. Nat'l Car Rental Sys.*, 93 Civ. 2717 (JFK), 1994 WL 524982
(S.D.N.Y. Sept. 27, 1994) .............................................................................. 12

*EM Ltd. v. Republic of Argentina*, 473 F.3d 463 (2d Cir. 2007) ................................. 14

*Fed. Republic of Germany v. Philipp*, 141 S. Ct. 703 (2021) ..................................... 8

*First Fidelity Bank, N.A. v. Gov't of Antigua & Barbuda-Permanent Mission*, 877 F.2d
189 (2d Cir. 1989) ....................................................................................... 10

*Flores v. S. Peru Copper Corp.*, 414 F.3d 233 (2d Cir. 2003) ..................................... 8

*Funk v. Belneftekhim*, 861 F.3d 354 (2d Cir. 2017) ................................................ 14

*Garb v. Republic of Poland*, 440 F.3d 579 (2d Cir. 2006) .......................................... 7

*In re N. Sea Brent Crude Oil Futures Litig.*, 13-md-02475 (ALC), 2016 WL 1271063
(S.D.N.Y. Mar. 29, 2016) ............................................................................... 4

*Kensington Int'l, Ltd. v. Itoua*, 505 F.3d 147 (2d Cir. 2007) ..................................... 5

*Kline v. Kaneko*, 685 F. Supp. 386 (S.D.N.Y. 1988) ................................................ 11

*Leutwyler v. Office of Her Majesty Queen Rania Al Abdullah*, 184 F. Supp. 2d 277
(S.D.N.Y. 2001) .......................................................................................... 11

*MMA Consultants 1, Inc. v. Republic of Peru*, 719 F. App'x 47 (2d Cir. 2017) .............. 4

*OBB Personenverkehr AG v. Sachs*, 577 U.S. 27 (2015) ....................................................... 3, 4, 5

*Prime Int'l Trading, Ltd. v. BP P.L.C.*, 784 F. App'x 4 (2d Cir. 2019) ........................................7

*Reiss v. Societe Centrale Du Groupe Des Assurances Nationales*, 246 F. Supp. 2d 273 (S.D.N.Y. 2003) ...............................................................................................................10

*Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992)........................................................6

*Republic of the Philippines v. Marcos*, 862 F.2d 1355 (9th Cir. 1988) .........................................7

*RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090 (2016) ...........................................7

*Saudi Arabia v. Nelson*, 507 U.S. 349 (1993) .........................................................................3, 5

*United States v. Turkiye Halk Bankasi A.S.*, 16 F.4th 336 (2d Cir. 2021) ....................................4

*Virtual Countries, Inc. v. Republic of S. Africa*, 300 F.3d 230 (2d Cir. 2002)........................7, 13

*Weiming Chen v. Ying-Jeou Ma*, 12 civ. 5232 (NRB), 2013 WL 4437607 (S.D.N.Y. Aug. 19, 2013) .....................................................................................................................10

*Wiwa v. Royal Dutch Petroleum Co.*, 96 CIV. 8386 (KMW), 2002 WL 319887 (S.D.N.Y. Feb. 28, 2002) ..................................................................................................................7

*Xuncax v. Gramajo*, 886 F. Supp. 162 (D. Mass. 1995) ........................................................12, 13

**STATUTES AND RULES**

18 U.S.C. § 1964...................................................................................................................7

28 U.S.C. § 1605...........................................................................................................*passim*

28 U.S.C. § 1602....................................................................................................................1

Federal Rule of Civil Procedure 12.........................................................................................1

Defendants Sberbank of Russia ("Sberbank") and Herman Gref (together, the "Russian Defendants") submit this reply memorandum in further support of their motion to dismiss the Second Amended Complaint (the "SAC"), ECF No. 51, pursuant to Federal Rule of Civil Procedure 12(b)(1) for absence of subject-matter jurisdiction under the applicable doctrines of immunity.

## PRELIMINARY STATEMENT

The Russian Defendants are immune from jurisdiction in this suit, and nothing in Plaintiff's Opposition (ECF No. 79) ("Opp.") supports a contrary conclusion.

Plaintiff concedes that Sberbank is majority owned by the Russian Federation and is therefore presumptively immune from jurisdiction and suit under the Foreign Sovereign Immunities Act (the "FSIA"), 28 U.S.C. §§ 1602 *et seq.* Plaintiff's Opposition argues only that two statutory exceptions to immunity—the Commercial Activity Exception and the Expropriation Exception—permit this Court to exercise jurisdiction, but the SAC's allegations do not satisfy those exceptions' requirements.

The Commercial Activity Exception requires the "gravamen" of the alleged harms be "based upon" acts in the United States. As explained at length in the Russian Defendants' prior submissions, the core of Plaintiff's claims are alleged wrongful acts in Russia. It was in Russia where the property giving rise to this suit is located, and it was in Russia where, in 2013, the disputed transfers of the property took place. Only in 2018, nearly five years after those events, did Plaintiff—then in the United States—allegedly engage with Defendants to seek redress for his alleged harms. These later-in-time and secondary events are plainly not the gravamen of the suit or the source of Plaintiff's alleged harms.

The Expropriation Exception similarly cannot apply to Plaintiff's alleged loss of his property. Even if Defendants took Plaintiff's property at the behest of the Russian state, that

taking could not qualify for the Expropriation Exception under Supreme Court precedent, which establishes that the exception does not extend to actions by a state against its own citizens' property.   If, on the other hand, Defendants obtained Plaintiff's property while acting in a commercial capacity, Plaintiff could not establish a taking in violation of international law.

With respect to Mr. Gref, Sberbank's CEO and chairman, the Opposition argues that he was not acting in his official capacity as an employee of Sberbank and is therefore not entitled to immunity under the common law.   But the SAC is bereft of non-conclusory allegations that Mr. Gref personally benefited from Sberbank's involvement with Krasnaya Polyana.   Rather, by the SAC's own allegations, Mr. Gref acted with the actual authority granted to him as Sberbank's CEO and chairman to negotiate transactions on behalf of the bank.   The SAC also cannot dispute that Mr. Gref's authority was apparent to those Mr. Gref dealt with, including Plaintiff.

Because the SAC does not allege facts supporting any exception to sovereign immunity, either with respect to Sberbank as an agency or instrumentality of the Russian Federation or Mr. Gref as an officer thereof, this action should be dismissed as to the Russian Defendants for lack of subject-matter jurisdiction.   In addition, the action can and should be dismissed for all of the reasons set forth in the motions to dismiss previously filed by the Russian Defendants and Sberbank CIB USA, Inc.

## ARGUMENT

### I.    Sberbank is Entitled to Immunity Under the FSIA

#### A.    Plaintiff Does Not Dispute Sberbank is Presumptively Immune and Argues Only Two Exceptions to the FSIA Potentially Apply

The SAC alleges Sberbank is an agency or instrumentality of the Russian Federation, by virtue of the government's majority ownership of the bank.   SAC ¶ 22.   Mr. Gref is alleged in the SAC to have acted on behalf of his employer, Sberbank, thus establishing that his alleged acts

were taken in his official capacity. *See, e.g.*, SAC ¶ 72. Plaintiff's Opposition does not dispute that the Russian Defendants are presumptively immune from this suit and does not contend that any exceptions to the FSIA may apply other than the Commercial Activity Exception or the Expropriation Exception. *See* 28 U.S.C. §§ 1605(a)(2), (a)(3). As shown below, Plaintiff is wrong in asserting either exception applies.

  **B.**  **The Commercial Activity Exception is Not Applicable**

    **1.**  **The Gravamen of Plaintiff's Suit is Not "Based Upon Commercial Activity Carried on in the United States"**

Plaintiff incorrectly asserts that the first prong of the Commercial Activity Exception, which applies to suits "based upon a commercial activity carried on in the United States by the foreign state," 28 U.S.C. § 1605(a)(2), is satisfied because Defendants allegedly undertook "commercial activities [to] disguise[] the underlying RICO predicate acts Plaintiff has alleged" in the United States. Opp. at 4-5. The Supreme Court has clearly stated that acts outside of the "gravamen" of the suit—and in particular, acts that are not the source of the alleged harm to the plaintiff—are not sufficient to satisfy the "based upon" requirement common to each of the Commercial Activity Exception prongs.

In *OBB Personenverkehr AG v. Sachs*, the Court held that "an action is 'based upon' the 'particular conduct' that constitutes the 'gravamen' of the suit" and the task of the court is to "zero[] in on the core" of the suit, i.e., the acts that actually harmed the plaintiff. 577 U.S. 27, 35 (2015) (*quoting Saudi Arabia v. Nelson*, 507 U.S. 349, 357 (1993)). In *Sachs*, the Supreme Court rejected the plaintiff's attempt to "recast" tort claims for injuries in a train accident in Austria into a failure-to-warn claim arising in the United States based upon the sale of the train ticket in this country. *Id*. at 36. Similarly, Plaintiff here seeks to convert a suit about a loss of property in Russia into a RICO claim in the United States, based upon alleged attempts to

"disguise" the core harms after they had already occurred.  Those core harms, however, plainly concern activity and property outside the United States.  Because the alleged concealment in the United States is not the act that actually caused Plaintiff's alleged injury, it is not the gravamen of the suit, and the action is based on activity outside the United States.  *See also MMA Consultants 1, Inc. v. Republic of Peru*, 719 F. App'x 47, 52 (2d Cir. 2017) ("[W]e do not conduct the gravamen test by engaging in an 'exhaustive claim-by-claim, element-by-element analysis' of a plaintiff's suit.  Instead, we ask one simple question: what action of the foreign state 'actually injured' the plaintiff?") (*quoting Sachs*, 577 U.S. at 34).

Accordingly, the first prong of the Commercial Activity Exception—that the gravamen of the suit involve U.S.-based commercial activity—cannot be satisfied by the SAC's allegations.

### 2.    The SAC Does Not Allege Any Relevant Non-Commercial Activity in the United States That Would Permit Jurisdiction

Plaintiff next asserts that the second prong of the Commercial Activity Exception, which permits jurisdiction based "upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere," is satisfied by Defendants' alleged "tortious acts committed in New York Between [sic] May 2019 and August 2019."  Opp. at 5.

As an initial matter, the "based upon" analysis from *Sachs* applies with equal force to the second prong of the Commercial Activity Exception as it does to the first.  *United States v. Turkiye Halk Bankasi A.S.*, 16 F.4th 336, 348 (2d Cir. 2021); *In re N. Sea Brent Crude Oil Futures Litig.*, 13-MD-02475(ALC), 2016 WL 1271063, at *6 (S.D.N.Y. Mar. 29, 2016).  The gravamen of Plaintiff's alleged harms is no more based upon *non-commercial* activity that allegedly took place in the United States than it is based upon alleged *commercial* activity that took place in the United States—the gravamen of the suit remains a Russian property dispute from 2013.

4

Moreover, and as discussed in the Russian Defendants' opening brief on this motion (*see* Russian Defs.' Br. in Supp. of Subject-Matter Jur. Mot. to Dismiss (ECF No. 73) ("Supplemental MTD Br.") at 5-6), no non-commercial acts in the United States are alleged to have been taken by the Defendants relating to any cause of action.  Plaintiff all but admits this, arguing this prong of the exception is satisfied by (1) "intimidation and threats to dissuade the Plaintiff from pursuing claims" and (2) acts to "further misappropriate Plaintiff's assets and launder the proceed and ill-gotten [sic] obtained from the divestiture."  Opp. at 5-6.

The first of these arguments, while potentially referencing a non-commercial act, does not constitute an element of any cause of action: Defendants' alleged (and evidently ineffective) intimidation to dissuade Plaintiff from bringing this suit does not underlie any of the nine causes of action related to the loss of Krasnaya Polyana in 2013 or the tenth cause of action for malicious abuse of process related to an arrest in Miami in October 2019.  *See* SAC ¶ 144.  In any event, the gravamen test does not require such a count-by-count analysis.  *Sachs*, 577 U.S. at 396 (describing the approach required in *Nelson*, 507 U.S. 349 (1993) as "[r]ather than individually analyzing each of the Nelsons' *causes of action*, we zeroed in on the core of their *suit*") (emphasis added).

The second argument asserts Defendants engaged in a *commercial* act—the abstruse and irrelevant allegation that Defendants laundered the proceeds from some subsequent sale of ownership in Krasnaya Polyana through the United States—but a commercial act cannot be used for the *non-commercial act* prong of the Commercial Activity Exception.  *See Kensington Int'l, Ltd. v. Itoua*, 505 F.3d 147, 157 (2d Cir. 2007) (second "prong is generally understood to apply to <u>non-commercial</u> acts in the United States that relate to commercial acts abroad.") (emphasis in original) (quotes and citation omitted); Russian Defs.' Br. in Supp. of Initial Mot. to Dismiss

(ECF No. 59) ("Initial MTD Br.") at 6 (explaining the logical incoherence and legal irrelevance of Plaintiff's money laundering allegations). And again, these alleged actions, all of which occurred after the supposed injury to Plaintiff's property was complete, are not the source of the alleged injury and cannot constitute the gravamen of Plaintiff's claim.

> ### 3. The Commercial Activity Exception is Not Satisfied by Allegations of Money Laundering of Proceeds of the Alleged Wrongful Acts

For completeness, Plaintiff also invokes the third and final prong of the Commercial Activity Exception, which permits jurisdiction over actions based "upon an act *outside* the territory of the United States *in connection with* a commercial activity of the foreign state elsewhere [when] that act *causes a direct effect* in the United States." 28 U.S.C. § 1605(a)(2) (emphasis added). In support of this argument, Plaintiff asserts that the Russian Defendants' "actions outside the United States in connection with the commercial activities of divesting Plaintiff's ownership of Krasnaya Polyana…directly caused the transportation of stolen property into the United States and caused funds to be paid into the United States in furtherance of the illegal money laundering scheme." Opp. at 6. Under binding authority, however, this allegation cannot support application of the Commercial Activity Exception. For the third clause of the exception to apply, the gravamen of Plaintiff's complaint must be "in connection with" a commercial activity outside the United States that itself causes a direct effect in the United States. *Barnet v. Ministry of Culture & Sports of the Hellenic Republic*, 961 F.3d 193, 200 (2d Cir. 2020). The "direct effect" must be "an immediate consequence of the defendant's activity." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 618 (1992).

The gravamen of Plaintiff's complaint is the alleged taking of his property in Russia, and that act did not cause the alleged direct effect in the United States. As alleged, the cash from a subsequent sale of ownership in Krasnaya Polyana allegedly laundered through the United States

6

would at most be "ripple effects…at the end of a long chain of causation," far remote from the gravamen of the complaint. *Prime Int'l Trading, Ltd. v. BP P.L.C.*, 784 F. App'x 4, 9 (2d Cir. 2019) (*quoting Virtual Countries, Inc. v. Republic of S. Africa*, 300 F.3d 230, 237 (2d Cir. 2002)); *Garb v. Republic of Poland*, 440 F.3d 579, 587 (2d Cir. 2006) (while every subsequent use of wrongfully obtained funds is "concededly…connected to any subsequent commercial treatment of that property or its proceeds….Such a connection, however, is simply too attenuated, and not substantive enough, to satisfy § 1605(a)(2).")  (cleaned up).

Plaintiff's cases do not disturb this conclusion.  Neither *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1358 (9th Cir. 1988), nor *Wiwa v. Royal Dutch Petroleum Co.*, 96 CIV. 8386 (KMW), 2002 WL 319887 (S.D.N.Y. Feb. 28, 2002), addresses the commercial activity exception to the FSIA.  Rather, they concern the relevance of extraterritorial activity to claims brought under the RICO statute.  Not only do those cases concern a different statute, which does not impose the same requirement of a direct effect in the United States, they were decided before the controlling Second Circuit case law in *Barnet*, *Virtual Countries* and *Garb* interpreting the specific FSIA provision at issue here.[1]

### C.   The Expropriation Exception is Not Applicable Because There was No State Taking or Taking in Violation of International Law

The alleged wrongful transfer of ownership in Krasnaya Polyana cannot fall under the Expropriation Exception to immunity in 28 U.S.C. § 1605(a)(3) because the SAC does not allege the property was taken by the Russian government from a non-Russian, or that any "taking" was

---

[1]    Plaintiff's cases are not even good law for the proposition that a direct effect in the United States is sufficient to create a RICO injury, because a domestic injury, not just a domestic *effect*, must be alleged.  *See Bascuñán v. Elsaca*, 927 F.3d 108, 115 (2d Cir. 2019) ("In *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090 (2016), the Supreme Court held that RICO's private right of action, contained in [18 U.S.C.] § 1964[(c)], does not overcome the presumption against extraterritoriality, and therefore in order to state a claim under the statute, a plaintiff must allege a domestic injury.").

in violation of international law, both of which are required to fall within the exception. Plaintiff's Opposition (at 7) openly admits this, stating the "loss of Plaintiff's ownership interest in Krasnaya Polyana was not an expropriation in violation of international law."  Plaintiff nevertheless claims that, because Krasnaya Polyana was allegedly taken by the Defendants through "reiderstvo" tactics or because Sberbank "was acting at the behest of the Russian state," Plaintiff's claims qualify under the Expropriation Exception.

Plaintiff's argument contravenes recent and binding Supreme Court case law reaffirming that the Expropriation Exception does not apply when property is taken by a state from its own citizens.  *See Fed. Republic of Germany v. Philipp*, 141 S. Ct. 703, 709, 711 (2021) ("a foreign sovereign's taking of its own nationals' property remains a domestic affair").  This "domestic takings" rule is directly applicable, because the Russian Defendants and Plaintiff are citizens of the Russian Federation.  If Plaintiff is correct that there was a taking by the Russian Defendants on behalf of the government, *Philipp* renders the Expropriation Exception inapplicable.

Plaintiff's conclusory assertion that the alleged use of reiderstvo tactics elevates the loss of his ownership interest in Krasnaya Polyana to a violation of international law is wholly unsupported by case law.  *See* Opp. at 7 (baldly asserting that "the SAC establishes that the loss of Plaintiff's ownership in Krasnaya Polyana was a violation of international law").  Even if the underlying "taking" took place by means that may have been unlawful under a country's own domestic law, that does not transform the taking into a violation of *international* law.  *See, e.g.*, *Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 249 (2d Cir. 2003) ("Even if certain conduct is universally proscribed by States in their domestic law, that fact is not necessarily significant or relevant for purposes of customary international law…because the nations of the world have not

demonstrated that this wrong is of mutual, and not merely several, concern.") (internal quotes and citation omitted).

Moreover, as the Supreme Court held in *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312 (2017), a case inaptly relied upon by Plaintiff, it is not sufficient to merely argue that a taking violated international law.  Rather, "[w]here…the facts are not in dispute, those facts bring the case within the scope of the expropriation exception only if they do show (and not just arguably show) a taking of property in violation of international law.  Simply making a nonfrivolous argument to that effect is not sufficient."  137 S. Ct. at 1324.  Plaintiff has not come close to alleging facts or establishing as a matter of law the alleged tactics used to "take" his assets were in violation of international law, and he therefore has not met the requirements necessary to apply the Expropriation Exception.  *See* Initial MTD Br. at 28-30 (illustrating no claims in the SAC allege violations of international law).

## II.    Mr. Gref is Entitled to Immunity Because the Second Amended Complaint Alleges He was Acting Within the Scope of His Authority

Plaintiff's Opposition does not dispute Sberbank is the real party in interest in this suit. For that reason alone, Mr. Gref should be dismissed from this action.  *See* Supplemental MTD Br. at 11-12.

The Opposition (at 8-9) confines itself to arguing, contrary to all allegations in the SAC, that Mr. Gref was acting outside the scope of his authority as CEO and chairman of Sberbank in his alleged negotiations with Plaintiff—which resulted in his employer (Sberbank) increasing its ownership stake in the property at issue—and in his alleged settlement negotiations with Plaintiff five years later concerning Sberbank's same property interest.[2]

---

[2]    Opp. at 3 also asserts that "Gref's activities satisfy the 'commercial activity' exception of the FSIA."  This cannot be so, since the FSIA does not apply to individuals, and the Commercial Activity Exception does not apply to common law immunity defenses for individuals acting in

Mr. Gref is immune from the SAC's causes of action by common law immunity, which covers both "governmental" and "commercial" acts.  An individual's actions that fall "within the scope of authority or under color of" governmental authority are cloaked with immunity, and this is true "even if the act were unauthorized by the responsible national authorities and even if [the act is] forbidden by [international] law."  *See First Fidelity Bank, N.A. v. Gov't of Antigua & Barbuda-Permanent Mission*, 877 F.2d 189, 193 (2d Cir. 1989).  Alternatively, when an individual's acts are arguably commercial, "agency law…provides the proper framework for" determining if common law immunity is applied to acts on behalf of an agency or instrumentality.  *Id.*  The agency analysis, in turn, considers the "extent and scope" of the agency relationship between the agent (Mr. Gref) and the principal (Sberbank), and the agent acting with either actual authority granted by the principal or apparent authority is sufficient.  *See Reiss v. Societe Centrale Du Groupe Des Assurances Nationales*, 246 F. Supp. 2d 273, 282 (S.D.N.Y. 2003).[3]

Whether his actions are characterized as governmental activity, in furtherance of the Russian Federation's objectives, or commercial activity, the SAC's non-conclusory allegations establish that Mr. Gref was acting under the direction and control of Sberbank and within his authority as CEO and chairman.  *See, e.g.*, SAC ¶¶ 49 ("under SberBank's [sic] initiative…SberBank's [sic] Chairman Herman Gref…[directed] a 100% subsidiary of SberBank

---

their official capacity.  *See Weiming Chen v. Ying-Jeou Ma*, 12 civ. 5232 (NRB), 2013 WL 4437607, at *4 (S.D.N.Y. Aug. 19, 2013).

[3]      Apparent authority exists when "(1) conduct occurs that could reasonably be interpreted to cause people to believe that the principal conferred authority; and (2) the circumstances of the transaction suggest that the party relying on the apparent authority fulfilled a duty to inquire into the scope of the agent's ability to engage in the disputed transaction."  *Anglo-Iberia Underwriting Mgmt. Co. v. Jamostek*, 97 Civ. 5116, 1998 WL 289711, at *3 (S.D.N.Y. June 4, 1998) (*citing First Fidelity Bank*, 877 F.2d at 193-94) (cited in Opp. at 8).

[sic] [to become] the investor in 'Krasnaya Polyana.'"); 30-31 ("The DEFENDANTS are and were, during all relevant times, responsible for the acts and omissions of their employees, for acts undertaken within the general area of their authority and for the benefit of the DEFENDANTS...DEFENDANTS have undertaken responsibility for the acts of the employees of the DEFENDANTS, wherever taken.").

Even crediting the SAC's conclusory allegations that Mr. Gref was motivated to act for personal reasons, *see, e.g.*, SAC ¶ 167 (p. 32) ("Each Defendant crony herein was a direct beneficiary of the de-privatization present in this case."), Mr. Gref's acts were at a minimum also allegedly for the benefit of his employer, and therefore entitled to immunity. *See Kline v. Kaneko*, 685 F. Supp. 386, 389 (S.D.N.Y. 1988) (despite claims the "expulsion of Kline from Mexico was a personal act, accomplished without any authority of law," court held Mexico's Secretary of Government acted pursuant to his official duties, and was therefore entitled to immunity); *Leutwyler v. Office of Her Majesty Queen Rania Al Abdullah*, 184 F. Supp. 2d 277, 287 (S.D.N.Y. 2001) (in determining whether acts are official or personal, the Court must be mindful of "the nature of the individual's alleged actions, rather than the alleged motives underlying them.") (quotes and citation omitted).

Even if he were not acting under actual authority, the SAC establishes that Plaintiff understood, based on actions by Sberbank and Mr. Gref, that Mr. Gref acted with at least apparent authority.  SAC paragraph 72, for example, alleges a negotiation in February 2013 among the parties, which included "participation of SberBank [sic] Chairman Herman Gref."  At the meeting "it was agreed" a portion of the property would be "allocated and transferred to SberBank [sic]."  Nothing in the SAC or Plaintiff's Opposition calls into question the implication that Mr. Gref was acting with actual authority by virtue of his position as CEO and chairman to

negotiate and bind Sberbank to an agreement with Plaintiff.  Moreover, Plaintiff would have understood Mr. Gref to have been acting on behalf of Sberbank when negotiating on Sberbank's behalf.  Where a chairman negotiates an agreement on behalf of a company, that person inarguably exercises apparent authority.  *See Chiat/Day Direct Mktg. v. Nat'l Car Rental Sys.*, 93 Civ. 2717 (JFK), 1994 WL 524982, at *4 (S.D.N.Y. Sept. 27, 1994) ("no reasonable jury could find that [plaintiff] was not entitled to rely upon the apparent authority of [defendant]'s Chairman, who negotiated the contract").

Plaintiff's cases, Opp. at 8, are not to the contrary.  Plaintiff cites *Anglo-Iberia* for the proposition that acts that "are illegal or not in furtherance of the interest of the sovereign" do not confer immunity on an individual.  *Anglo-Iberia* says nothing about "interests of the sovereign," but concerns the actual or apparent authority of an individual to act on behalf of an Indonesian corporation that was presumptively immune as an agency or instrumentality.  The court found no actual authority could exist, because the reinsurance activity at issue was barred by Indonesian law, but did not conclude apparent authority was not present, because of evidentiary disputes concerning the declarations supporting that argument.  *Anglo-Iberia*, 1998 WL 289711, at *3-5.  Here, there is no non-conclusory allegation that Mr. Gref's acts were illegal, and Plaintiff has proffered no declarations or other evidence suggesting that Plaintiff doubted Mr. Gref was acting on Sberbank's behalf.  Rather, as noted above, the SAC alleges the exact opposite: that Mr. Gref was vested with actual authority in his official capacity as Sberbank's CEO, and Plaintiff must have understood that to be the case in negotiating a deal with Mr. Gref that was for the benefit of Sberbank.

Plaintiff also cites *Cabiri v. Assasie-Gyimah*, 921 F. Supp. 1189, 1198 (S.D.N.Y. 1996) and *Xuncax v. Gramajo*, 886 F. Supp. 162, 175 (D. Mass. 1995), apparently for the proposition

12

that heinously illegal acts cannot be within the scope of any individual's authority. These cases concern the torture of plaintiffs by the defendants, when (in both cases) defendants did not assert that their acts were within the scope of their legal authority. The non-conclusory allegations relevant to the causes of action in this case, specifically the negotiations concerning ownership of Krasnaya Polyana and the much later-in-time allegation of malicious abuse of process in trying to have Plaintiff arrested in Miami in 2019, are entirely distinct from allegations of torture, which holds a distinct and abhorred status under international law.[4] Moreover, unlike the allegations in *Cabiri* and *Xuncax*, the allegations concerning Mr. Gref, as discussed above, have all the indicia of having taken place under actual or at least apparent authority.

## III.   The Court Should Deny Plaintiff's Request for Jurisdictional Discovery Because There are No Factual Disputes to be Resolved

Plaintiff's fallback request for jurisdictional discovery improperly seeks to shift the burden of establishing subject-matter jurisdiction on to the Russian Defendants. Contrary to Plaintiff's Opposition (at 8-9), the Russian Defendants do not bear initial the "burden to show they were not engaged in commercial activity." Rather, Sberbank need only "present[] a prima facie case that it is a foreign sovereign," *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir. 1993), and the burden then falls on Plaintiff to show that an exception to that immunity applies, *Virtual Countries*, 300 F.3d at 242. No discovery is needed to establish Sberbank's status as an agency or instrumentality of the Russian Federation, and Mr. Gref's

---

[4]    The SAC presents entirely conclusory and implausible allegations that "Defendants" participated in attempting to poison Plaintiff, *see, e.g.*, SAC ¶ 151 ("It was established by Plaintiff that he was poisoned and the poisoning was linked to the persecution against him by the Defendants and the unlawful taking of his assets."); *see also* SAC ¶ 123, but no allegation specifically and non-conclusorily links Mr. Gref (as opposed to "Defendants" generically) to the alleged poisoning. In any event, the unsupported poisoning allegation is entirely unrelated to the causes of action alleged in the SAC. *See* Initial MTD Br. at 3-7 (identifying allegations relevant to the SAC's causes of action); Supplemental MTD Br. at 5-6 (analyzing causes of action for their factual basis).

status as the Chairman and CEO of Sberbank, because there are no disputed facts with respect to that status.

Nor is jurisdictional discovery appropriate with respect to the applicability of any exception to immunity under the FSIA or otherwise, as Plaintiff cannot identify any disputed facts material to that analysis.  As demonstrated above and in the Russian Defendants' moving brief, the inapplicability of the various exceptions to immunity are apparent on the face of the SAC, even when accepting all of the SAC's allegations as true.  The rule "in the FSIA context [is] discovery should be ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination."  *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 486 (2d Cir. 2007).  Because the SAC does not make out a prima facie case for jurisdiction, and Plaintiff has not identified any specific disputed facts relevant to the applicability of any exception to immunity, jurisdictional discovery is inappropriate.  *Cf. Funk v. Belneftekhim*, 861 F.3d 354, 366 (2d Cir. 2017) (holding district court was within its discretion to order jurisdictional discovery when the plaintiff had made out a prima facie case for jurisdiction but were not "yet entitled to discovery as to whether the commercial activity exception applies") (internal quotes omitted).

For these reasons, the Court should deny Plaintiff's request for jurisdictional discovery outright.  But even if the Court identifies material disputed facts relevant to the immunity determination, the Court should consider Plaintiff's request for discovery only after ruling on the numerous other grounds for dismissal presented in the Defendants' pending motions to dismiss.  *See, e.g.*, *Butcher v. Wendt*, 975 F.3d 236, 242 (2d Cir. 2020) ("[W]e may assume hypothetical jurisdiction where the jurisdictional issue is statutory in nature.").

**<u>CONCLUSION</u>**

For these reasons, the Court should dismiss the SAC as to Sberbank and Herman Gref.


Dated: New York, New York
February 16, 2022

Respectfully submitted,

DEBEVOISE & PLIMPTON LLP

By: */s/ William H. Taft V*
   Mark P. Goodman
   William H. Taft V
   mpgoodman@debevoise.com
   whtaft@debevoise.com

   919 Third Avenue
   New York, New York 10022
   (212) 909-6000

   *Counsel for Defendants Sberbank of Russia
   and Herman Gref*