**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

AKHMED GADZHIEVICH BILALOV,

                    Plaintiff,

             -against-

HERMAN GREF, SBERBANK CIB USA, INC.,
SBERBANK OF RUSSIA PJSC, and DOES 1-
100 inclusive,

                  Defendants.

---

20-Civ-09153 (AT) (JW)

---

**PLAINTIFF AKHMED BILALOV'S**
**MEMORANDUM OF LAW IN SUPPORT OF HIS *EX PARTE***
**EMERGENCY MOTION FOR AN ASSET FREEZE AND OTHER RELIEF**

Respectfully Submitted,

*/S/ Irina Shpigel*
Irina Shpigel
Shpigel Law, P.C.
*Attorney for Plaintiff*
250 Greenwich Street, 46th Floor
New York, New York 10007
E-mail: ishpigel@iselaw.com
T 212-390-1913
F 646-355-0242

March 8th, 2022

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT..................................................................................1

II.     STATEMENT OF FACTS ....................................................................................2

III.    ARGUMENT ....................................................................................................3

        A.      The Standard for Ordering a Freeze Over Defendants'
                Assets and Accounts ..........................................................................3

                1.      The Court Has the Authority to Issue a Seizure Order and
                        Injunctive Relief *Ex
                        Parte*...…………………………………………….1
                2.      *Ex Parte* Relief is Essential…………………………………………...5

        B.      Plaintiffs are Highly Likely to Succeed on the Merits of Their Claim ........7

                1.      Sberbank and Gref are Not Immune Under the Foreign Sovereign
                        Immunities Act…………………………………………………………7

                2.      New York is an Adequate Forum ...................................................9

                3.      Plaintiff has pled Civil RICO ..........................................................9

                        a.      Extraterritoriality……………………………………………...9

                        b.      The SAC Alleges Harm to Business or Property……………..10

                        c.      Plaintiff has Alleged a Pattern of Racketeering Activity……...11

                        d.      Plaintiff Adequately Pled Mail and Wire Fraud……………....11

                        e.      Association in Fact Enterprise…………………………………...13

                        f.      Civil RICO Conspiracy………………………………………..13

                4.      The Alien Tort Statute……………………………………………...13

                5.      Plaintiff's State Law Claims……………………………………...15

        C.      Plaintiff Faces the Immediate Prospect of Immense and Irreparable
                Harm……………………………………………………………………......15

        D.      The Balance of the Hardships Strongly Favors Plaintiff……………….......16

        E.      The Relief Requested Will Not Harm the Public Interest…………………...17

IV.     CONCLUSION ...................................................................................................17

## TABLE OF AUTHORITIES

### CASES

*Alfidda v. Fenn*, 935 F.2d 475, 479 (2d Cir. 1991)..........................................................................9

*AmCan Co. v. Manuskhani,* 742 F.2d 314 (7th Cir. 1984)...............................................................5

*Balintulo v. Ford Motor Co*., 796 F.3d 160 (2d Cir. 2015)...........................................................14

*Briggs & Stratton Corp. v. Chonquing Rato Power Co., Ltd.*,   2013 WL 3972391, *1 n.4
(N.D.N.Y. July 23, 2013)............................................................................................................4,17

*Citigroup Global Mk.ts., Inc. v. VCG Special Opportunities Master Fund, Ltd.*,
598 F.3d 30 (2d Cir. 2010)..............................................................................................................17

*Corning Glass Works v. Jeanette Glass Co.*, 308 F. Supp. 1321 (S.D.N.Y. 1970)......................17

*De Beers Consolidated Mines, Ltd. v. United States*, 325 U.S. 212 (1945)......................................7

*FTC v. Affordable Media, LLC*, 179 F.3d 1228 (9th Cir. 1999) ......................................................7

*Firemen's Ins. Co. of Newark, New Jersey v. Keating*, 753 F. Supp. 1146 (S.D.N.Y. 1990)............16

*Golden Krust Patties, Inc. v. Bullock*, 957 F. Supp. 2d 186, 194 (E.D.N.Y. 2013).......................4

*Granny Goose Foods, Inc. v. Brd Of Teamsters &Auto Truck Drivers Local No. 70,* 415 U.S. 423 (1974)....4

*Itek Corp. v. First National Bank,* 730 F.2d 19 (1st Cir. 1984*)*...................................................16

*Kiobel v. Royal Dutch Petroleum Co*., 569 U.S. 108 (2013)...........................................................14

*Licci by Licci v. Lebanese Canadian Bank*, 834 F.3d 201 (2d Cir. 2016)......................................14

*Madanes v. Madanes*, 981 F. Supp. 241 (S.D.N.Y 1997)...............................................................10

*Mason Tenders Dist. Council Pension Fund v. Messera* 1997 WL 223077, (S.D.N.Y.
1997)...................................................................................................................................................3

*N Face Apparel Corp. v. Fujian Sharing Imp. & Exp. Ltd.,* No. 10-civ-1630, slip op. at 1-4 (S.D.N.Y. Mar.
2, 2010)................................................................................................................................................5

*Piper Aircraft v. Reyno*, 454 U.S. 254 (1981)..................................................................................9

*United States v. Philip Morris USA Inc.*
566 F.3d 1095 (D.C. Cir. 2009)......................................................................................................13

*SEC. Citigroup Global Mias. Inc.,* 673 F.3d 158(2d Cir. 2012) ....................................................4

*SEC v. Gonzalez de Castilla*, 145 F. Supp. 2d 402 (S.D.N.Y. 2001)...............................................7

*Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328 (2d Cir. 1995)……………………………………………..…….16

*Spira v. Nick*, 876 F. Supp. 553 (S.D.N.Y.  1995)……..………………………………………………....12

*Sumitomo v. Chase Manhattan Bank*, 2000 WL 1616960, at *2 (S.D.N.Y. 2000)………............……...10

*In Sumitomo Copper Litig.,* 995 F. Supp. 451  (S.D.N.Y. 1998)...……..………………………..………12

*Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010), ....................................................……...………..5,17

*Virtual Countries, lnc. v. Republic of South Africa*, 300 F.3d 230 (2d Cir. 2002)…………………….......9

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966)……………………………………………15

*WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275 (2d Cir. 2012),,.…………………………………………..……..17

*Matter of Vuitton et Fils S.A.,* 606 F.2d 1 (2d Cir. 1979)……………..……………………………..…….5,6

## STATUTES AND REGULATIONS

31 C.F.R. § 587 (March 1st, 2022) ..........................................................................................4,6

31 C.F.R. §589 (March 2nd, 2022). ..........................................................................................4,6

28 U.S.C. § 1651 ........................................................................................................................5

28 U.S.C. § 1602-1607………………………………………………………………..………..9

18 U.S.C §1961……………………………………………………………………………....11

18 U.S.C §1962……………………………………………………………………………….13

28 U.S.C. §1350…..………………………………………………………………………..….14

28 U.S.C. §1367……………………………………………………………………….…..…..15

Executive Order 13661…………………………………………………………………..…..…..7

S.D.N.Y Local Rule 6.1(d)……………………………………………………………..…..….6

Fed. R. Civ. P. 65…..…………………………………………………………………..……..4,5

## OTHER SOURCES

*2020 DOS Report on Human Rights on Russia*……………………………………… … … … …10

Reuters, *Russian Rouble Hits New Lows in Volatile Trading*, (March 3rd, 2022)………………….……6

Plaintiff Akhmed Gadzhievich Bilalov (hereinafter "Mr.Bilalov" or "Plaintiff") respectfully submits this memorandum of law in support of his *ex parte* emergency motion, by proposed order to show cause, against defendants Herman Gref, Sberbank CIB, USA, Sberbank of Russia PJSC (collectively, "Sberbank Defendants"). Mr. Bilalov seeks an order (1) freezing the assets that are owned by or under the control of Sberbank Defendants, (2) permitting immediate discovery of documents from Sberbank Defendants, and (3) preventing Entity Defendants from destroying or altering documents.

## I.      PRELIMINARY STATEMENT

Plaintiff brought forth the claims in the Second Amended Complaint ("SAC") as a direct result of Defendants' conspiracy throughout Russia and in New York, perpetrated by the Sberbank Defendants, aimed to defraud Mr. Bilalov of his ownership interest of Krasnaya Polyana AO by using tactics classified as "Reiderstvo" which include coercion, fraud, money laundering, and attempted assassination via mercury poisoning. This action is based upon, *inter alia*, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), which was specifically intended by Congress to eradicate organized crime on all fronts (including in foreign and interstate commerce) and to deprive violators of their ill-gotten gains.

On February 24, 2022 Russian forces attacked Ukraine. In response, the United States, announced sanctions on Russia after finding that the Russian Federation's actions were "unjustified, unprovoked" and that the war against Ukraine is "unconscionable…in violation of international law… and constitutes an unusually and extraordinary threat to the national security and foreign policy of the United States". *See* 31 C.F.R. 587.

In light of these events, unless this Court orders an asset freeze on Defendants' assets, Defendants will not be able to satisfy of an eventual monetary judgment.

1

## II.   <u>STATEMENT OF FACTS</u>

The Second Amended Complaint alleges that the Defendants unjustifiably and through force took Plaintiff's shares of his company Krasnaya Polyana, and thereafter attempted to poison him with Mercury. He escaped to the United States, under threat of bodily injury and death. SAC at ¶¶ 75- 124.

The SAC alleges that in late Spring 2018 while Plaintiff was in New York, he contacted Gref to negotiate a settlement of his claims regarding the unlawful taking of Krasnaya Polyana SAC at ¶126-28. Plaintiff further alleges, that Defendant Gref threatened and intimidated Plaintiff with bodily harm, and political retaliation through his Russian associates, to give up his claim against Defendants SAC at ¶127, 137-142. Thereafter, the SAC alleges that when Plaintiff continued to pursue his claims Defendants provided false, unfounded, politically motivated accusations to Interpol, in order to prevent him from filing claims against Defendants. SAC at ¶ 131.

While in Miami in October 2019 Plaintiff was "wrongfully arrested based on the false information provided by Defendants to Interpol and to the United States Department of HomelandSecurity ("DHS")." SAC at ¶ 144. Plaintiff filed an appeal with Interpol. SAC at ¶145. After an investigation, Interpol removed the diffusion because Plaintiff was found to be a collateral victim of a politically and improperly motivated persecutory campaign. SAC at ¶145-47. Plaintiff further alleges that "Defendants through intermediaries, provided money or things of value to foreign officials to obtain an Interpol red notice and/or diffusion against Bilalov. Through their actions Defendants proximately and directly resulted Bilalov to be detained. As a direct and proximate result of Defendants wrongful conduct asspecified above,

Plaintiff Bilalov suffered damages to his reputation and suffered a loss of employment opportunities. SAC at ¶179.

This action followed. In February 24th, 2022 Russian forces invaded Ukraine. As a result the United States implemented a series of sanctions. These sanctions targeted high-ranking Russian officials and their families, state-owned enterprises, and Russia's financial sector—including sanctions on Sberbank PJSC Public Joint Stock Company Sberbank of Russia (Sberbank of Russia PJSC). *See* Russian Harmful Foreign Activities Sanctions Regulations, 31 C.F.R. § 587 (March 1st, 2022); Ukraine Related Sanctions Regulations, 31 C.F.R. §589 (March 2nd, 2022).

Russia's egregious actions have galvanized a united response from U.S. partners around the world. The European Union, United Kingdom, Canada, Australia, Japan, South Korea, and Taiwan have all announced their own sanctions and export controls. As a result, more economic sanctions against Russia, Sberbank and Herman Gref are imminent. Therefore, an asset freeze is appropriate, particularly to prevent the dissipation or removal of funds to foreign accounts or elsewhere, which would also thwart satisfaction of an eventual monetary judgment.

## III.   ARGUMENT

### A.  The Standard for Ordering a Freeze Over Sberbank Defendants' Assets and Accounts

This Court's inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief encompasses temporary injunctions. *Mason Tenders Dist. Council Pension Fund v. Messera*, No. 95 Civ. 9341, 1997 WL 223077, at *7 n. 19 (S.D.N.Y. May 1, 1997) (*quoting Reebok Int'l, Ltd v. Marnatch Enters., Inc.,* 970 F.2d 552,559 (9th Cir. 1992)). Rule 65 of the Federal Rules of Civil Procedure authorizes the Court to issue injunctions binding parties, parties' officers, agents, servants, employees, and attorneys and any "other persons who are in

active concert or participation with" those previously listed. *See* Fed. R. Civ. P. 65(d)(2). Further, this Court "may issue all writs necessary or appropriate in aid of [its] ...   jurisdiction[  ]   and agreeable to the usages and principles of law." *See* 28 U.S.C. § 1651(a); *see also Matter of Vuitton et Fils S.A.,* 606 F.2d 1, 3 n.5 (2d Cir. 1979).

The applicable standards for a TRO and preliminary injunction are the same. Either form of interim relief is appropriate upon a showing that (1) the movant will suffer irreparable harm in the absence of such relief and (2) either a likelihood of success on the merits or "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief" *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.,* 696 F.3d 206, 215 (2d Cir. 2012) (*citation and quotation marks omitted*).

In addition, (3) the "court must consider the balance of hardships between the plaintiff and defendant," *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010), and (4) "ensure that the injunctive provisions of the order do not harm the public interest," *Briggs & Stratton Corp. v. Chonquing Rato Power Co., Ltd.*, No. 13-cv-316, 2013 WL 3972391, *1 n.4 (N.D.N.Y. July 23, 2013). *See SEC v. Citigroup Global Mias. Inc.,* 673 F.3d 158, 163 n.1 (2d Cir. 2012); *Golden Krust Patties, Inc. v. Bullock*, 957 F. Supp. 2d 186, 194 (E.D.N.Y. 2013).

**1.  This Court Has the Authority to Issue a Seizure Order and Injunctive Relief *Ex Parte.***

Rule 65 of the Federal Rules of Civil Procedure sets forth that this Court has the authority to grant an *ex parte* TRO where the moving party sets forth facts that demonstrate an immediate and irreparable injury and show good cause why notice should not be required. Fed. R. Civ. P. 65(b)(l); see *Granny Goose Foods, Inc. v. Brd Of Teamsters &Auto Truck Drivers Local No. 70,* 415 U.S. 423,439 (1974) ("*Ex parte* temporary restraining orders are no doubt necessary in certain circumstances").

This Court's Local Rule 6.l(d) requires "a clear and specific showing by affidavit of good and sufficient reasons why a procedure other than by notice of motion is necessary, and stating whether a previous application for similar relief has been made." L.R. 6.l(d). *See* Shpigel Rule 6.1(d) Declaration.

Courts will grant Rule 65(b) *ex parte* injunctive relief in two situations: (1) when notice is impossible because plaintiff cannot identify defendants or their locations; or (2) a showing that proceeding *ex parte* is the only method that will provide plaintiff with effective relief. See *Matter of Vuitton,* 606 F.2d  at 5; *Am. Can Co. v. Manuskhani,*  742 F.2d 314, 322 (7th Cir. 1984); *TRO, N Face Apparel Corp. v. Fujian Sharing Imp. & Exp. Ltd.,* No. 10-civ-1630, slip op. at 1-4 (S.D.N.Y. Mar. 2, 2010) (Dkt. No.15) (hereinafter "Fujian TRO"). In the case at bar as further alleged in the Shpigel Declaration, Plaintiff has made a showing that proceeding *ex parte* is the only method that will provide plaintiff with effective relief. *See* Shpigel Rule 6.1(d)  Declaration.

**2.  *Ex Parte* Relief is Essential**

The extraordinary circumstances of this case demonstrate that good cause exists for granting the *ex parte* relief requested. Indeed, for a TRO to be effective at all, the Court must grant Plaintiffs application *ex parte.* The sanctions imposed on Russia and Sberbank PJSC, will impose enormous costs on Russia's economy, effectively cutting it off from international capital, triggering a currency crisis, and a potential banking crisis. Although sanctions have not been issued against Sberbank and Herman Gref the situation is evolving, and as the fight in Ukraine continues, further sanctions are strongly projected.

For example, the sanctions against several banks in Russia, include cutting off the Russian banks from SWIFT and certain transactions. *See* Russian Harmful Foreign Activities Sanctions Regulations, 31 C.F.R. § 587 (March 1st, 2022); Ukraine Related Sanctions Regulations, 31 C.F.R.

§589 (March 2nd, 2022). As of March 2, 2022 the Russian ruble had fallen more than 30 percent against the dollar compared to before the sanctions. Reuters, *Russian Rouble Hits New Lows in Volatile Trading*, (March 3rd, 2022). As of March 8th, 2022, the U.S has prohibited imports of Russian Oil. See March 8th, 2022 *Executive Order on Prohibiting Certain Imports and New Investments with Respect to Continued Russian Federation Efforts to Undermine the Sovereignty and Territorial Integrity of Ukraine.* 31 C.F.R. §589.

The U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC) designated Russian government officials, members of the Russian leadership's inner circle, pursuant to Executive Order (E.O.) 13661. E.O. 13661 authorizes sanctions on, among others, officials of the Russian Government and any individual or entity that is owned or controlled by, that has acted for or on behalf of, or that has provided material or other support to, a senior Russian government official.

Those being designated are individual who are acting for or on behalf of or materially assisting, sponsoring, or providing financial, material, or technological support for, or goods or services to or in support of, a senior official of the Government of the Russian Federation.

Here, Sbebank is partially owned by the State, and Herman Gref is a Russian politician and businessman. In January 2018, Gref was added to the U.S. Treasury's "Kremlin list", a list of 210 officials, politicians and businessmen believed to be close to Vladimir Putin. According to the US Department of Treasury, the list is not a sanctions list and no restrictions are automatically imposed on its subjects.

A freeze on the assets that are under the control, or held in the name of, the Sberbank Defendants, is therefore both necessary and appropriate. Without such a freeze, based upon the

reality of the economic sanctions against Russia, it is highly likely that Bilalov would never be able to recover a judgment against the Defendants.

Furthermore, the Sberbank entities have already demonstrated that any notice of such an action, would likely result in Defendants' moving their accounts and dissipating or transferring their funds beyond this Court's jurisdiction. *See, e.g., SEC v. Gonzalez de Castilla*, 145 F. Supp. 2d 402, 420 (S.D.N.Y. 2001). *De Beers Consolidated Mines, Ltd. v. United States,* 325 U.S. 212, 215–16 (1945) (holding, in antitrust action, that "sequestration of [defendants'] property is the only means of enforcing this Court's orders or decree against said foreign corporate defendants. The principal business of said defendants is carried on in foreign countries and they could quickly withdraw their assets from the United States and so prevent enforcement of any order or decree which this Court may render.")). *See also FTC v. Affordable Media. LLC*, 179 F.3d 1228, 1236 (9th Cir. 1999) (upholding district court's freeze where defendant's priorconduct included "history of spiriting their commissions away to a Cook Island trust").

**B.  <u>Plaintiff is Likely to Succeed on the Merits of Their Claims</u>**

Plaintiff Akhmed Bilalov has alleged ten causes of action against Defendants.  Plaintiff has alleged Civil RICO (Count I- IV), Fraud (Count V), Conspiracy to Commit Fraud (Count VI), Unlawful Conversion (Count VII), Malicious Abuse of Process (Count VIII), Unjust Enrichment (Count IX), Alien Actions for Torts (Count X). [ECF Dkt. 51].

1.  <u>Sberbank and Gref are Not Immune Under the Foreign Sovereign Immunities Act</u>

Under the Foreign Sovereign Immunities Act (the "FSIA"), 28 U.S.C. §§ 1330, 1602–1611, a foreign state, including its agencies and instrumentalities, is immune from jurisdiction unless an exception set forth in the FSIA applies. 28 U.S.C. § 1604. Exceptions to the FSIA are set forth in 28 U.S.C. §§ 1605-1607.

The Court has  jurisdiction under the second prong of § 1605(a)(2) over acts committed "in connection with" a commercial activity of the foreign state elsewhere, namely the tortious acts committed in New York between May 2019 and August 2019  wherein Defendants' used intimidation and threats to dissuade the Plaintiff from pursuing claims against them relating to the divestiture of Krasnaya Polyana and to further misappropriate Plaintiff's assets and launder the proceed and ill-gotten obtained from the divestiture.

The exception to immunity in 28 U.S.C. § 1605(a)(3) for certain cases involving  "rights in property taken in violation of international law" when the property is used in the United States  for commercial activity or owned by an agency or instrumentality engaged in commercial activity in the United States (the "Expropriation Exception") is applicable in the case at bar. Here, the  SAC establishes that the loss of Plaintiff's ownership in Krasnaya Polyana was a violation of international law. Sberabank and Gref divested Plaintiff of his assets in Krasnaya Polyana under threat of death and torture and further made good on that promise by a well-documented attempt to poison Plaintiff with Mercury. RT. *German Doctors Suspect Poisoning of Former Russian Olympic Official* (April 30, 2013) (https://www.rt.com/russia/former-official-olympics-russian-611/).

 Gref is likewise not entitled to immunity because he was acting outside the scope of his authority. Gref has not presented any evidence of his authority to commit the predicate acts alleged in the  SAC  including  divestiture  of  property,  money  laundering,  malicious prosecution,  and  fraud, and other acts alleged by the Plaintiff.

Gref bears the burden of proof to establish that the affirmative defense of immunity protects-them from his lawsuit, which he has failed to provide. *See generally, Virtual Countries, lnc. v. Republic of South Africa*, 300 F.3d 230, 241-42 (2d Cir. 2002).

2.  New York is an Adequate Forum

New York is an adequate forum. An adequate forum is simply one that offers a remedy for the claim and will treat the plaintiff with a basic level of fairness. *See Piper Aircraft v. Reyno*, 454 U.S. 254-55(1981). According to the Department of State's  Russia Country Report on Human Rights Practices for 2020 the Russian court system is very corrupt and Russia lacks an independent judiciary.  *See generally   2020 DOS Report on Human Rights on Russia*. Furthermore, the Report published by the Department of State indicated that like the Plaintiff, other victims of Russia's corrupt government experienced similar treatment, which included poisoning (A. Navalny who was poisoned and on his return to Russia for what he assumed to be a fair trial was detained and sentenced by a tribunal which the U.S. and E.U. condemned and determined to be a biased and corrupt court). *See 2020 DOS Report on Human Rights on Russia*, at page 48. According to the Report, "Corruption was widespread throughout the executive branch, including within the security sector, as well as in the legislative and judicial branches at all levels." *See 2020 DOS Report on Human Rights on Russia*, at page 48.

3.  Plaintiff has Pled Civil RICO

a.  Extraterritoriality

The mere fact that the corporate defendants are foreign entities does not immunize them from the reach of RICO." *See Alfadda v. Fenn*, 935 F.2d 475, 479 (2d Cir. 1991). The defendants' commission of predicate acts within the United States provided a basis for subject matter jurisdiction for the RICO claims. *Id*. at 480; *see also Sumitomo v. Chase Manhattan Bank*, 2000 WL 1616960, at *2 (S.D.N.Y. Oct. 30, 2000). Defendants have committed predicate acts which did take place in the United States including the transfer of funds in and out of the United States and wire communications between people in the United States,

including mail and wire communications between Plaintiff and the head of Sberbank Bank and his representatives while Plaintiff was located in New York. Further, Plaintiff has alleged, that Defendants used the mails and wires in order to make a false and fraudulent report to Interpol regarding Plaintiff.   Given that the transactions at issue are alleged to be for the benefit of a major United States corporation with its headquarters in New York, Sberbank CIB USA there is an ample basis for the exercise of United States jurisdiction over these transactions. *Alfadda*, 935 F.2d at 480 (citation omitted); *Madanes v. Madanes*, 981 F. Supp. 241, 251-52 (S.D.N.Y. 1997).

     b.  The Sac Alleges Harm to Business or Property.

Plaintiff has alleged a harm to business or property. Plaintiff has alleged that he is a former Russian Olympics Official.  Defendants' actions in submitting falsified reports to Interpol, which led to his detention and the subsequent press coverage of the incident directly led Plaintiff to suffer a loss of business and reputation in the United States. SAC at ¶131.

Likewise, Plaintiff suffered a domestic injury when Defendants employed threat of force to discourage Plaintiff from pursuing his claims against them.  SAC at ¶178.

"Where a civil RICO plaintiff alleges separate schemes that harmed materially distinct interests to property or business, each harm — that is to say, each "injury" — should be analyzed separately." *Bascunan v. Elsaca*, Here Plaintiff has alleged a domestic injury. Plaintiff has alleged violations of the CorruptPractices Act. SAC at ¶ F, pp 39 and Hobbs Act Extortion, SAC at ¶ I, pp 42 which both occurred inthe United States.

c.  Plaintiff has alleged a Pattern of Racketeering Activity

Section 1961(5) of RICO provides the statutory definition of a "pattern of racketeering activity" as requiring "at least two acts of racketeering activity . . . the last of which occurred within ten years after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). Racketeering activity, in turn, is defined as an act that violates any of the federal or state laws enumerated in the RICO statute.  18 U.S.C. § 1961(1).

Plaintiff pleads that between March 2013 and Defendants until October 2019 the Defendants have committed at least nine (9) predicate acts including (1) Money Laundering (18 U.S.C. §§1956(a)(1), 1961(1)(B)), (2) International Money Laundering (18 U.S.C. §§ 1956(a)(2), 1961(1)(B)), (3) Conspiracy to Engage in Money Laundering 18 U.S.C. §§ 1956(h), 1961(1)), (4) Money Laundering 18 U.S.C. §§ 1957, 1961(1)), (5) Money Laundering of Proceeds of Offenses Against a Foreign Nation Involving a Scheme to Defraud Foreign Banks. (18 U.S.C. § 1956(c)(7)(B)(iii), (6) Money Laundering of Proceeds of Violations of Foreign Corrupt Practices Act. (18 U.S.C. § 1956(c)(7)(D); 18 U.S.C. § 1961(1)(B)), (7) Wire fraud and mail fraud. (18 U.S.C. §§ 1341, 1343, 1961(1)(B)), (8) Violation of the Travel Act. (18 U.S.C. §§ 1952,1961(1)(B)), and (9) Hobbs Act Extortion (18 U.S.C. 1951). *See* SAC ¶87 - ¶144.

In the instant case, Plaintiff has pled that the Defendants are insiders, therefore Gref, Sberbank US and Sberbank of Russia are co-conspirators and insiders. Russian Defendant Gref is and was the CEO of Sberbank of Russia and was likewise directly involved. *See* the SAC at ¶ 28. Plaintiff has alleged that he communicated and negotiated directly with Gref. At all times he was acting both on behalf of himself and in his official capacity on behalf of

Sberbank of Russia. *See* SAC at ¶¶ 30, 31. In the present case, Gref Sberbank US and Sberbank of Russia are alleged to be an insider in an illicit enterprise.

    d.   <u>Plaintiff Adequately Pled Mail and Wire Fraud</u>

When pled as RICO predicate acts, the elements of mail or wire fraud have been identified as (1) a plan or scheme to defraud, (2) intent to defraud, (3) reasonable foreseeability that the mail or wires will be used, and (4) actual use of the mail or wires to further the scheme. *See also, In Sumitomo Copper Litig.,* 995 F. Supp. 451, 455 (S.D.N.Y. 1998) (noting that elements of mail fraud are more broadly defined than elements of common law fraud).

The mailings and wire communications need not be fraudulent in and of themselves; innocuous or "innocent" mailings and wirings are sufficient RICO predicates as long as they further a fraudulent scheme. *See Spira v. Nick*, 876 F. Supp. 553, 558-59 (S.D.N.Y. 1995).

In his SAC Plaintiff has alleged that on March 4th, 2018 provided money or things of value to foreign officials to obtain an Interpol red notice and/or diffusion against Bilalov. Bilalov was located in the U.S.A at the time. The red notice and/or diffusion was based on false, unfounded, politically motivated accusations. SAC at ¶ 131. The Defendants necessarily used the mails and wires to obtain the fraudulent red notice and/or diffusion. Firstly, through use of money transfers, and through use of the internet and phone to communicate with Interpol. Plaintiff further alleges that [t]he defendant intended to cause Bilalov to be detained and deported to Russia, where Defendants would be able to use their influence to imprison and/or execute Bilalov, similar to the case of Magnitsky. *See* SAC at ¶131.

Furthermore, Plaintiff outlines the dates and times wherein he spoke with Herman Gref and members of his inner circle by telephone while Plaintiff was in New York and Defendant Herman Gref was in Russia. For example, Plaintiff alleges that on or about May 2019, when

Plaintiff returned from San Francisco, he called a member of the inner circle by telephone, during that phone call Gref through his associate, Androsov, threatened Plaintiff that if he pursues his claim she is a "fool" and threatened him with a "wave of problems". SAC at ¶135, 138. Furthermore, the SAC alleges that in August 2019, Plaintiff again spoke to Andrasov by telephone to ask Defendants not to harm his family. SAC at ¶ 141.

      e.   <u>Association in Fact Enterprise</u>

   Plaintiff has alleged an association-in- fact Enterprise. An association-in-fact enterprise may be a group of individuals, or a group of corporations, or a group that includes both individuals and legal entities. *United States v. Philip Morris USA Inc.,* 566 F.3d 1095, 1111 (D.C. Cir. 2009)

      f.   <u>The SAC Alleges a RICO Conspiracy</u>

   Plaintiff has adequately pled a substantive RICO claim under 18 U.S.C. §§ 1962(a)-(c), and has sufficiently pled conspiracy. Likewise, Plaintiff has sufficiently pled wrong doing by Defendant Sberbank CIB.

   Plaintiff has pled that Defendants Sberbank and Gref laundered money through Sberabnk CIB. Furthermore, Plaintiff has alleged that Sberabank CIB was an insider, and was instrumental in the conspiracy.

   **4.**  **<u>The Alien Tort Statute</u>**

The Alien Tort Claims Act ("ATS"), codified at 28 U.S.C. §1350, is properly and adequately pled in the SAC. See SAC ¶¶225-227, *in passim*. The ATS confers district courts with"original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. A defendant may be liable for conduct that is "either a direct violation of the law of nations or the aiding and abetting of

another's violation of the law of nations." *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 166 (2d Cir. 2015); accord *Licci* by *Licci v. Lebanese Canadian Bank*, 834 F.3d 201, 213 (2d Cir. 2016).

To state an ATS claim, a plaintiff must show:

(1) the complaint pleads a violation of the law of nations;

(2) the presumption against the extraterritorial application of the ATS, announced by the Supreme Court in *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 124, 133 S.Ct. 1659, 185 L.Ed.2d 671 (2013)], does not bar the claim;

(3) customary international law recognizes the asserted liability of a defendant; and

(4) the theory of liability alleged by plaintiffs (i.e., aiding and abetting, conspiracy) is recognized by customary international law or "the law of nations."

*Balintulo*, 796 F.3d at 165-66 (alterations and internal quotation marks omitted) (quoting *Mastafav. Chevron Corp.,* 770 F.3d 170, 179 (2d Cir. 2014)).

The unlawful taking of Plaintiff's shares of Krasnaya Polyana through threat of death, imprisonment and torture is a violation of the laws of nations. the SAC alleges that Russian Defendants were integral in moving the proceeds of the Defendants' wrongful acts to the United States *via* the Troika Laundromat and subsequently Russian Defendants committed acts constituting Hobbs Act extortion in New York.  See SAC at ¶¶102-119, 184(i). Consequently, theseactivities have a substantial effect in the United States, and these offenses have caused direct, substantial injury to important economic and legal interests in the United States, thus satisfying the requisite elements of the ATS.

**5.  Plaintiff's State Law Claims**

It is well established that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action... that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a).  See *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725(1966). A review of the SAC indicates clearly that the non-federal claims are so related to all of the obviously federal claims, including the civil RICO and ATS counts.

However, even if the federal claims were dismissed, this Court would have diversity jurisdiction, and would therefore be empowered to adjudicate the State Law Claims. As adequately alleged in the SAC, the parties are individual citizens of diverse states (Florida, New York, Russia). See SAC at *See* SAC ¶18-31. Plaintiff has adequately alleged, Fraud (Count V), Conspiracy to Commit Fraud (Count VI), Unlawful Conversion (Count VII), Malicious Abuse of Process (Count VIII), Unjust Enrichment (Count IX). Therefore, Plaintiff is likely to succeed on the merits.

**C.  Plaintiff Faces the Immediate Prospect of Immense and Irreparable Harm**

Regardless, in the absence of a TRO, Plaintiff does face the immediate prospect of immense and irreparable harm. Without the interim relief requested, Defendants' assets may be unavailable to Plaintiff to satisfy a judgment due to the imposition of sanctions against Russia and the Defendants herein.

To demonstrate irreparable harm, a plaintiff must show an injury that is "actual and imminent" and "cannot be remedied by an award of monetary damages." *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995) (citation and internal quotation marks omitted).

An award of money damages is inadequate "where a non-movant's assets may be dissipated before final relief can be granted, or where the non-movant threatens to remove its assets from the court's jurisdiction, such that an award of monetary relief would be meaningless[.]" *Firemen's Ins. Co. of Newark, New Jersey v. Keating*, 753 F. Supp. 1146, 1153 (S.D.N.Y. 1990) (citation omitted); *see also Itek Corp. v. First National Bank*, 730 F.2d 19, 22-23 (1st Cir. 1984).

Here, absent an order to retain assets and freeze the accounts, it is likely that the Defendants may be either stripped of their assets as a result of sanctions, or may move assets in order to avoid sanctions.

Plaintiff only seeks to maintain the status quo until a determination can been made as to the Defendants' actions.

Similarly, the type of *ex parte* relief requested is necessary to prevent irreparable harm. As set forth above, Plaintiff seeks preliminary relief to freeze the accounts of the Sberbank entities and restrict Defendants' abilities to dispose of any assets that may properly belong to the Akhmed Bilalov.

Absent the injunctive relief sought, any award to Plaintiff would likely be rendered meaningless by the dissipation of assets.

### D.  The Balance of the Hardships Strongly Favors Plaintiff

Plaintiff has established "both a likelihood of success on the merits and irreparable harm," and injunctive relief is necessary to protect Plaintiff against all of the harms identified above- harms that go to the very core of the Company. *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 1585 (2013).

Plaintiff is likely to succeed on the merits of his claims at trial, but because the balance of hardships in this case tips so decidedly in favor of Plaintiff, an injunction would be warranted

even if Plaintiff merely showed "serious questions going to the merits to make them a fair ground for litigation." *Citigroup Global Mk.ts., Inc. v. VCG Special Opportunities Master Fund, Ltd.,* 598 F.3d 30, 35 (2d Cir. 2010) (internal citations omitted).

The harm to Plaintiff that will occur if the application is denied greatly outweighs the harm to Defendants' interests. Defendants will suffer no legitimate hardship in the event this Court issues a TRO. Given "the probable outcome of this action, this is a loss which [Defendants] may justifiably be called upon to bear." *Corning Glass Works v. Jeanette Glass Co.*, 308 F. Supp. 1321, 1328 (S.D.N.Y. 1970), *affd*, 432 F.2d 784 (2d Cir. 1970).

**E.  The Relief Requested Will Not Harm the Public Interest**

The public interest supports the relief sought here. *Salinger*, 607 F.3d at 80. "The 'public interest' prong does not mean that a court must consider the public interest in deciding whether to grant injunctive relief; rather, it means that if injunctive relief is granted, a court should ensure that the injunctive provisions of the order do not harm the public interest." *Briggs & Stratton*, 2013 WL 3972391, at *1 n.4; Regardless, for the reasons stated herein, the public interest strongly supports injunctive relief.

The balance of hardships therefore heavily favors the issuance of immediate injunctive relief.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's emergency motion for an asset freeze and related relief.

Dated: New York, New York
          March 6th, 2022

Respectfully Submitted,

*/S/ Irina Shpigel*
Irina Shpigel
*Counsel for Plaintiff*